UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAVIDATH LAWRENCE RAGBIR *et al.*,

                              Plaintiffs,

        - against -

THOMAS D. HOMAN, *et al.*,

                              Defendants.

No. 18 Civ. 1159 (PKC)
ECF Case

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Attorney for the United States
86 Chambers Street, Third Floor
New York, New York 10007
Tel:    (212) 637-2741
*Attorney for Defendants*

Jeffrey S. Oestericher
Brandon M. Waterman
Steven J. Kochevar
Joseph N. Cordaro
*Assistant United States Attorneys*
    – Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ......................................................................................................2
    I.     ENFORCEMENT OF THE IMMIGRATION LAWS .........................................2

    II.    PLAINTIFF RAVIDATH LAWRENCE RAGBIR ..............................................3

    III.   THE ORGANIZATIONAL PLAINTIFFS AND THE PRESENT
          ACTION .............................................................................................5


ARGUMENT .........................................................................................................5
    I.     PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS ..................6


    A.    This Court Lacks Subject Matter Jurisdiction over Plaintiffs' Claims ..................6

         1. 8 U.S.C. § 1252 deprives this Court of jurisdiction ............................................6

               a.     8 U.S.C. § 1252(g) ........................................................6

               b.     8 U.S.C. § 1252(a)(2)(D), (a)(5), and (b)(9) ................................10

               c.     8 U.S.C. § 1252(f)(1) ....................................................13

         2. The organizational plaintiffs lack standing to bring claims beyond Mr.
            Ragbir's claim ...............................................................15

    B.    Plaintiffs Are Unlikely to Succeed on the Merits Because They Cannot
         Show That Any Actions Would Not Have Been Taken Against Them But
         for Their Activism..............................................................17

         1. Plaintiffs' retaliation claims fail because they cannot show but-for
            causation ...................................................................17

         2. Plaintiffs' viewpoint discrimination claims fail for lack of direct
            restriction of speech, and because they are merely duplicative of
            their retaliation claims.......................................................22
    II.    PLAINTIFFS HAVE NOT SHOWN IRREPARABLE HARM .........................23

    III.   THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST ARE
          IN THE GOVERNMENT'S FAVOR ..................................................24


CONCLUSION......................................................................................................25

## **TABLE OF AUTHORITIES**

**Cases**

*Abdi v. Duke*,
No. 17 Civ. 0721 (EAW), 2017 WL 5599521 (W.D.N.Y. Nov. 17, 2017) ............................ 14

*Aguilar v. ICE*,
510 F.3d 1 (1st Cir. 2007) ..................................................................................................... 11

*Bano v. Union Carbide Corp.*,
361 F.3d 696 (2d Cir. 2004) ....................................................................................... 15, 16, 17

*Baur v. Veneman*,
352 F.3d 625 (2d Cir. 2003) ................................................................................................... 16

*Crawford-El v. Britton*,
523 U.S. 574 (1998) ............................................................................................................... 18

*Delgado v. Quarantillo*,
643 F.3d 52 (2d Cir. 2011) ..................................................................................................... 11

*Elgharib v. Napolitano*,
600 F.3d 597 (6th Cir. 2010) ................................................................................................... 9

*Fong Yue Ting v. United States*,
149 U.S. 698 (1893) ............................................................................................................... 23

*Freedom Holdings, Inc. v. Spitzer*,
408 F.3d 112 (2d Cir. 2005) ............................................................................................. 23, 24

*Gonzalez v. Hasty*,
802 F.3d 212 (2d Cir. 2015) ............................................................................................. 18, 21

*Greenwich Citizens Comm., Inc. v. Cntys. of Warren and Washington Indus. Dev. Agency*,
77 F.3d 26 (2d Cir. 1996) ....................................................................................................... 22

*Hartman v. Moore*,
547 U.S. 250 (2006) ............................................................................................................. 9, 18

*Hunt v. Washington State Apple Advertising Comm'n*,
432 U.S. 333 (1977) ............................................................................................................... 16

*INS v. St. Cyr*,
533 U.S. 289 (2001) ......................................................................................................... 12, 15

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*,
   596 F.2d 70 (2d Cir. 1979) ........................................................................ 24

*Jennings v. Rodriguez*, No. 15-1204, --- U.S. ---, 2018 WL 1054878 (U.S. Feb. 27, 2018) .. 11, 14

*Laird v. Tatum*,
   408 U.S. 1 (1972) ............................................................................. 15, 24

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .......................................................................... 16, 17

*Luna v. Holder*,
   637 F.3d 85 (2d Cir. 2011) ........................................................................ 15

*Matusick v. Erie Cnty. Water Authority*,
   757 F.3d 31 (2d Cir. 2014) ........................................................................ 18

*Moreno-Bravo v. Gonzales*,
   463 F.3d 253 (2d Cir. 2006) ....................................................................... 12

*Munaf v. Geren*,
   553 U.S. 674 (2008) ................................................................................ 5

*Nken v. Holder*,
   556 U.S. 418 (2009) .......................................................................... 13, 18

*Rajah v. Mukasey*,
   544 F.3d 427 (2d Cir. 2008) ........................................................................ 9

*Reno v. American-Arab Anti-Discrimination Committee*,
   525 U.S. 471 (1999) .......................................................................... passim

*Rent Stabilization Ass'n of NYC v. Dinkins*,
   5 F.3d 591 (2d Cir. 1993) ......................................................................... 17

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ..................................................................... 14

*Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*,
   746 F.3d 538 (2d Cir. 2014) ....................................................................... 18

*Ruiz-Martinez v. Mukasey*,
   516 F.3d 102 (2d Cir. 2008) ................................................................... 12, 15

*Simmonds v. INS*,
   326 F.3d 351 (2d Cir. 2003) ....................................................................... 15

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) ................................................................................. 23

*Tefel v. Reno*,
  180 F.3d 1286 (11th Cir. 1999) ............................................................... 14

*Tefel v. Reno*,
  972 F. Supp. 608 (S.D. Fla. 1997) ............................................................ 14

*Ticor Title Ins. Co. v. Cohen*,
  173 F.3d 63 (2d Cir. 1999) ....................................................................... 24

*Time Warner Cable v. Bloomberg L.P.*,
  118 F.3d 917 (2d Cir. 1997) ....................................................................... 5

*United States v. Ochoa-Oregel*,
  No. 16cr1116-BEN, 2016 WL 3952156, (S.D. Cal. July 22, 2016) .............. 3

*United States v. Ragbir*,
  38 Fed. App'x 788 (3d Cir. 2002) ....................................................... 19, 20

*VIP of Berlin, LLC v. Town of Berlin*,
  593 F.3d 179 (2d Cir. 2010) ....................................................................... 5

*Warth v. Seldin*,
  422 U.S. 490 (1975) ................................................................................. 17

*Webster v. Doe*,
  486 U.S. 592 (1988) ................................................................................. 14

*Yang v. United States*,
  No. CV 10-0389, 2010 WL 11463156 (N.D. Cal. Aug. 8, 2010) ................. 9

**Statutes**

8 U.S.C. § 1226(a)(2) ..................................................................................... 12
8 U.S.C. § 1252(a)(2)(D) ............................................................................... 10
8 U.S.C. § 1252(a)(5) ....................................................................... 10, 11, 14
8 U.S.C. § 1252(b)(9) ............................................................................. 10, 11
8 U.S.C. § 1252(f)(1) ..................................................................................... 12
8 U.S.C. § 1252(f)(2) ................................................................................. 9, 17
8 U.S.C. § 1252(g) ............................................................................... 1, 6, 10
8 U.S.C. §§ 1221–1231 ............................................................................. 12, 13

## PRELIMINARY STATEMENT

An alien unlawfully in this country cannot, except possibly in the rarest of circumstances, assert a selective prosecution claim in district court to challenge his removal.  Congress has expressly barred courts from hearing challenges to the Attorney General's decision to execute a removal order, and the United States Supreme Court has ruled that unlawful aliens do not have a constitutional right to assert selective enforcement as a defense to removal.  These legal realities bar granting relief in this case, in which plaintiff Ravidath Ragbir and five immigrant rights organizations seek to assert a selective prosecution claim.  Specifically, plaintiffs allege that defendants have targeted Mr. Ragbir and others for immigration enforcement because of their political speech, and seek an order enjoining Mr. Ragbir's removal and restraining the enforcement of the immigration laws nationwide.  Thus, the Court lacks subject matter jurisdiction over these claims.

For this and other reasons, plaintiffs fail the familiar test for a preliminary injunction.  Most fundamentally, plaintiffs cannot show a likelihood of success on the merits.  Congress constructed a robust scheme of administrative and judicial review for aliens subject to immigration enforcement.  That scheme, however, expressly precludes district courts from hearing any cause or claim arising from the decision of the Attorney General to "commence proceedings, adjudicate cases, or execute removal orders" against any alien, 8 U.S.C. § 1252(g), the precise claims Mr. Ragbir and members of the organizational plaintiffs assert here.

Besides the jurisdictional bar, plaintiffs also cannot establish a likelihood of success because they cannot show that the immigration laws would not have been enforced against Mr. Ragbir but for his activism.  Mr. Ragbir was convicted of serious federal crimes and has been subject to a final order of removal for a number of years.  He was fully aware that he would eventually have to report to United States Immigration and Customs Enforcement ("ICE") for

removal.  ICE's decision to enforce his removal order was a lawful exercise of its authority.

Likewise, plaintiffs' scant allegations concerning ICE enforcement actions taken during the past

year against Ragbir and certain other aliens scattered throughout the United States are far too

vague and attenuated to establish a selective enforcement claim, even if such a claim were

legally cognizable.

Nor can plaintiffs establish the other two elements required for a preliminary injunction:

irreparable harm and the public interest.  Mr. Ragbir will not suffer irreparable harm if the

preliminary injunction were to be denied because he can continue to pursue this action—and his

activism—from outside the United States.  Further, the organizational plaintiffs' alleged

expenditure of money on increased activism and advocacy as a result of defendants' enforcement

actions does not constitute irreparable harm as a matter of law.

Finally, the public interest does not favor granting preliminary relief.  It is undisputed that

Mr. Ragbir has no legal right to remain in the United States.  The public interest is served when

the nation's laws, even those as fiercely contested as the immigration laws, are enforced.

## **BACKGROUND**

## I.  **ENFORCEMENT OF THE IMMIGRATION LAWS**

United States Immigration and Customs Enforcement ("ICE") within the U.S.

Department of Homeland Security ("DHS") conducts investigative and enforcement operations

to implement the United States immigration laws.  Declaration of Field Office Director Thomas

Decker ("Decker Decl.") ¶ 6.  In addition to its headquarters in Washington, D.C., ICE operates

through regional field offices throughout the country.  *Id.*  Pursuant to guidance issued by DHS,

"[t]he exercise of prosecutorial discretion with regard to any alien who is subject to arrest,

criminal prosecution, or removal in accordance with law shall be made on a case-by-case basis in

consultation with the head of the field office component . . . that initiated or will initiate the

enforcement action."  Decker Decl. Ex. A at 4.  The same guidance prioritizes the removal of aliens convicted of a criminal offense or who are subject to a final order of removal.  *See id.* at 2.

Defendant Thomas Decker serves as the Field Office Director ("FOD") for ICE's New York Field Office.  Since assuming that role in January 2017, FOD Decker has carefully scrutinized requests for administrative stays of orders of removal, and granted such stays—an exercise of ICE's prosecutorial discretion—only in extraordinary circumstances.  Decker Decl. ¶ 14.

## II.  PLAINTIFF RAVIDATH LAWRENCE RAGBIR

Plaintiff Ravidath Lawrence Ragbir is a native and citizen of Trinidad and Tobago. Declaration of Deputy Field Office Director Scott Mechkowski ("Mechkowski Decl.") ¶ 3.  In 1994, Mr. Ragbir was admitted to the United States as a lawful permanent resident.  *Id.* ¶ 4. However, in 2001, Mr. Ragbir was convicted of wire fraud and conspiracy to commit wire fraud; his convictions constituted aggravated felonies under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(43)(M)(i), (U), and rendered him removable from the United States, 8 U.S.C. § 1227(a)(2)(A)(iii). Mechkowski Decl. ¶¶ 5–7. In 2006, ICE placed Mr. Ragbir in removal proceedings based on his 2001 convictions, and in 2007, Mr. Ragbir became subject to a final order of removal and lost his lawful permanent resident status.  *Id.* ¶¶ 6-8; *see United States v. Ochoa-Oregel*, No. 16cr1116-BEN, 2016 WL 3952156, at *3–*5 (S.D. Cal. July 22, 2016).

In 2008, Mr. Ragbir was released from immigration detention because he had filed a petition for review of his immigration proceedings with the United States Court of Appeals for the Second Circuit (the "Second Circuit").  Mechkowski Decl. ¶ 8.  Over the next eight years, as Mr. Ragbir filed additional petitions and motions challenging his immigration proceedings and criminal convictions, ICE granted Mr. Ragbir a series of discretionary administrative stays of removal.  *Id.* ¶ 10–13.  The last of these administrative stays was granted in January 2016 and

was set to expire on January 19, 2018. *Id.* ¶ 13.  On March 4, 2016, shortly after ICE granted Mr. Ragbir his last administrative stay of removal, the Second Circuit dismissed Mr. Ragbir's second petition for review.  *Id.* ¶ 14.  Mr. Ragbir's other challenges to his immigration proceedings also have not been successful. *Id.* ¶¶ 9, 11, 12.

On November 16, 2017, Mr. Ragbir requested a renewed administrative stay of removal, on the basis of a pending coram nobis petition in New Jersey challenging his criminal convictions and a request for a presidential pardon.  Decker Decl. ¶ 20.  In December 2017, FOD Decker concluded that these legal challenges had a low likelihood of success and, accordingly, that ICE would not exercise its discretion to grant Mr. Ragbir a further stay of removal.  *Id.* ¶ 21.

Following FOD Decker's decision, ICE's New York Field Office worked to develop an operational plan to accomplish Mr. Ragbir's removal.  *Id.* ¶¶ 23, 25–26.  In formulating these plans, ICE took into account the probability of demonstrations opposing Mr. Ragbir's removal, solely for the purpose of ensuring the safety of all individuals involved, including Mr. Ragbir himself.  Mechkowski Decl. ¶ 22.  In addition, although the decision to remove each alien was made separately, ICE attempted to coordinate Mr. Ragbir's removal with the removal of Jean Murat Montrevil.  Decker Decl. ¶¶ 27, 31–32.  ICE did so because FOD Decker was concerned that each might attempt to evade removal upon learning of the other's arrest.  *Id.* ¶ 31.  Although ICE was able to detain Mr. Montrevil on January 3, 2018, it was unable to detain Mr. Ragbir at that time.  *Id.* ¶ 34.

On January 11, 2018, Mr. Ragbir reported to the ICE New York Field Office and met with Deputy Field Office Director ("DFOD") Scott Mechkowski.  *Id.* ¶ 38.  Mr. Ragbir's wife and legal representative were also present at the meeting.  *Id.*  During the meeting, DFOD Mechkowski informed Mr. Ragbir that ICE had denied his request for a renewed administrative

stay of removal and was detaining him for purposes of removal.  Mechkowski Decl.  ¶¶ 23–24.
That same day, Mr. Ragbir's counsel filed a petition for a writ of habeas corpus in the United
States District Court for the Southern District of New York.  *Id.* ¶ 27.  On January 29, 2018, the
court granted Mr. Ragbir's petition, and ICE released him from custody.  *Id.* ¶ 31.

### III. THE ORGANIZATIONAL PLAINTIFFS AND THE PRESENT ACTION

On February 9, 2018, Mr. Ragbir and five immigrant-rights organizations (the
"organizational plaintiffs") filed the present action, alleging that defendants have engaged in a
nationwide practice of selectively enforcing the immigration laws against immigrant-rights
activists, including Mr. Ragbir, in retaliation for their political speech. Dkt. No. 1 (Compl.).  On
February 12, 2018, plaintiffs filed a motion for a preliminary injunction seeking to enjoin
defendants from enforcing Mr. Ragbir's order of removal and restraining defendants nationwide
from enforcing the immigration laws on a selective basis in retaliation for political speech. Dkt.
No. 12 (Motion).  ICE voluntarily agreed to stay Mr. Rabgir's removal pending resolution of this
preliminary injunction motion. Dkt. No. 4 (Stipulation and Order).

### ARGUMENT

Preliminary injunctions are "extraordinary and drastic" remedies that should never be
"awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (quotation omitted).  A
party seeking to preliminarily enjoin "government action taken in the public interest pursuant to
a statutory or regulatory scheme" in a way that would "alter, rather than maintain, the status quo
. . . must demonstrate irreparable harm and a clear or substantial likelihood of success on the
merits."  *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 185–86 (2d Cir. 2010) (internal
quotation marks omitted).  Further, "[w]henever a request for a preliminary injunction implicates
public interests, a court should give some consideration to the balance of such interests."  *Time
Warner Cable v. Bloomberg L.P.*, 118 F.3d 917, 929 (2d Cir. 1997).

# I.   PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

## A.   This Court Lacks Subject Matter Jurisdiction over Plaintiffs' Claims

### 1. 8 U.S.C. § 1252 deprives this Court of jurisdiction

Plaintiffs cannot prevail on the merits because the Court lacks subject matter jurisdiction over their claims.  In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA").  "Many provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts."  *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 486 (1999) ("*AAC*").  Several of these provisions—as well as provisions of the REAL ID Act of 2005, which refined IIRIRA's judicial review scheme—are applicable to plaintiffs' request for relief and deprive this Court of jurisdiction over their claims.

a.   8 U.S.C. § 1252(g)

8 U.S.C. § 1252(g) provides that:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

*Id.*  By its plain terms, section 1252(g) eliminates subject matter jurisdiction (except as otherwise provided in section 1252) for claims attacking decisions to commence proceedings, adjudicate cases, or execute removal orders.  Accordingly, section 1252(g) bars Mr. Ragbir's challenge to the execution of his removal order, as well as the similar challenges asserted on behalf of the members of the organizational plaintiffs.  *Id.*

The Supreme Court's decision in *AAC*, which construed section 1252(g) in a similar context, is controlling.  There, respondents sued the Attorney General for allegedly targeting them for deportation because of their affiliation with a politically unpopular group, in violation of the First and Fifth Amendments.  *AAC*, 525 U.S. at 474.  As here, the question before the

6

Supreme Court was whether the plain language of section 1252(g) deprived the federal courts of jurisdiction over respondents' suit. *Id.* at 473. The Court ruled that it did. *Id.* at 485.

In reaching that conclusion, the Supreme Court interpreted section 1252(g) narrowly, explaining that it does not strip federal court jurisdiction with respect to "to all claims arising from deportation proceedings." *Id.* at 482. However, with respect to the "three discrete actions" identified in the text of section 1252(g)—commencement of proceedings, adjudication of cases, and execution of removal orders—the Court held that section 1252(g) does indeed strip jurisdiction. *Id.* And with good reason: the actions identified in section 1252(g) are committed to the discretion of the Executive, and section 1252(g) was designed to protect that discretion and avoid the "deconstruction, fragmentation, and hence prolongation of removal proceedings." *Id.* at 487.

The Supreme Court also rejected respondents' claim—the same one asserted by plaintiffs here—that an alien unlawfully in this country has a constitutional right to assert selective enforcement as a defense to deportation. *Id.* at 488. The Court observed that selective prosecution claims "invade a special province of the Executive—its prosecutorial discretion." *Id.* at 489. They are "ill-suited to judicial review" and "[j]udicial supervision in this area . . . entails systemic costs of particular concern." *Id.* at 490 (internal quotation marks and citation omitted).

The Supreme Court emphasized that these concerns, which weigh heavily in the field of criminal prosecutions, are "greatly magnified" in the deportation context. *Id.* For example, with respect to the potential for delay, the Court explained:

> Whereas in criminal proceedings the consequence of delay is merely to postpone the criminal's receipt of his just deserts, in deportation proceedings the consequence is to permit and prolong a continuing violation of United States law. Postponing justifiable deportation . . . is often the principal object of resistance to

a deportation proceeding, and the additional obstacle of selective-enforcement suits could leave the INS hard pressed to enforce routine status requirements.

*Id.*[1]  As such, the Court held that as a general rule, Congress may deprive an unlawful alien of the ability to assert selective prosecution as a defense to deportation.  *Id.* at 488, 491-92.

Section 1252(g) thus removes this Court's jurisdiction over Mr. Ragbir's claims in their entirety.  The only action he has standing to challenge is the enforcement of his final order of removal—one of the "three discrete actions" section 1252(g) unambiguously protects from judicial review.  Likewise, the organizational plaintiffs' claims on behalf of their members challenge these three discrete actions and are barred for the same reason.[2]

Nor can plaintiffs show that they are likely to fall within any possible exception to the Supreme Court's holding.  In concluding its opinion, the Court noted that to resolve the present controversy, it "need not rule out the possibility of a rare case in which the alleged basis of discrimination is so outrageous that the foregoing considerations can be overcome."  *AAC*, 525 U.S. at 491. As a threshold matter, it is not clear that such an exception even exists. *See id.*  But even assuming *arguendo* that it does, this is not the "rare case."

Contrary to plaintiffs' suggestion, they have not alleged a nationwide "pattern and practice of targeting immigrant-rights activists on the basis of their protected political speech."  Pls. Mem. at 23.  Rather, plaintiffs have alleged that during the past year, ICE—which conducts many thousands of enforcement actions each year—took some form of enforcement action

---

[1]  The Supreme Court also expressed concern about chilling law enforcement by subjecting the Executive's motives and decision making to outside inquiry in deportation cases. *Id.* at 490-91.

against a discrete number of individuals scattered throughout the United States. *See* Compl. ¶¶ 78-99. These sparse and limited allegations are not "so outrageous" as to overcome the policy considerations enunciated by the Supreme Court. *AAC*, 525 U.S. at 491; *see also Yang v. United States*, No. CV 10-0389, 2010 WL 11463156, at *8 (N.D. Cal. Aug. 8, 2010) (finding that "Plaintiff has alleged no facts indicating that the decision of the Attorney General to commence removal proceedings against him was so outrageously discriminatory as to warrant some possible exception to Section 1252(g)"). Rather, the actions described in plaintiffs' complaint are consistent with ICE's current enforcement policies and ICE's own explanation of its execution of those lawful policies. *See* Decker Decl. ¶¶ 4–5, 14, 21–22, Ex. A; *AAC*, 525 U.S. at 487–92.[3]

Furthermore, as discussed *infra*, to prevail on their First Amendment claims, plaintiffs must show that the enforcement actions they are challenging "would [not] have been taken anyway," *Hartman v. Moore*, 547 U.S. 250, 260 (2006), and, with respect to the challenged enforcement of removal orders, this showing must be made by "clear and convincing evidence," 8 U.S.C. § 1252(f)(2). Plaintiffs will not be able to make that showing. Because Mr. Ragbir was convicted of serious federal crimes, he has been fully aware that he would eventually be subject to removal. *See* Decker Decl. ¶ 14. More broadly, plaintiffs have failed to identify any action

---

[2] Plaintiffs' assertion that section 1252(g) cannot be applied in this way because they will be unable to bring their First Amendment claims before a federal court, *see* Pls. Mem. at 18, is unavailing in light of the holding in *AAC*. *See id.* at 488; *see also Elgharib v. Napolitano*, 600 F.3d 597, 606 (6th Cir. 2010) ("[T]he Constitution qualifies as 'any other provision of law (statutory or nonstatutory)' under all subsections of § 1252.").

[3] *Rajah v. Mukasey*, 544 F.3d 427 (2d Cir. 2008), is not to the contrary. *See* Pls. Mem. at 15-16. *Rajah* restated the Supreme Court's *AAC* holding—that there might be a rare case where an alien may pursue a selective enforcement claim—in the Equal Protection context. *Id.* at 438-40. But *Rajah* concluded that no unconstitutional selective enforcement of the immigration laws had occurred in the context of the Special Call-In Registration Program, which required alien males over the age of 16 from certain Muslim-majority countries and North Korea to register with INS. *Id.* at 433.

that defendants took to commence immigration proceedings, adjudicate immigration cases, or enforce orders of removal that would not have been taken but for activism by an alien. Accordingly, even assuming (without conceding) that politically motivated enforcement could ever raise a constitutional question, there is no constitutional infirmity to the application of the plain text of section 1252(g) in the present case.

      b.  <u>8 U.S.C. § 1252(a)(2)(D), (a)(5), and (b)(9)</u>

Other provisions of 8 U.S.C. § 1252 also eliminate district court subject matter jurisdiction over plaintiffs' claims and channel review of plaintiffs' claims to the Court of Appeals. Specifically, 8 U.S.C. § 1252(b)(9) provides that:

> With respect to review of a final order of removal under subsection (a)(1), . . . [j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction . . . to review such an order or such questions of law or fact.

Subsection 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from deportation proceedings]" to a court of appeals in the first instance. *AAC*, 525 U.S. at 482–83.[4]  Moreover, 8 U.S.C. § 1252(a)(5) provides in turn that "[n]otwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means

---

    [4] As the Supreme Court recognized in *AAC*, the claims to which 8 U.S.C. § 1252(g) applies—those arising from the "three discrete actions" discussed *supra*—are also covered by 8 U.S.C. § 1252(b)(9). *AAC*, 525 U.S. at 483. 8 U.S.C. § 1252(g)'s original purpose was to apply to "transitional cases" involving aliens in immigration proceedings before IIRIRA's effective date. *Id.*  However, "even after all the transitional cases have passed through the system, § 1252(g) . . . serves the continuing function of making it clear that those specified decisions and actions, which . . . some courts had held not to be included within the non-final-order review prohibition of [the pre-IIRIRA immigration judicial review scheme], are covered by the 'zipper' clause of § 1252(b)(9)." *Id.*

for judicial review of an order of removal entered or issued under any provision of this chapter."

Critically, these are "judicial channeling provision[s], not . . . claim-barring ones." *Aguilar v. ICE*, 510 F.3d 1, 18 (1st Cir. 2007).   Furthermore, 8 U.S.C. § 1252(a)(2)(D) states that "[n]othing . . . in any other provision of this chapter . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."

Accordingly, plaintiffs' challenges to actions taken or proceedings brought to obtain or enforce final orders of removal may not be heard in district court.  Rather, once a final order of removal is entered, such claims (including any constitutional claims) may be pursued via a petition for review in the appropriate Court of Appeals.  *See* 8 U.S.C. §§ 1252(a)(5), (d)(1); *see also id.* § 1252(b)(9).

Plaintiffs raise a host of arguments why the jurisdictional restriction does not apply, but all are incorrect. First, plaintiffs are incorrect in arguing that § 1252(b)(9) does not apply because their claims do not require review of an order of removal.[5]  Pls. Mem. at 17.  Their contention overlooks that "section 1252(a)(5)'s jurisdictional bar applies equally to preclude . . . an indirect challenge [to a final order of removal]." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (per curiam).  Whether the district court has jurisdiction "turn[s] on the substance of the relief that a plaintiff is seeking."  *Id.* at 55.  Here, the relief that plaintiffs are seeking—"restraining Defendants from taking any adverse immigration enforcement action against any noncitizen on the basis of protected speech or expressive conduct," Pls. Mem. at 25—would effectively nullify

---

[5] Just last week, five members of the Supreme Court disagreed with plaintiffs' position on the reach of § 1252(b)(9). *See Jennings v. Rodriguez*, No. 15-1204, --- U.S. ---, 2018 WL 1054878, at *8 (U.S. Feb. 27, 2018) (Alito, J.) (plurality opinion); *id.* at *20–*26 (Thomas, J., concurring in part and concurring in the judgment).

orders of removal or proceedings leading to orders of removal, and therefore constitutes an indirect challenge to such orders.

Nor should the Court credit plaintiffs' reliance on decisions in the habeas corpus context in support of their argument that sections 1252(a)(5) and (b)(9) do not apply here. *See* Pls. Mem. at 26.[6]  The relief that a habeas petitioner seeks is release from unlawful detention. Such relief— in contrast to the relief that plaintiffs seek here—does not necessarily impair a final order of removal or proceedings leading to a final order of removal. Under *Delgado*, plaintiffs must therefore bring these claims in the court of appeals.

Finally, the Supreme Court's decision in *AAC* defeats plaintiffs' objections that § 1252(a)(5) and (b)(9) and the petition-for-review process cannot be applied here because review of their claims by an immigration judge would be futile and the Second Circuit would lack an adequate record. *See* Pls. Mem. at 17. This argument was presented and rejected in *AAC*; the Supreme Court concluded that it did not cast constitutional doubt on the full operation of § 1252's judicial review scheme. *See* 525 U.S. at 487–88; U.S. Br., *AAC*, 525 U.S. 471 (1999), 1998 WL 411431, at *38.  Instead, as discussed *supra*, the Supreme Court concluded that Congress could constitutionally deprive an alien of the right to assert selective enforcement of the immigration laws. *AAC*, 525 U.S. at 487-88 (noting that § 1252(g) "seems to have been crafted with such a challenge precisely in mind" and finding that "nothing elsewhere in § 1252 provides for jurisdiction").

---

[6]  Plaintiffs do not cite any cases from within the Second Circuit. The holding of the sole Supreme Court case on which they rely, *INS v. St. Cyr*, 533 U.S. 289 (2001)—which does not control here because it concerns habeas corpus—was substantially changed by the passage of the REAL ID Act in 2005. *See Moreno-Bravo v. Gonzales*, 463 F.3d 253, 259 (2d Cir. 2006); *see also Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 105 (2d Cir. 2008) (holding that the REAL ID Act did not violate the Suspension Clause).

c.  <u>8 U.S.C. § 1252(f)(1)</u>

8 U.S.C. § 1252(f)(1) deprives this Court of jurisdiction to grant injunctive relief to any plaintiff other than Mr. Ragbir.  Subsection 1252(f)(1) provides that

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, [8 U.S.C. §§ 1221–1231,] . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

This provision "prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1231, but . . . this ban does not extend to individual cases."  *AAC*, 525 U.S. at 481–82; *see Nken v. Holder*, 556 U.S. 418, 431 (2009).  Accordingly, § 1252(f)(1) bars this Court from granting preliminary or final injunctive relief with respect to any plaintiff other than Mr. Ragbir, the only "individual alien" party to the present case.

Plaintiffs are also mistaken in arguing that § 1252(f)(1) is inapplicable on the ground that they purportedly are not seeking to enjoin or restrain the operation of any provision of 8 U.S.C. §§ 1221-1231.  *See* Pls. Mem. at 19.  That is precisely what plaintiffs seek to do.  Part IV of the relevant subchapter (8 U.S.C. §§ 1221-1231) is entitled "Inspection, Apprehension, Examination, Exclusion, and Removal" and generally provides the Executive with the authority to enforce the immigration laws.  By seeking to "restrain[] Defendants from taking any adverse immigration enforcement against [certain aliens]," plaintiffs are asking this Court to enjoin the operation of

§§ 1221-1231.[7]    To the extent plaintiffs seek to enjoin any actions that do not involve the operation of §§ 1221-1231, they lack standing to seek such relief, as discussed *infra*.

Plaintiffs' objection that application of the plain text of § 1252(f)(1) raises constitutional concerns also falls short.    *See* Pls. Mem. at 19.    Section 1252(f)(1) expressly provides that a federal court—the United States Supreme Court—may grant injunctive relief beyond an individual basis.    While plaintiffs cast the Supreme Court as unconstitutionally slow, they point to no authority requiring an immediate forum for their claims.[8]    Moreover, any alien affected by defendants' alleged discriminatory practices has an adequate forum other than the Supreme Court: as discussed *supra*, under 8 U.S.C. §§ 1252(a)(5), (a)(2)(D) and (b)(9), such an alien may raise their constitutional claims in a petition for review before an appellate court.

Plaintiffs' assertion that separate from 8 U.S.C. § 1252, this Court has jurisdiction over Mr. Ragbir's claims under the federal habeas statute or the Suspension Clause is mistaken.    *See* Pls. Mem. at 20.    Mr. Ragbir is not detained, and he is not seeking release from detention. Accordingly, he cannot obtain habeas relief, and the Suspension Clause is not implicated because

---

[7] The cases plaintiffs cite are not to the contrary.    *Tefel v. Reno*, 972 F. Supp. 608 (S.D. Fla. 1997), concerned immigration proceedings that began before IIRIRA took full effect, and, in any case, was vacated by the Eleventh Circuit.    *See Tefel v. Reno*, 180 F.3d 1286 (11th Cir. 1999).    *Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010), and *Abdi v. Duke*, No. 17 Civ. 0721 (EAW), 2017 WL 5599521 (W.D.N.Y. Nov. 17, 2017), held, on statutory grounds, that certain aliens subject to mandatory detention must receive bond hearings and so, unlike the present constitutional case, did not involve "enjoin[ing] the operation of the immigration detention statutes, but enjoin[ing] conduct . . . not authorized by the statutes." *Hayes*, 591 F.3d at 1120. The Supreme Court's recent decision in *Jennings* casts doubt on these holdings and, furthermore, suggests that § 1252(f)(1) would allow, at most, declaratory relief on constitutional claims.    *See Jennings*, 2018 WL 1054878, at *19.

[8] Plaintiffs cite to *Webster v. Doe*, 486 U.S. 592, 603 (1988), but *Webster* does not support the argument that plaintiffs' claims demand immediate review.

it protects core applications of the writ of habeas corpus, *see St. Cyr*, 533 U.S. at 301.[9]

### 2. The organizational plaintiffs lack standing to bring claims beyond Mr. Ragbir's claim

The organizational plaintiffs lack standing to bring claims other than Mr. Ragbir's claim. As a threshold matter, the organizational plaintiffs lack direct standing to bring any First Amendment claims because the immigration laws at issue do not regulate expressive conduct and are not directed at organizations. *See Laird v. Tatum*, 408 U.S. 1, 11 (1972) (holding that no justiciable First Amendment challenge existed where plaintiffs had not asserted that "the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging"). The organizational plaintiffs also lack associational standing to raise any claim other than Mr. Ragbir's. Associational standing is a "narrow exception" to the ordinary rule against third-party standing. *Bano v. Union Carbide Corp.*, 361 F.3d 696, 715 (2d Cir. 2004). An association attempting to bring suit on behalf of its members must establish standing by proving that

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

---

[9] Plaintiffs' invocation of *Simmonds v. INS*, 326 F.3d 351, (2d Cir. 2003), to suggest that Mr. Ragbir is in custody for habeas purposes, is unavailing. *See* Pls. Mem. at 20. *Simmonds* concerned a challenge to a removal order brought by an alien in criminal custody who INS was required by law to detain if his criminal custody ended. *Id.* at 356. As such, the question of whether an alien like Mr. Ragbir, who is not detained and who has already obtained judicial review of his removal order, is in custody for habeas purposes was not before the *Simmonds* Court. Moreover, *Simmonds* was decided before the passage in 2005 of the REAL ID Act, which "eliminat[ed] the availability of habeas corpus relief in the United States District Courts for aliens seeking to challenge orders of removal entered against them," *Ruiz-Martinez*, 516 F.3d at 105, but also "restored judicial review in the courts of appeals over 'constitutional claims or questions of law' for all noncitizens," *Luna v. Holder*, 637 F.3d 85, 94 (2d Cir. 2011).

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *accord Bano*, 361 F.3d at 713.  Except with respect to Mr. Ragbir's claim, the organizational plaintiffs fail the first and third prongs of the *Hunt* test.

Applying *Hunt*'s first prong, the organizational plaintiffs have failed to establish that any of their members other than Mr. Ragbir would have standing to sue in his or her own right.  To establish standing, a party must "allege, and ultimately prove, that he has suffered an injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief."  *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted).  Other than Mr. Ragbir, only six non-citizen members of the organizational plaintiffs are identified in the Complaint—they all belong to Casa De Maryland.  *See* Compl. ¶¶ 117–18.  With respect to two of these members, Missael Garcia and Monica Camacho, the Complaint only alleges that they "face potential retaliation."  *Id.* ¶ 117.  This is too conjectural an injury to establish standing.  *See Lujan*, 504 U.S. at 560.  The other four members allegedly have already been removed from the United States.  Compl. ¶ 118.  They too will not benefit from the relief plaintiffs seek.  Thus, the organizational plaintiffs have not established that any of their members

16

have standing to sue in their own right and therefore cannot assert associational standing.[10]

Even were the organizational plaintiffs to establish that specific members other than Mr. Ragbir had standing, they could not assert associational standing because they also fail *Hunt*'s third prong, because "'the fact and extent' of the injury that gives rise to [their] claims for injunctive relief 'would require individualized proof.'"   *Bano*, 361 F.3d at 714 (quoting *Warth v. Seldin*, 422 U.S. 490, 515–16 (1975)); *accord Rent Stabilization Ass'n of NYC v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993).  Here, any inquiry into whether the government has selectively enforced the immigration laws against an alien on the basis of his or her activism will necessarily require an investigation into the alien's activities and the alleged enforcement actions taken against him or her.  The activism alleged in the Complaint takes many forms, and the aliens identified in the Complaint appear to be in different stages of their immigration proceedings.  In light of these diverse circumstances, it will not be possible to adjudicate any claim of selective enforcement without individualized proof.

> **B.  Plaintiffs Are Unlikely to Succeed on the Merits Because They Cannot Show That Any Actions Would Not Have Been Taken Against Them But for Their Activism**
>
> > **1.  Plaintiffs' retaliation claims fail because they cannot show but-for causation**

Plaintiffs are unlikely to succeed on the merits of their First Amendment retaliation claims even if they could overcome jurisdictional impediments.   To prevail on a First

---

[10] In a declaration submitted with their motion for a preliminary injunction, plaintiffs identify Jean Montrevil and Maru Mora Villalpando as members of the Detention Watch Network.  Declaration of Mary Small ¶¶ 20–21.  Mr. Montrevil lacks standing because he has already been removed from the United States.  Compl. ¶ 58.  Ms. Villalpando lacks standing because the only injury she is alleged to have sustained is being served with a Notice to Appear after overstaying a tourist visa.  Compl. ¶¶ 87–89.  Ms. Villalpando does not have a "legally protected interest" in avoiding service of a duly issued Notice to Appear.  *Lujan*, 504 U.S. at 560.

Amendment retaliation claim, even in the less challenging non-immigration context, a plaintiff must prove "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gonzalez v. Hasty*, 802 F.3d 212, 222 (2d Cir. 2015) (quotations omitted).  Because plaintiffs seek to enjoin the enforcement of Mr. Ragbir's final order of removal, they must prove these elements with respect to Mr. Ragbir by clear and convincing evidence.  8 U.S.C. § 1252(f)(2); *see Nken*, 556 U.S. at 428–32, 434 (distinguishing between stays and injunctions, including preliminary injunctions, with respect to the applicability of § 1252(f)(2)).

Plaintiffs have failed to establish a likelihood of success as to the third element, causation.  The Supreme Court and the Second Circuit have repeatedly held that the required causation in the First Amendment retaliation context is but-for causation.  *See, e.g.*, *Hartman*, 547 U.S. at 256 ("[W]e have held that retaliation is subject to recovery as the but-for cause of official action offending the Constitution."); *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998) ("[W]hen a public employee shows that protected speech was a 'motivating factor' in an adverse employment decision, the employer still prevails by showing that it would have reached the same decision in the absence of the protected conduct."); *Matusick v. Erie Cnty. Water Authority*, 757 F.3d 31, 47 (2d Cir. 2014).[11]  Accordingly, defendants will prevail on Mr. Ragbir's retaliation

---

[11] Plaintiffs' brief mischaracterizes this standard by quoting *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014), out of context.  *See* Pls. Mem. at 10–11.  *Royal Crown* explained that "*[t]o survive summary judgment* on a . . . First Amendment retaliation claim a plaintiff must demonstrate that he engaged in protected speech, and that the speech was a substantial *or motivating factor* in an adverse decision taken by the defendant." 746 F.3d at 544 (first emphasis added).  While a plaintiff may survive summary judgment by showing that his speech was a substantial or motivating factor, defendant then has the opportunity to show that it would have taken any adverse action regardless of a plaintiff's speech, and if defendant does so, it will prevail.  *See Matusick*, 757 F.3d at 47.

claim if he cannot show by clear and convincing evidence that he would not have been removed in the absence of his activism.

Plaintiffs are unlikely to show that Mr. Ragbir's activism was a but-for cause of his attempted removal because a sufficient reason for Mr. Ragbir's removal was his conviction on one count of conspiracy to commit wire fraud and six counts of wire fraud. *United States v. Ragbir*, 38 F. App'x 788, 790–91 (3d Cir. 2002). Mr. Ragbir's conviction was based on his prominent role in a mortgage fraud scheme. *Id.* at 793–94. In Mr. Ragbir's own words,

> He [Mr. Ragbir's codefendant] told me that he wanted me to do business with him through my company and set up real estate loans for people that he would send to me as referrals. He told me that he wanted to get the money from the loans and would send people to me to use false names and information and offered to me one point of each loan. One point is one-percent of the dollar amount of each loan. I told him that I would do it for him.
> . . .
> He [Mr. Ragbir's codefendant] is the guy that was running the whole scheme through me at my job Household Finance between December 1998 and now. He has organized the filing of 1.5 million dollars worth of fraudulent loans by using me to process the loans through Household Finance and allow others to assume false identities to apply for the loans.

*Id.* at 791–92.

Under ICE's current New York City Field Office Director, requests for administrative stays of removal, or continuations of stays of removal, have been denied unless supported by specific reasons why ICE should exercise its discretion, beyond the hardships incident to any removal. *See* Decker Decl. ¶ 14. Plaintiffs therefore are unlikely to show by clear and convincing evidence that Mr. Ragbir would not have been removed from the United States on the

basis of his aggravated felony conviction, but for his activism.[12]   Moreover, the length of time between the entry of Mr. Ragbir's final order of removal and ICE's attempt to execute his removal does not support plaintiffs' retaliation claims.  ICE granted Mr. Ragbir discretionary stays of removal while he pursued various challenges, including a stay in 2016 (which lasted through January 19, 2018), while his most recent petition for review at the Second Circuit was still pending.  Mechkowski Decl. ¶¶ 10, 12.  After that petition was denied, and in the absence of any other specific basis warranting the exercise of ICE's discretion, ICE decided in good faith to execute the removal order.  *See* Decker Decl. ¶¶ 21–22.

Plaintiffs are also unlikely to prevail on the First Amendment retaliation claims of the non-plaintiff aliens identified in the Complaint, assuming *arguendo* they have standing to assert such claims.  With respect to the non-plaintiff aliens, plaintiffs have failed to sufficiently allege causation—let alone show a likelihood of success on the merits.  Overall, plaintiffs' causation allegations with respect to these aliens are vague, conclusory, or non-existent.  For example, plaintiffs allege that ICE arrested Jose Victor Garcia Diaz at a cultural event in Stowe, Vermont, one day after he returned from a meeting in Los Angeles, California dedicated "to build[ing] a unified movement for respect for human rights in food supply chains."  Compl. ¶ 82.  Even accepting these allegations as true, there is no inference of retaliatory motive or causation to be

---

[12] Plaintiffs point to the removal of Jean Montrevil as evidence that ICE's attempt to remove Mr. Ragbir was driven by Mr. Ragbir's and Mr. Montrevil's activism.  *See* Pls. Mem. at 11.  However, Mr. Montrevil was convicted of possession with intent to distribute cocaine, conspiracy to possess with an intent to distribute cocaine, and malicious wounding of another inmate in 1990.  Mechkowski Decl. ¶ 34.  His removal, like the decision to attempt to remove Mr. Ragbir, was the product of his criminal conviction.  *See* Decker Decl. ¶¶ 21–22, 29.  Plaintiffs also point to supposed departures "from the normal procedural sequence" to suggest that an improper purpose played a role in the actions taken against Mr. Ragbir and Mr. Montrevil.  Pls. Mem. at 11.  However, these limited departures are explained by unique operational concerns, not any nefarious motive.  *See id.* ¶¶ 25–27, 29–30; Mechkowski Decl. ¶¶ 18–20, 22, 24–26.

drawn from them.  Plaintiffs do not allege that ICE knew of Mr. Garcia Diaz's activities on the other side of the country the day before his detention, that ICE was opposed to them, or that ICE arrested Mr. Garcia in order to put an end to them.

The allegations pertaining to other non-plaintiff aliens are similarly deficient.  Even when the allegations do pertain to ICE's decision making, they do not establish retaliatory motive.  For instance, plaintiffs allege that Eliseo Jurado came to ICE's attention as a result of his wife's decision to take sanctuary in a church.  Compl. ¶¶ 93–94.  However, accepting this allegation as true, it does not indicate any retaliatory motive on ICE's part: ICE is charged with enforcing the immigration laws, and, when it learns of an "ongoing violation of United States law" through publicly available information, it may constitutionally act to address the violation.  *AAC*, 525 U.S. at 491.

The organizational plaintiffs are also likely to fail with respect to any direct claims of First Amendment retaliation raised on their own behalf.  The organizational plaintiffs cannot establish the second or third elements of a First Amendment retaliation claim.  Indeed, plaintiffs' claim that defendants "took adverse action against the [organizational] plaintiff[s]" makes no sense because the organizational plaintiffs are not aliens—or even individuals—against whom the immigration laws at issue can ever be enforced.  *Gonzalez v. Hasty*, 802 F.3d 212, 222 (2d Cir. 2015).  Further, the chilling effect that the organizational plaintiffs claim to have experienced does not amount to an adverse action taken against them.  The Supreme Court has held that a "chilling effect aris[ing] merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual" is not cognizable under the First Amendment.  *Laird*, 408

U.S. at 11.  Moreover, far from alleging a chilling effect, the organizational plaintiffs have asserted that their speech has increased as a result of defendants' enforcement of the immigration laws.  *See, e.g.*, Compl. ¶ 120.

The organizational plaintiffs' direct claims also fail on causation grounds.  Assuming *arguendo* that defendants' broad enforcement of the immigration laws could be seen as adverse action against the organizational plaintiffs, plaintiffs have not and cannot allege that their activism was the but-for cause of this enforcement.  Defendants are charged with enforcing the immigration laws and would do so regardless of the organizational plaintiffs' speech.

### 2. Plaintiffs' viewpoint discrimination claims fail for lack of direct restriction of speech, and because they are merely duplicative of their retaliation claims

Plaintiffs are unlikely to succeed on their second count, for viewpoint discrimination, because the immigration laws at issue do not restrain speech.  Although plaintiffs style their claims as two separate counts of retaliation and viewpoint discrimination, both counts challenge defendants' alleged retaliatory enforcement of the immigration laws against Mr. Ragbir and certain non-plaintiff aliens on the basis of their activism.  As such, plaintiffs' second count is duplicative of their first count and fails because the immigration laws at issue, by their plain terms, do not regulate expressive conduct.

Every case cited by plaintiffs in support of their second count concerns a challenge to statutes or rules that regulated the primary conduct of speech.  *See* Compl. ¶¶ 130–37; Pls. Mem. at 12–13.  By contrast, the immigration laws do not regulate the primary conduct of non-fraudulent speech and instead determine whether an alien has the right to remain the United States.  To the extent the immigration laws can be applied in a discriminatory manner on First Amendment grounds, such selective enforcement could only amount to a retaliation claim.  *See Greenwich Citizens Comm., Inc. v. Cntys. of Warren and Washington Indus. Dev. Agency*, 77

F.3d 26, 31–32 (2d Cir. 1996) (discussing "crucial distinction between retaliatory First Amendment claims and affirmative First Amendment claims"). And, as discussed *supra*, plaintiffs' retaliation claims are deficient.

Based on the foregoing, plaintiffs' motion for a preliminary injunction should be denied because they are unlikely to succeed on the merits.

## II.  PLAINTIFFS HAVE NOT SHOWN IRREPARABLE HARM

Plaintiffs also have failed to show that they will suffer irreparable harm in the absence of a preliminary injunction.  "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (quotations omitted).  Plaintiffs incorrectly identify the First Amendment harms relevant to this analysis.  "[T]he First Amendment does not prevent restrictions directed at . . . [nonexpressive] conduct from imposing incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).  The loss of Mr. Ragbir's or any other alien's ability to speak in the United States as a result of his or her removal would be an incidental consequence of immigration laws that are directed at nonexpressive conduct, namely the presence of aliens in the United States without permission, *see Fong Yue Ting v. United States*, 149 U.S. 698, 730 (1893). If the incidental burden on an alien's speech caused by removal constituted irreparable harm, then every alien challenging a removal order could show irreparable harm as a matter of course. This has never been the law.

Likewise, the Coalition will not be irreparably harmed by Mr. Ragbir's removal. Although it is difficult for any organization to lose a valued executive, such harms can "be remedied [even] if [this] [C]ourt waits until the end of trial to resolve the harm." *Freedom*

*Holdings, Inc.*, 408 F.3d at 114 (quotations omitted). The cases plaintiffs cast as suggesting otherwise address the specific circumstance of relief barring extraordinary former employees from competing with their former employers. *See, e.g.*, *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 70 (2d Cir. 1999) ("If the unique services of such employee *are available to a competitor*, the employer obviously suffers irreparable harm." (emphasis added)). This line of cases is inapposite because the Coalition is not a private employer with competitors.

The organizational plaintiffs likewise will not suffer irreparable harm without preliminary relief. They have failed to "demonstrate that . . . they will suffer an injury that is neither remote nor speculative." *Freedom Holdings, Inc.*, 408 F.3d at 114 (quotations omitted). Specifically, the allegations of "subjective chill" raised by the organizational plaintiffs—against whom the immigration laws at issue cannot be enforced at all, much less selectively—"are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird*, 408 U.S. at 13–14. Indeed, the organizational plaintiffs assert that their First Amendment activities have actually increased as a result of enforcement of the immigration laws. *See* Compl. ¶ 120. And any alleged increased demands on the organizational plaintiffs' resources, *see* Pls. Mem. at 24, do not constitute irreparable harm. *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). Finally, assuming *arguendo* the organizational plaintiffs have standing to raise the claims of non-plaintiff aliens, the allegations in the Complaint concerning these aliens are too vague and conclusory to establish significant or irreparable harm. *E.g.*, Compl. ¶¶ 82, 93–94.

### III. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST ARE IN THE GOVERNMENT'S FAVOR

The balance of equities and the public interest weigh decisively against plaintiffs' request for preliminary injunctive relief. Unlike many other requests for preliminary injunctive relief in

the First Amendment context where the legality of a statute or regulation may be in question, with respect to Mr. Ragbir and others, plaintiffs are asking this Court to extend, by injunction, "*an ongoing violation* of United States law." *AAC*, 525 U.S. at 491.  The public has a strong interest in enforcement of the laws, and "[t]he contention that a violation must be allowed to continue because it has been improperly selected is not powerfully appealing." *Id.*; *accord Nken*, 565 U.S. at 435–36.

Further, any harms to plaintiffs absent an injunction will be modest.  Mr. Ragbir would be able to continue to speak and work in Trinidad and Tobago.  The organizational plaintiffs' speech would remain robust.  And even if the interests of non-plaintiff aliens were properly before this Court, immediate, irreparable harms to their interests have not been established.

Plaintiffs perversely suggest that the public's interest in the enforcement of the immigration laws should be given little weight here because ICE has not sought to deport Mr. Ragbir for the past eleven years despite a final order of removal.  *See* Pls. Mem. at 24.  This is wrong for a number of reasons, not the least of which is the fact that the Second Circuit ruled on (and denied) Mr. Ragbir's most recent petition for review on March 4, 2016, after ICE had exercised its discretion in January 2016 to grant Mr. Ragbir a two-year administrative stay of removal.  More broadly, it is wrong for plaintiffs to suggest that the government's favorable exercise of discretion to allow Mr. Ragbir to remain in the United States while he availed himself of the fullest extent of due process over the past decade should now be turned against it.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated:   New York, New York
       March 7, 2018

                               Respectfully submitted,

                               GEOFFREY S. BERMAN
                               United States Attorney for the
                               Southern District of New York,
                               Attorney for the United States

By:      /s/
                               Jeffrey S. Oestericher
                               Brandon M. Waterman
                               Steven J. Kochevar
                               Joseph N. Cordaro
                               Assistant United States Attorneys
                               86 Chambers Street, Third Floor
                               New York, New York 10007
                               Tel.    (212) 637-2741
                               Fax    (212) 637-2786