IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAVIDATH LAWRENCE RAGBIR et al., | ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | |
| v. | |
| THOMAS D. HOMAN et al., | |
| Defendants. | |

Civil Action No. 18-cv-1159

**REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

                                                                                            **Page**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

I.      Plaintiffs Are Likely To Succeed on the Merits ................................................................ 1

     A.    Plaintiffs Are Likely To Prevail on their First Amendment Claims ................................. 1

     B.    This Court Has Subject-Matter Jurisdiction ........................................................ 5

II.     Plaintiffs Face Irreparable Harm Absent Relief .............................................................. 9

III.    The Balance of Hardships and Public Interest Support a Preliminary Injunction ............ 10

CONCLUSION ........................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
    868 F.3d 104 (2d Cir. 2017) ............................................................................................. 10

*Delgado v. Quarantillo*,
    643 F.3d 52 (2d Cir. 2011) .................................................................................................. 6

*Elgharib v. Napolitano*,
    600 F.3d 597 (6th Cir. 2010) .............................................................................................. 8

*Elrod v. Burns*,
    427 U.S. 347 (1976) ............................................................................................................ 9

*Greenwich Citizens Comm., Inc. v. Cnties. of Warren & Wash. Indus. Dev.
    Agency*,
    77 F.3d 26 (2d Cir. 1996) .................................................................................................... 4

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ............................................................................................................ 8

*Jennings v. Rodriguez*,
    138 S. Ct. 830 (2018) ...................................................................................................... 6, 7

*Johnson v. Robison*,
    415 U.S. 361 (1974) ............................................................................................................ 7

*Laird v. Tatum*,
    408 U.S. 1 (1972) ................................................................................................................ 8

*Ragbir v. United States*,
    2018 WL 1446407 (D.N.J. Mar. 23, 2018) ............................................................... *passim*

*Rajah v. Mukasey*,
    544 F.3d 427 (2d Cir. 2008) ................................................................................................ 5

*Reno v. American-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ............................................................................................... 4, 5, 7, 8

*Simmonds v. INS*,
    326 F.3d 351 (2d Cir. 2003) ................................................................................................ 8

*Webster v. Doe*,
    486 U.S. 592 (1988) ............................................................................................................ 7

*In re World Trade Ctr. Disaster Site Litig.*,
    722 F.3d 483 (2d Cir. 2013).................................................................................3

**Statutes**

8 U.S.C.
    § 1221.............................................................................................................8
    § 1231.............................................................................................................8
    § 1252(a).........................................................................................................5
    § 1252(a)(2)(D)................................................................................................5
    § 1252(a)(5).....................................................................................................5
    § 1252(b).........................................................................................................5
    § 1252(b)(9)..................................................................................................5-7
    § 1252(f)(1).....................................................................................................8
    § 1252(g).........................................................................................................7

28 U.S.C.
    § 1331.............................................................................................................5

**Other Authorities**

Antonio Olivo, *Virginia Activist Held by ICE, Prompting Immigrant Groups To
    Push for her Release*, Wash. Post (Mar. 8, 2018)...............................................2

John Burnett, *Immigrant Advocates Warn ICE Is Retaliating for Activism*, NPR
    (Mar. 16, 2018), https://goo.gl/nFhvei................................................................3

Mijente, *ICE Targets Undocumented Immigrants Who Share Their Story in the
    Media* (Feb. 26, 2018), https://goo.gl/S6WPj6...................................................3

# INTRODUCTION

The First Amendment prohibits the government from retaliating against protected speech or from restricting it based on its content or viewpoint. Here, Plaintiffs have documented a nationwide campaign by immigration authorities to silence their critics by detaining, deporting, and otherwise targeting them. Mr. Ragbir is one key example, but Plaintiffs have identified many other cases, and more continue to come to light. In response, the Government relies on a pair of self-serving, inadmissible, unsworn declarations, both of which it has had to correct.

The Government's theory that the Court cannot even hear Plaintiffs' claims would invite unchecked abuse. The INA's review-channeling provision do not apply here, but even if they did, a basic question remains: If this Court cannot hear these constitutional claims, which do not challenge any removal order and are based on actions taken long after Mr. Ragbir's order became final, how can Plaintiffs obtain judicial review? And if Plaintiffs have no viable claim, as the Government also contends, what is to stop Defendants from targeting their critics at will?

Absent a preliminary injunction, Defendants will banish Mr. Ragbir from this nation and continue disrupting the other Plaintiffs' speech and missions. And the amicus briefs by elected officials, faith leaders, and advocacy groups establish that the public interest favors relief. The Court should grant a preliminary injunction to preserve the status quo pending a final judgment.[1]

# ARGUMENT

## I. Plaintiffs Are Likely To Succeed on the Merits

### A. Plaintiffs Are Likely To Prevail on their First Amendment Claims

1. Mr. Ragbir and the Coalition are likely to succeed on their retaliation claims. The Government does not dispute that Mr. Ragbir and the Coalition engaged in protected core

---

[1] The U.S. District Court for the District of New Jersey has granted Mr. Ragbir a stay of removal pending resolution of his coram nobis petition. *Ragbir v. United States*, 2018 WL 1446407 (D.N.J. Mar. 23, 2018). That order does not preclude preliminary relief here. *Id.* at *18 n.16.

1

political speech, nor that Defendants took adverse action against Mr. Ragbir.  Mem.10.  The Government denies that Defendants took adverse action against the Coalition, Opp.21, but that is plainly wrong.  Detaining and attempting to deport the Coalition's Executive Director directly harmed the Coalition.  Compl. ¶¶ 105-111.  Defendants also successfully deported the Coalition's co-founder and surveilled the Coalition's offices.  Compl. ¶¶ 58, 112.

The Government principally argues that Plaintiffs "are unlikely to show that Mr. Ragbir's activism was a but-for cause of his attempted removal."  Opp.19.  That is not Plaintiffs' burden.  As the Government elsewhere concedes, Plaintiffs must show only that protected speech "was a substantial or motivating factor in [the] adverse decision"; it is then *the Government's* burden to show that Defendants would have made the same decision regardless.  Opp.18 n.11.  In any event, the Government does not dispute that Defendants (1) linked Mr. Ragbir's case with Mr. Montrevil's, (2) departed from normal procedures, and (3) explained their actions by referencing Mr. Ragbir's and Mr. Montrevil's activism.  Mem.11.  Indeed, during a January 5, 2018 meeting with four faith leaders, Defendant Mechkowski repeatedly complained about negative media portrayals of ICE, referenced Mr. Ragbir's protests "around the federal building," and acknowledged that Mr. Montrevil "made some very harsh statements."   Decl. of Rev. Micah Bucey ("Bucey Decl.") ¶¶ 3, 4. Mechkowski even stated that he told Mr. Montrevil directly: "You don't want to make matters worse by saying things." *Id.* ¶ 3.

And it is not just Mr. Ragbir and Mr. Montrevil.  Even before discovery, Plaintiffs have identified ten other immigrant-rights activists targeted by ICE over the past year, Compl. ¶¶ 79-96, and additional cases have come to light since Plaintiffs filed their motion.  *E.g.*, Antonio Olivo, *Virginia Activist Held by ICE, Prompting Immigrant Groups To Push for her Release*, Wash. Post (Mar. 8, 2018), https://goo.gl/KfdcHD.  The Government complains that the

causation allegations regarding these cases are "conclusory," Opp.20, but fails to address the Form I-213 ICE prepared for activist Maru Mora-Villalpando, discussed in Plaintiffs' discovery motion.  *See* ECF No. 40-1 at 8.  That formal ICE enforcement record expressly notes that Mora-Villalpando "has become a public figure" and "has extensive involvement with anti-ICE protests and Latino advocacy programs."  Mijente, *ICE Targets Undocumented Immigrants Who Share Their Story in the Media* (Feb. 26, 2018), https://goo.gl/S6WPj6.  And in another case, "ICE noted in the charging document that the subject—who had a DUI conviction—is 'a member and associate of Migrant Justice, a local immigrant advocate group.'"  John Burnett, *Immigrant Advocates Warn ICE Is Retaliating for Activism*, NPR (Mar. 16, 2018), https://goo.gl/nFhvei.

In response, the Government points to Mr. Ragbir's 2001 conviction.  Opp.3, 19.  A federal court has found that Mr. Ragbir may well succeed in challenging that conviction.  *Ragbir*, 2018 WL 1446407, at *18.  The conviction also cannot explain Defendants' recent actions, since it long predates Mr. Ragbir's 2007 final removal order and ICE's 2008 order of supervision, as well as ICE's administrative stays of removal in 2012, 2013, 2014, and 2016.  Compl. ¶¶ 41-48.  The Government also relies on the declarations of Decker and Mechkowski.  Opp.19-20.  But those unsworn declarations were not "expressly made under penalty of perjury," and thus are not proof of anything.  *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013).  And Decker had to file a second declaration because his first one contains numerous misstatements, including about how Mr. Ragbir came to Decker's attention and who decided to deport Mr. Montrevil.  ECF Nos. 56, 59.  The Government now has corrected Mechkowski's declaration as well, ECF No.68, and has never explained the origin of these misstatements.

Mechkowski's declaration also is contradicted in several instances by his statements at the January 5, 2018 meeting.  In his declaration, for example, Mechkowski states that he decided

3

to relocate Mr. Ragbir's January 11, 2018 check-in "based strictly on operational concerns" relating to ongoing construction. ECF No.50 ¶ 19. But at the meeting, Mechkowski invoked Mr. Ragbir's activism: "[T]his time isn't going to be like it was last time with people walking through here arm in arm" and "talking about what an injustice this is." Bucey Decl. ¶ 6. Even before discovery, this is not the only inaccuracy Plaintiffs have identified. *See* Das Decl. Self-serving, error-riddled, inadmissible declarations cannot suffice to disprove but-for causation.

      2. Plaintiffs also are likely to prevail on their viewpoint discrimination claim. Defendants' nationwide pattern and practice of targeting activists burdens speech based on its content, viewpoint, and speaker. Mem.13-14. The Government responds that "the immigration laws … do not regulate the primary conduct of non-fraudulent speech." Opp. 22. Even so, Defendants' campaign to detain and deport their critics obviously burdens critical speech.

      Nor does Plaintiffs' viewpoint discrimination claim merge into their retaliation claim. Opp.22. The case that the Government itself cites highlights a "crucial distinction" between retaliation and viewpoint discrimination—retaliation claims alone require subjective retaliatory intent. *Greenwich Citizens Comm., Inc. v. Cnties. of Warren & Wash. Indus. Dev. Agency*, 77 F.3d 26, 31-32 (2d Cir. 1996). The crux of Plaintiffs' retaliation claim is Defendants' retaliatory actions against Mr. Ragbir and the Coalition. The crux of Plaintiffs' viewpoint discrimination claim is Defendants' pattern and practice of targeting activists based on their activism.

      3. The Government appears to suggest that, even if Plaintiffs successfully prove every element of retaliation and viewpoint discrimination, *Reno v. American-Arab Anti-Discrimination Committee (AADC)*, 525 U.S. 471 (1999), bars their claims. Opp.6-9. That is doubly wrong.

      First, *AADC* involved a claim seeking to enjoin the initiation of removal proceedings against noncitizens allegedly selected for deportation based on their provision of material support

4

to what the Government viewed as a foreign terrorist organization. 525 U.S. at 473. That claim raised serious concerns about interfering in foreign policy and national security, delaying removal proceedings, and intruding on prosecutorial discretion. *Id.* at 487, 490-91. Plaintiffs' claims here raise none of those concerns, and barring Plaintiffs' claims would raise a countervailing risk that immigration officials could deport, detain, or otherwise target their critics at will. *See* ICAP/KFAI Br.5-11. *AADC* does not apply here.

Second, even if *AADC* did apply, Plaintiffs allege the kind of "outrageous" conduct that *AADC* and its progeny recognize can underlie a valid claim. 525 U.S. at 491. In *Rajah v. Mukasey*, 544 F.3d 427 (2d Cir. 2008), the Second Circuit did not just "restate[] … [*AADC*'s] holding," Opp.9 n.3—*Rajah* made clear that discrimination based on race, religion, and the like "would call for some remedy." 544 F.3d at 438. Retaliating against noncitizens for their protected core political speech is similarly egregious. ICAP/KFAI Br.11-19; Scholars Br.19-24.

### B. This Court Has Subject-Matter Jurisdiction

This Court has jurisdiction over Plaintiffs' claims challenging Defendants' retaliatory actions and discriminatory pattern and practice under 28 U.S.C. § 1331, the habeas statute, and the Suspension Clause. The Government's contrary arguments do not withstand scrutiny.

1. Nothing in 8 U.S.C. § 1252(a)-(b) bars Plaintiffs' claims. Opp.10-11. Those provisions restrict review only "[w]ith respect to review of a final order of removal," § 1252(b), sought via "a petition for review," § 1252(a)(2)(D), (5), on issues "arising from any action taken or proceeding brought to remove an alien," § 1252(b)(9). Those limitations do not apply here.

First, Plaintiffs do not challenge any removal order itself. Rather, Plaintiffs challenge Defendants' *post*-order actions, as well as Defendants' larger pattern and practice. Mem.17. The Government responds that this case is an "indirect challenge" that "would effectively nullify orders of removal or proceedings leading" thereto. Opp.11-12. Not so. "[A] suit brought

5

against immigration authorities is not per se a challenge to a removal order; whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011).  Unlike the "nunc pro tunc … waiver of admissibility" sought in *Delgado*, which would have rendered a removal order "invalid," *id.*, Plaintiffs' relief would not vacate Mr. Ragbir's or any other noncitizen's removal order.  Nor would Plaintiffs' relief bar enforcing any removal order for non-retaliatory reasons.  Unless Defendants' pattern and practice is so broad that they *never* take enforcement action *except* based on protected speech, Plaintiffs' claims will not "nullify" any removal order or proceeding.

Second, Plaintiffs' claims do not "aris[e] from an[] action taken or proceeding brought to remove an alien." § 1252(b)(9).  A plurality in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), read that phrase narrowly, allowing review of claims challenging prolonged immigration detention without bail.  Many injuries and legal questions would never arise but for removal proceedings, "but cramming judicial review of those questions into the review of final removal orders would be absurd." *Id.* at 840.  As in *Jennings*, Plaintiffs "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined." *Id.* at 841.  Section 1252(b)(9) therefore "does not present a jurisdictional bar." *Id.*; *see also Ragbir*, 2018 WL 1446407, at *8-9

Third, Plaintiffs could not have raised their present claims in removal proceedings or a petition for review therefrom, and regardless, a petition for review would come too late to prevent the chill on their First Amendment rights.  Mem.17.  The Government does not disclaim its longstanding position that immigration judges lack authority to hear claims like those here, and does not dispute that a court of appeals adjudicating a petition for review would lack an

6

adequate factual record.  *Id.*  Instead, the Government asserts that *AADC* "defeats" these concerns.  Opp.12.  But *AADC* set aside these concerns only where the defendants' conduct—there, initiating removal proceedings against members of "a Group that the Government characterize[d] as an international terrorist and communist organization"—"d[id] not offend the Constitution."  525 U.S. at 473, 491-92.  Defendants' conduct here—targeting their critics based on protected core political speech—violates the most basic constitutional guarantees.  A majority in *Jennings* construed § 1252(b)(9) to avoid making constitutional claims "effectively unreviewable."  138 S. Ct. at 840 (plurality op.); *see also id.* at 876 (Breyer, J., dissenting).  This Court should decline the Government's invitation to do the opposite here.

2.  Section 1252(g) also does not preclude review.  That provision undisputedly does not apply to Plaintiffs' claims challenging actions like detention, surveillance, and opening investigations.  Mem.18, 25.  As to Plaintiffs' other claims, the Government again invokes *AADC*, Opp.6-10, but that case described § 1252(g) as a "channel[ing]" provision designed to avoid "the deconstruction, fragmentation, and hence prolongation of removal proceedings."  525 U.S. at 478, 487.  Those concerns were acute in *AADC*, where plaintiffs challenged the *initiation* of removal proceedings *before* they moved forward.  *Id.* at 473.  Here, Plaintiffs challenge actions taken *after* Mr. Ragbir's removal order became final, as well as Defendants' ongoing pattern and practice.  Reading § 1252(g) to channel the claims here, which *cannot* be channeled via a petition for review, would be "absurd," *Jennings*, 138 S. Ct. at 840 (plurality op.), and at odds with the statutory structure and purpose, *see Ragbir*, 2018 WL 1446407, at *7; Mem.18.

The Government simply cannot satisfy its burden to show by "clear and convincing" evidence, *Johnson v. Robison*, 415 U.S. 361, 373-74 (1974), that Congress intended § 1252(g) "to deny any judicial forum for a colorable constitutional claim," *Webster v. Doe*, 486 U.S. 592,

7

603 (1988). The Government yet again cites *AADC*, Opp.9 n.2, but the claims there plainly failed, unlike the more-than-colorable claims here, Mem.18-19. And in *Elgharib v. Napolitano*, 600 F.3d 597 (6th Cir. 2010); Opp.9 n.2, the plaintiff "could have obtained review of her … claims through judicial review of her final order of removal." 600 F.3d at 600 n.2. Not so here.

   3. Nor does § 1252(f)(1) bar Plaintiffs' claims. The Government does not dispute that § 1252(f)(1) permits review of (1) Mr. Ragbir's claims, (2) all Plaintiffs' declaratory claims, and (3) all Plaintiffs' claims challenging actions like opening investigations or surveillance. Mem.19-20. The Government contends that Plaintiffs' other claims would enjoin the operation of §§ 1221-1231. Opp.13-15 & n.7. But Plaintiffs' claims would neither strike down any statutory provision nor bar any provision's operation for non-retaliatory reasons. Sections 1221-1231 would still operate within their proper scope. And the Court should not read § 1252(f)(1) to allow only ineffectively speculative and tardy review from the Supreme Court. Mem.19.

   4. This Court independently has habeas jurisdiction over Mr. Ragbir's claims. The Government observes that Mr. Ragbir is not detained. Opp.12-15. That fact does not eliminate habeas jurisdiction. *Simmonds v. INS*, 326 F.3d 351 (2d Cir. 2003); Mem.20. The Government tries to distinguish *Simmonds* on its facts, Opp.15 n.9, but the court's holding is clear: A "final order of removal is sufficient, by itself, to establish the requisite custody." 326 F.3d at 354.

   5. Finally, the Government contends that the organizational Plaintiffs lack standing. The Government denies that Defendants' conduct is chilling because it is not "directed at" the organizational Plaintiffs, Opp.15, but the organizational Plaintiffs and their members and clients are "presently or prospectively subject to" Defendants' pattern and practice. *Laird v. Tatum*, 408 U.S. 1, 11 (1972); Mem.8. And chilling aside, under *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)—which the Government ignores—the organizational Plaintiffs may seek redress

for harm to their operations and missions.  Mem.14.  The organizational Plaintiffs also have associational standing.  *Contra* Opp.16-17.  Their members and clients have been targeted or reasonably fear targeting based on their speech, and the organizational Plaintiffs seek non-individualized relief enjoining Defendants' pattern and practice across the board.  Mem.8, 14.

## II.     Plaintiffs Face Irreparable Harm Absent Relief

1.  "Irreparable injury is easily found" here.  *Ragbir*, 2018 WL 1446407, at *18.  Even a "minimal" loss of First Amendment rights "unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976); Mem.21.  The Government responds by portraying the harm to Mr. Ragbir as a mere "incidental burden" on his speech.  Opp.23.  That is question-begging; Mr. Ragbir alleges that Defendants targeted him *because of* his speech.  Deportation obviously would render Mr. Ragbir's speech less meaningful and effective.  Mem.20-21.  And recognizing that fact would not entitle "every alien challenging a removal order" to a finding of irreparable harm.  Opp.23.  Only those with viable free speech claims could establish such harm.

Moreover, the Government ignores the irreversible trauma that deportation would inflict on Mr. Ragbir, including indefinite separation from his family and an abrupt end to his career as an activist in the United States.  Mem.21-22.  And the Government never suggests that it will facilitate Mr. Ragbir's return if he is deported but ultimately prevails.  Mem.22-23.

2.  The Government does not seriously dispute that losing its executive director will harm the Coalition.  The Government never explains how that harm can be remedied after trial.  Opp.23-24.  And while Plaintiffs' cases addressing the loss of an employee do involve "private employer[s] with competitors," Opp.24, that is a distinction without a difference.  The cases recognize the irreplaceable value of a uniquely qualified individual like Mr. Ragbir.

3.  As for the organizational Plaintiffs, the Government contends that they have nothing to fear because the immigration laws cannot be enforced against them.  Opp.24.  But Defendants

9

can and have enforced those laws against the organizational Plaintiffs' employees, members, and clients. Mem.8. Those actions, moreover, have forced these Plaintiffs "to divert money from [their] other current activities." *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 110 (2d Cir. 2017); *see* Mem.14. This is not merely an "increased demand[] on [their] resources," Opp.24; Defendants "ha[ve] impeded … the organization[s'] ability to carry out [their] responsibilit[ies]," *Oyster Bay*, 868 F.3d at 110. Far from being "vague and conclusory," Opp.24, the evidence of harm is concrete and specific, Mem.8.

**III.    The Balance of Hardships and Public Interest Support a Preliminary Injunction**

The balance of hardships favors Plaintiffs. The Government's supposed interest in ending "an ongoing violation of United States law," Opp.25, is undermined by its willingness to allow Mr. Ragbir to remain here for the past 11 years. Mem.24. The hardship to Plaintiffs absent relief, by contrast, would be devastating. *See also Ragbir*, 2018 WL 1446407, at *18.

The public interest also strongly favors preliminary relief, as the amicus briefs supporting Plaintiffs amply demonstrate. *See* N.Y. Elected Officials Br.10-16; Immigrant Rights Advocacy Organizations Br.5-12; Religious Leaders Br.17-25; *see also Ragbir*, 2018 WL 1446407, at *19. The Government suggests that the public interest now favors immediate deportation after the denial of Mr. Ragbir's most recent petition for review in 2016. Opp.25. But Mr. Ragbir has had two ICE check-ins since that ruling, Compl. ¶¶ 49, 65, and ICE has previously granted Mr. Ragbir administrative stays of removal even when he had no petition for review pending because he is not a flight risk or a danger to the community. Das Decl. ¶ 8; Compl. ¶ 44. There is little public interest in Mr. Ragbir's immediate deportation, if any, but there is an immense public interest in preventing his wrongful removal and in upholding the First Amendment.

## CONCLUSION

The Court should grant the motion for a preliminary injunction.

March 26, 2018                                                     Respectfully submitted,

                                                                   /s/  R. Stanton Jones
Alina Das, Esq. (AD8805)                                           R. Stanton Jones
Jessica Rofé, Esq. (JR5231)                                        John L. Freedman
Brittany Castle, Legal Intern                                      William C. Perdue
Jeremy Cutting, Legal Intern                                       Daniel F. Jacobson
WASHINGTON SQUARE                                                  Sally Pei
  LEGAL SERVICES, INC.                                             Stephen K. Wirth
Immigrant Rights Clinic                                            Andrew T. Tutt
New York University School of Law                                  ARNOLD & PORTER
245 Sullivan Street, 5th floor                                       KAYE SCHOLER LLP
New York, New York 10012                                           601 Massachusetts Ave., NW
Tel: (212) 998-6430                                                Washington, DC 20001
alina.das@nyu.edu                                                  (202) 942-5000
jessica.rofe@nyu.edu                                               (202) 942-5999 (fax)
                                                                   stanton.jones@arnoldporter.com

                                                                   Anthony Boccanfuso
                                                                   Ada Añon
                                                                   ARNOLD & PORTER
                                                                     KAYE SCHOLER LLP
                                                                   250 West 55th Street
                                                                   New York, NY 10019
                                                                   (212) 836-8000
                                                                   (303) 836-8689 (fax)
                                                                   anthony.boccanfuso@arnoldporter.com

                                                                   Emily Newhouse Dillingham
                                                                   ARNOLD & PORTER
                                                                     KAYE SCHOLER LLP
                                                                   70 West Madison Street
                                                                   Suite 4200
                                                                   Chicago, IL 60602
                                                                   (312) 583-2300
                                                                   (312) 583-2360 (fax)
                                                                   emily.dillingham@arnoldporter.com

                                         *Attorneys for Plaintiffs*

## AFFIRMATION OF SERVICE

    I, R. Stanton Jones, the undersigned attorney at law duly admitted to practice in the State of New York, respectfully show that on the 26th day of March, 2018, I caused a copy of the attached to be electronically filed, and that service was accomplished on all counsel of record by operation of CM/ECF.

                                                 /s R. Stanton Jones