UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
RAVIDATH LAWRENCE RAGBIR, et al.,

                     Plaintiffs,                 18-cv-1159 (PKC)

     -against-                        MEMORANDUM
                                            AND ORDER

THOMAS D. HOMAN, et al.,

                     Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Ravidath Lawrence Ragbir, a non-citizen who is a permanent resident of

the United States, is subject to a final order of removal.  (Verified Complaint ("VC") ¶ 42).

Ragbir was convicted in federal court of six counts of wire fraud and one count of conspiracy to

commit wire fraud.  United States v. Ragbir, 00 Cr. 121 (D.N.J.), aff'd, 38 F. App'x 788, 789–90

(3d Cir. 2002).  He served his prison term, and proceedings to remove him from the country

ensued.  (VC ¶¶ 41–42).  Before the Board of Immigration Appeals ("BIA") and the Second

Circuit, he unsuccessfully challenged the grounds for removal, the finding that he had been

convicted of an "aggravated felony."[1]

        Ragbir is also a "nationally-recognized immigration rights activist . . . who has

freely exercised his right to speak out against the injustices and inhumanity of our current

immigration system."  (VC ¶ 4).  In the present action, Ragbir and his co-plaintiffs ask this

Court, among other things, to grant an Order "restraining [d]efendants from taking any action to

---

[1] Subsections M and U of section 101(a)(43) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101(a)(43)(M), (U), provide the relevant definitions of "aggravated felony."

effectuate Mr. Ragbir's removal from the United States unless [d]efendants demonstrate to the Court's satisfaction that such action is untainted by unlawful retaliation or discrimination against protected speech." (VC at 41, Prayer for Relief at c).

Ragbir is joined in this action by New Sanctuary Coalition of New York City, CASA de Maryland, Inc., Detention Watch Network, National Immigration Project of the National Lawyers Guild, and New York Immigration Coalition (the "Organizational Plaintiffs"). Named as defendants are the Department of Justice, the Department of Homeland Security ("DHS"), and Immigration and Customs Enforcement ("ICE"), as well as Thomas D. Homan, Thomas R. Decker, Scott Mechkowski, Kirstjen M. Nielsen, and Jefferson B. Sessions III in their official capacities.[2]

Plaintiffs moved for a preliminary injunction. (Doc. 11). While that motion was pending, plaintiffs requested leave to file a motion for expedited discovery to support their preliminary injunction motion. (Doc. 40). Following the lead of the Supreme Court in a recent immigration case, the Court advised the parties that it would first address defendants' challenge to subject matter jurisdiction before considering whether leave is warranted. See In re United States, 138 S. Ct. 443, 444 (2017); (Order of Mar. 26, 2018, Doc. 70). The parties have briefed the issue of subject matter jurisdiction in the context of the preliminary injunction motion. For reasons that will be explained, all claims by plaintiffs to declare unlawful and to enjoin the execution of Ragbir's final order of removal are dismissed for want of subject matter jurisdiction.

---

[2] The attorneys representing the parties and the amici curiae are listed in Appendix A of this Memorandum and Order.

BACKGROUND

Ragbir became a lawful permanent resident in 1994. (VC ¶ 14). On September 12, 2001, following a 13-day jury trial, which resulted in a guilty verdict on seven counts, and the denial of post-verdict motions, Judge Bassler of the District of New Jersey sentenced Ragbir to 30 months imprisonment, 3 years supervised release, waiver of the fine, and imposition of restitution of $350,001. United States v. Ragbir, 00 Cr. 121 (WGB). The conviction was affirmed on appeal. United States v. Ragbir, 38 F. App'x 788, 789–90 (3d Cir. 2002). He was allowed to remain free on bail pending appeal and did not begin to serve his 30-month sentence until sometime after January 26, 2004. United States v. Ragbir, 00 Cr. 121 (WGB) (Doc. 80; Doc. 111).

Following completion of his term of imprisonment, ICE detained him and initiated removal proceedings. (VC ¶ 41–42). An immigration judge concluded that Ragbir had committed an "aggravated felony," warranting removal under 8 U.S.C. § 1227(a)(2)(A)(iii), and entered an order of removal on August 4, 2006. In re Ragbir, No. A 44-248-862.[3] The order of removal became final upon the BIA dismissing the appeal in 2007. In re Ragbir, No. A 44-248-862, 2007 WL 1180505 (B.I.A. Mar. 14, 2007); (VC ¶ 42). Ragbir filed a petition for review of his final order of removal with the Second Circuit, which denied the petition, Ragbir v. Holder, 389 F. App'x 80, 85 (2d Cir. 2010) (summary order), and, thereafter, for a writ of certiorari to the Supreme Court, which denied that petition, Ragbir v. Holder, 565 U.S. 816 (2011). He subsequently moved for the BIA to reconsider and reopen his removal proceedings, both of which were denied, and filed a petition for review of this decision with the Second Circuit, which dismissed the petition. Ragbir v. Lynch, 640 F. App'x 105, 106–08 (2d Cir. 2016) (summary

---

[3] The immigration proceedings of which this Court may take judicial notice are found in the record of Ragbir's coram nobis proceeding. Ragbir v. United States, 17 Civ. 1256 (KM) (D.N.J. Jan. 23, 2018) (Doc. 22-1).

order).  Another motion to reopen and reconsider his order of removal and a coram nobis petition challenging his original conviction are currently pending.  (VC ¶ 45).

ICE released Ragbir from detention in 2008, and since then, Ragbir has become a vocal advocate for immigrant rights and "a central figure in the broader community of immigration advocates."  (VC ¶¶ 4, 14; Doc. 17 ¶ 8).  ICE granted him an administrative stay of removal pursuant to 8 C.F.R. § 241.6 in 2011.  (See VC ¶ 48).  ICE renewed the administrative stay three times, with the last stay set to expire on January 19, 2018.  (VC ¶¶ 48, 64).  Eight days before Ragbir's administrative stay was to expire, ICE revoked the administrative stay and detained him in anticipation of imminent execution of the final order of removal.  (VC ¶¶ 66–67).

Ragbir immediately filed for a writ of habeas corpus in this District, seeking, among other things, that ICE release him.  (VC ¶ 70; Amended Petition at 24, Ragbir v. Sessions, 18 Civ. 236 (KBF) (Jan. 17, 2018), 2018 WL 623557).  Judge Forrest granted the writ and ordered Ragbir's immediate release from custody to "allow and provide for an orderly departure."  Ragbir v. Sessions, 18 Civ. 236 (KBF), 2018 WL 623557, at *3 (S.D.N.Y. Jan. 29, 2018).  Following Ragbir's release, he was served with a notice to report for deportation on February 10, 2018 and asked the Court to retain jurisdiction over the matter.  (Das Letter, Ragbir v. Sessions, 18 Civ. 236 (KBF) (Jan. 30, 2018), 2018 WL 623557).  Judge Forrest declined to do so, writing, in part, that "[t]his Court has no jurisdiction to grant any further relief.  The Court provides this direction to the parties now so that if further claims are pursued, they should be pursued in the appropriate forum, or by way of a new action."  (Order, Ragbir v. Sessions, 18 Civ. 236 (KBF) (Jan. 31, 2018), 2018 WL 623557).

The day before Ragbir's February 10 report date, this action was filed. The parties stipulated to a stay of removal during the pendency of Ragbir's motion for a preliminary injunction. The stay was entered as an Order. (Stipulated Order, (Jan. 9, 2018), Doc. 4).

Plaintiffs assert that ICE decided to execute the final order of removal because Ragbir is an outspoken advocate for immigrant rights. (See VC ¶ 4). This decision, plaintiffs argue, is consistent with "a pattern and practice of [ICE] targeting immigrants who exercise[] their fundamental First Amendment rights to criticize immigration policy and immigration enforcement." (VC ¶ 78). Plaintiffs conclude that this conduct is illicit retaliation and content, viewpoint, and speaker discrimination in violation of the First Amendment of the United States Constitution. (VC ¶¶ 124–37). They request (1) a declaration that defendants' actions violate the First Amendment, (2) an "injunction restraining [d]efendants from taking any action to effectuate Mr. Ragbir's removal from the United States unless [d]efendants demonstrate to the Court's satisfaction that such action is untainted by unlawful retaliation or discrimination against protected speech," and (3) an "injunction restraining [d]efendants on a nationwide basis from selectively enforcing the immigration laws against any individual—including, without limitation, through investigation, surveillance, detention, deportation, or any other adverse enforcement action—based on the individual's protected political speech about U.S. immigration law and policy." (VC at 40–41).

DISCUSSION

I.      The Court's Subject Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction," Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978), bound by the limits placed upon them by Article III of the United States Constitution and by Congress, Kokkonen v.

Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  By virtue of Congress's power, granted in Article III, to create all federal courts inferior to the Supreme Court, Congress retains the "lesser power to 'limit the jurisdiction of those [c]ourts.'"  Patchak v. Zinke, 138 S. Ct. 897, 906 (2018) (plurality) (quoting United States v. Hudson, 11 U.S. 32, 33 (1812)); accord Hudson, 11 U.S. at 33 ("[T]he power which congress possess to create Courts of inferior jurisdiction . . . necessarily implies the power to limit the jurisdiction of those Courts to particular objects.").  The "inferior" federal courts possess "only that jurisdiction which Congress confers upon them by statute."  Hendrickson v. United States, 791 F.3d 354, 362 (2d Cir. 2015); accord Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 333 (2d Cir. 2006) ("The power of the inferior federal courts is 'limited to those subjects encompassed within a statutory grant of jurisdiction.'" (quoting Bechtel v. Competitive Techs., Inc., 448 F.3d 469, 471 (2d Cir. 2006))).  In other words, absent statutory authorization, the Court lacks power to resolve the case or controversy.  Achtman, 464 F.3d at 333.  For a court to act without jurisdiction "is, by very definition, for a court to act ultra vires."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998).

Plaintiffs contend that this Court has jurisdiction over this matter under 28 U.S.C. § 1331, which supplies the federal courts with jurisdiction over federal questions, 28 U.S.C. § 2241, which is the general habeas corpus statute, and the Suspension Clause, U.S. Const. art. I, § 9, cl. 2.  (VC ¶ 10).[4]

II.    Section 1252(g) Eliminates Subject Matter Jurisdiction over Ragbir's Challenge to the Execution of an Order of Removal

Defendants urge that Ragbir's claims arise from ICE's decision to execute a removal order against him and, therefore, that the claim is not within this Court's subject matter

---

[4] Although plaintiffs claim that the Court has jurisdiction under section 2241 and the Suspension Clause, they do not request the issuance of a writ of habeas corpus.

jurisdiction. The provision on which they rely reads as follows:

> (g) Exclusive jurisdiction
>
> > Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28 [Writs of Habeas Corpus], or any other habeas corpus provision, and sections 1361 [Writs of Mandamus] and 1651 [All Writs Act] of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).[5]

Plaintiffs' claims seek to enjoin the execution of Ragbir's removal order and to declare the decision to execute the order unconstitutional and, thus, arise from the decision of the Secretary of Homeland Security to execute a final order of removal against Ragbir. This is plain from the allegations of the Verified Complaint and plaintiffs' candid briefing to this Court. The Verified Complaint alleges that Ragbir is "subject to a final order of removal." (VC ¶¶ 5, 10). Apart from costs and attorney's fees, plaintiffs seek only declaratory and injunctive relief. (VC at 40–41). Plaintiffs also seek to have this Court "restrain [d]efendants from taking any action to effectuate Mr. Ragbir's removal from the United States unless [d]efendants demonstrate to the Court's satisfaction that such action is untainted by unlawful retaliation or viewpoint discrimination." (VC ¶ 9). Restraining defendants from "effectuat[ing] . . . removal" is, in this context, synonymous with "execut[ing] an order of removal." See Duamutef v. INS, 386 F.3d 172, 181 (2d Cir. 2004) (stating that it had "no difficulty find that the relief sought by [the petitioner] comes within the 'execut[ion]' prohibition of § 1252(g)" when petitioner was

---

[5] Because Congress has transferred the authority to "carry[] out the immigration enforcement functions" formerly performed by INS to the Secretary of Homeland Security, 6 U.S.C. § 202(3), the reference in section 1252(g) to the Attorney General is "deemed to refer to DHS," Ali v. Mukasey, 524 F.3d 145, 150 (2d Cir. 2008).

"repeatedly challenging the INS's failure to 'effectuate' or 'expedite' his removal").

"Execution" means "[p]utting into force. The completion, fulfillment, or perfecting of anything, or carrying it into operation and effect." United States v. Wiehl, 904 F. Supp. 81, 87 (N.D.N.Y. 1995) (quoting Black's Law Dictionary, 568 (6th ed. 1990)). Plaintiffs' brief to this Court describes this action accurately as a challenge to "[d]efendants' retaliatory execution of the order." (P. Mem. in Support, Doc. 12 at 24).

The limitation on jurisdiction found in section 1252(g) does not depend on the form or theory on which a plaintiff proceeds and includes "any cause or claim by an alien," provided that the claim "aris[es] from" the decision "to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). The statute forecloses the exercise of jurisdiction (except as permitted elsewhere in section 1252) under "any . . . provision of law." Id. A 2005 amendment to section 1252(g) added explicit reference to "statutory or nonstatutory" law and, specifically, writs of habeas corpus or mandamus and petitions asserted under the All Writs Act. REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231. Compare § 1252(g), with Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, § 306, 110 Stat. 3009.

Before section 1252(g) was amended in 2005 to its current form, the Supreme Court construed section 1252(g) in the context of a First and Fifth Amendment claim by individuals who were asserting that INS, the entity tasked with enforcing the immigration laws before ICE, targeted them for deportation because they were members of a group that advocated terrorism. Reno v. Am.-Arab Anti-Discrimination Comm. ("AADC"), 525 U.S. 471, 474 (1999). The Court concluded that such a claim fell within section 1252(g), but it also narrowed the scope of the provision, concluding that it reaches only "three discrete actions that the

Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" Id. at 482 (emphasis in original).

The Court reasoned that Congress had "good reason" to select these three particular stages of the removal process for "special attention." Id. at 483. When Congress enacted section 1252(g), the INS, in its discretion, "had been engaging in a regular practice (which had come to be known as 'deferred action') of" deferring or declining to commence proceedings, adjudicate cases, or execute removal orders "for humanitarian reasons or simply for its own convenience." Id. at 483–84. An offshoot of this practice was that removable aliens began asserting selective prosecution claims when this discretion was not exercised. Id. at 483–84.

The effect was that aliens were able to cause "the deconstruction, fragmentation, and hence prolongation of removal proceedings" by bringing these claims outside the streamlined process that was then in place. Id. at 485, 487. The ability to prolong litigation proved useful for removable aliens, as it allotted more time for the removable alien's "status [to] change—by, for example, marriage to an American citizen"—and "simply . . . extend[ed] the alien's unlawful stay," a substantial benefit for those attempting to remain in the United States indefinitely. Id. at 490. Congress, through section 1252(g), sought to alleviate these problems by ensuring that if these decisions "are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress ha[d] designed." Id. at 485.

The selective enforcement claims in AADC are similar to the claims asserted by plaintiffs. While labeled First Amendment retaliation and content and viewpoint discrimination, plaintiffs' claims are species of selective enforcement claim, asserting that "[d]efendants have

engaged in a nationwide pattern and practice of <u>selectively enforcing</u> the immigration laws against immigration-rights activists on the basis of their protected speech." (VC ¶¶ 127–28 (emphasis added)). Although the claim in <u>AADC</u> was premised on selective enforcement stemming from associational activities rather than, as here, speech activities, there is no principled reason for this distinction to make a difference in the interpretation of section 1252(g).

A potentially important distinction between this case and <u>AADC</u> is that the selective enforcement in <u>AADC</u> allegedly took place in "commenc[ing]" removal proceedings, thus giving the plaintiffs the potential for raising the issue in the context of judicial review of a final order of removal. <u>See</u> <u>AADC</u>, 525 U.S. at 473. But this distinction does not necessarily work in Ragbir's favor. Ragbir does not challenge in this proceeding the lawfulness of the order of removal or its finality. He has had a full and fair opportunity to have the BIA and the Second Circuit review both his order of removal as well as the immigration judge's refusal to reopen and reconsider the order. His claim is rather that that because ICE, purportedly with retaliatory animus, decided to enforce the final order of removal—instead of to continue staying his removal—they must continue to forebear unless they prove that any future decision to enforce the order is "untainted" by his speech activities. As the <u>AADC</u> Court wrote, "in all cases, deportation is necessary in order to bring to an end *an ongoing violation* of United States law. The contention that a violation must be allowed to continue because it has been improperly selected is not powerfully appealing." <u>AADC</u>, 525 U.S. at 491 (emphasis in the original). That is particularly true when the existence of an ongoing violation has already been determined by clear and convincing evidence by an immigration judge and affirmed on review.

Ragbir argues nonetheless that his claim should be allowed to proceed, contending that section 1252(g) does not apply to his claim. Specifically, he asserts that

section 1252(g) is a "channeling provision," functioning to consolidate all claims within its scope into a petition for review of a final order of removal that must be filed in a federal court of appeals. (Doc. 12 at 25). He maintains that section 1252(g) cannot channel his claims that arose after the order of removal issued and, thus, the Court should not "read [section 1252(g)] to channel claims that cannot be channeled." (Id.; accord Doc. 72 at 11). But section 1252(g) does not read as a channeling provision; it is a jurisdictional bar, precluding review of "any cause or claim" within its strictures "[e]xcept as provided in" the remainder of section 1252. See AADC, 525 U.S. at 485 (noting that section 1252(g) is "designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that *if they are reviewable at all*, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed" (emphasis added)).

Construing section 1252(g) as inapplicable to claims that arise after the final order of removal, as Ragbir urges, is also inconsistent with the apparent purpose of Congress's extension of section 1252(g) to "decisions or actions . . . [to] execute removal orders against any alien." Prior to enacting section 1252(g), Congress had determined that an order of removal "shall become final upon the earlier of . . . (i) a determination by the [BIA] affirming such order . . . or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the [BIA]." Antiterrorism and Effective Death Penalty Act of 1996 § 440(b), 8 U.S.C. § 1101(a)(47) (1996).[6] This provision operated in tandem with existing federal regulations, which had provided since at least 1971 that an order of removal "shall not be executed" until the BIA had completed its review of the order, if review was sought. See 8 C.F.R. § 1003.6; 36 Fed.

---

[6] The defined term found in section 1101(a)(47) is "order of deportation." In the IIRIRA, which enacted section 1252(g), Congress provided that "any reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation." IIRIRA § 309(d)(2).

Reg. 316 (1971). Thus, execution of an order of removal could lawfully occur only after the order had become final. Congress was presumably aware of this when it enacted section 1252(g). Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990) (observing that it is "assume[d] that Congress is aware of existing law when it passes legislation"). It is not plausible that Congress designed section 1252(g) to cover only the execution of a removal order before the order became final for the simple reason that before the order became final, it could not be executed.

Ragbir's argument is also contrary to Second Circuit precedent. In Daumutef v. INS, 386 F.3d 172 (2d Cir. 2004), the Second Circuit applied section 1252(g)'s jurisdictional bar to a claim that arose after a final order of removal and that stemmed from a decision arising from the "execut[ion] of [the] removal order[]." The petitioner did not contest the propriety of his order of removal and waived his right to appeal it. Id. at 174. Rather, he embraced his removal order and sought to compel his removal through a writ of mandamus in order to take advantage of the state's grant of "Conditional Parole for Deportation Only." Id. at 175–76. The Second Circuit concluded that his mandamus claim arose from the decision not to execute a removal order and, thus, fell within the scope of the jurisdictional bar of section 1252(g). Id. at 181.[7] It did not matter that the claim could not be heard in the context of judicial review of a final order of removal.

Simply put, section 1252(g) reaches exactly what it says it reaches—"any cause or claim . . . arising from the decision or action . . . to execute removal orders."

---

[7] Duamutef declined to reach whether section 1252(g) applied to a habeas petition brought pursuant to 28 U.S.C. § 2241. Daumutef, 386 F.3d at 182 n.8. The later enacted REAL ID Act of 2005 amended section 1252(g) to reference 28 U.S.C. § 2241 expressly in section 1252(g)'s jurisdictional carve out.

III.   Constitutional Claims Are Not Excluded from the Limitation on this Court's Subject Matter Jurisdiction

Ragbir argues that even if section 1252(g) applies to decisions and actions that occur after a final order of removal, it does not apply to his claims because he asserts constitutional violations.  He predicates this argument on the doctrine of constitutional doubt, an interpretive tool that counsels courts, when faced with competing plausible interpretations of a statute, to avoid an interpretation that raises serious constitutional questions, such as an interpretation of a statute as "preclud[ing] all judicial review of a constitutional claim."  Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 215 n.20 (1994); see Clark v. Martinez, 543 U.S. 371, 381 (2005); Miller v. French, 530 U.S. 327, 336 (2000).  To that end, the Supreme Court has held that "where Congress intends to preclude judicial review of constitutional claims[,] its intent to do so must be clear."  Webster v. Doe, 486 U.S. 592, 603 (1988).  Ragbir maintains that section 1252(g) lacks the "clear and convincing" evidence necessary to preclude review of constitutional claims.  Califano v. Sanders, 430 U.S. 99, 109 (1977) (quoting Weinberger v. Salfi, 422 U.S. 749, 762 (1975)).

To speak clearly, Congress need not "incant magic words"—the plain language of section 1252(g) rebuts Ragbir's argument.  Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153 (2013); accord Hamer v. Neighborhood Hous. Servs. of Chicago, 138 S. Ct. 13, 20 (2017).  The statute does not distinguish between types of claims.  Rather, it excludes from a court's jurisdiction the power "to hear any cause or claim," and it applies "notwithstanding any other provision of law (statutory or nonstatutory)."  § 1252(g) (emphasis added).  The language selected by Congress is broad, and it does not suggest any subject-matter limitation.

Two Circuits have addressed whether section 1252(g)'s limitation on jurisdiction reaches constitutional claims.  The Eighth Circuit, in the context of a constitutional challenge to

the execution of a removal, concluded that the section 1252(g)'s jurisdictional limitation extended to constitutional claims.  Silva v. United States, 866 F.3d 938, 941 (8th Cir. 2017) (concluding that "it was unnecessary for Congress to enumerate every possible cause or claim" and that section 1252(g)'s broad language extends to constitutional claims arising from the execution of a removal order).  The Sixth Circuit concluded that a district court did not have subject matter jurisdiction to hear a due process challenge to an order of removal that had become final, brought on by a writ of prohibition.  Elgharib v. Napolitano, 600 F.3d 597, 602 (6th Cir. 2010) ("[A] natural reading of 'any other provision of law (statutory or nonstatutory)' includes the U.S. Constitution."  (quoting § 1252(g)); accord Viana v. President of United States, 18 Civ. 222 (LM), 2018 WL 1587474, at *3 (D.N.H. Apr. 2, 2018) (concluding that section 1252(g) does not permit a due process challenge to the execution of a removal order).  This Court agrees with the conclusions of the Eighth and Sixth Circuits and, likewise, will not carve constitutional claims from section 1252(g)'s jurisdictional bar.

IV.     Ragbir Does Not Have a Constitutional Claim to Assert

        Having concluded that section 1252(g), properly construed, does not permit a court to hear a constitutional challenge to the execution of an order of removal, the Court next considers whether the jurisdictional limitation is, itself, constitutional as applied to the allegations of plaintiffs' Verified Complaint.  The beginning point of this analysis is consideration of whether Ragbir has a constitutional claim that could be interposed as a defense to removal.  If he does, then the Court must address the constitutionality of section 1252(g).  If he does not, then the Court may avoid ruling on the constitutionality of the jurisdictional limitation.  The court concludes that Ragbir does not.

A. First Amendment Retaliation

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) the defendant's actions caused him some injury." Smith v. Campbell, 782 F.3d 93, 100 (2d Cir. 2015) (alteration in original) (quoting Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013)).  Ragbir claims that before ICE decided to execute the final order of removal, he had engaged in political speech criticizing governmental policies on immigration and that defendants are executing the order of removal to silence him and stifle his advocacy of immigrant rights.  Both of these assertions are accepted as true for the purpose of the Court's analysis.  The Court concludes, however, that his asserted injury flows from the final order of removal, which he does not allege is defective or legally infirm.

In the context of a criminal prosecution, "[t]he existence of probable cause will defeat . . . a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence her." Fabrikant v. French, 691 F.3d 193, 215 (2d Cir. 2012).  This is so because "'[a]n individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause,' even if that prosecution 'is in reality an unsuccessful attempt to deter or silence criticism of the government.'" Id. (quoting Mozzochi v. Borden, 959 F.2d 1174, 1180 (2d Cir. 1992)).  Likewise, probable cause to arrest an individual defeats a claim asserting that the arrest was in retaliation for speech protected by the First Amendment.  See Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (holding that if an officer "had probable cause to arrest plaintiff, an inquiry into the underlying motive for the arrest need not be undertaken"); Singer v. Fulton Cty.

Sheriff, 63 F.3d 110, 120 (2d Cir. 1995) ("If the officer . . . had probable cause[,] . . . then [courts] will not examine the officer's underlying motive in arresting and charging the plaintiff."); accord Caravalho v. City of New York, No. 17-1944, 2018 WL 1940938, at *3 (2d Cir. Apr. 25, 2018) (summary order) ("The existence of probable cause defeats a First Amendment claim premised on the allegation that defendants arrested a plaintiff based on a retaliatory motive.").

Although it is true that a First Amendment retaliation claim may be predicated on justified discretionary actions in "a non-criminal regulatory enforcement action" if "the defendant, for improper motive, took regulatory action that was significantly more serious than other action he had discretion to take," Mangino v. Incorporated Village of Patchogue, 808 F.3d 951, 957 (2d Cir. 2015), the context of this case bears little resemblance to a garden variety regulatory enforcement action. The order of removal issued in Ragbir's case was entered after he was heard on the merits and the grounds for removal were found proven by clear and convincing evidence—"[e]vidence indicating that the thing to be proved is highly probable or reasonably certain"—reviewed by the BIA, and then reviewed in a federal judicial forum. Ragbir v. Holder, 389 F. App'x 80, 84–85 (2d Cir. 2010) (quoting Black's Law Dictionary 636 (9th ed. 2009)); 8 U.S.C. § 1229a(c)(3); 8 C.F.R. § 1240.8(a). No court has held, insofar as research discloses, that the execution of a removal order that has become final after agency review may support a claim of First Amendment retaliation or viewpoint or content discrimination. The Court concludes that Ragbir has no such claim because the injury to him flows from the final order of removal and not its execution.[8]

---

[8] Because Ragbir has no viable constitutional claim, the Court need not reach whether the Suspension Clause renders unconstitutional section 1252(g) insofar as it purports to bar all habeas claims. U.S. Const. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.").

The Court's conclusion is buttressed by <u>AADC</u>, in which the Supreme Court was faced with a claim of selective enforcement based upon the First Amendment right of association. The Supreme Court observed that "[e]ven in the criminal-law field, a selective prosecution claim is a *rara avis*," in part for the reason that courts are reluctant to intervene because "the decision to prosecute is particularly ill-suited to judicial review," "entails systemic costs of particular concern," "threatens to chill law enforcement," and "may undermine prosecutorial effectiveness." <u>AADC</u>, 525 U.S. at 489–90 (alteration in original) (quoting <u>Wayte v. United States</u>, 470 U.S. 598, 607–08 (1985)). "These concerns," the Supreme Court observed, "are greatly magnified in the deportation context." <u>Id.</u> at 490. "Whereas in criminal proceedings the consequence of delay is merely to postpone the criminal's receipt of his just deserts, in deportation proceedings the consequence is to permit and prolong a continuing violation of United States law." <u>Id.</u> The Supreme Court also recognized that because removal is imposed to hold the alien "to the terms under which he was admitted," rather than "as a punishment," the interest in avoiding selective treatment in removal proceedings is "less compelling than in criminal prosecutions." <u>Id.</u> at 491. The Supreme Court concluded that "[a]s a general matter[,] . . . an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." <u>Id.</u> at 488.

B. <u>The Outrageous Discrimination Exception</u>

In <u>AADC</u>, the Supreme Court did not "rule out the possibility of a rare case in which the alleged basis of discrimination is so outrageous that the foregoing considerations can be overcome," allowing for the assertion of a selective enforcement claim. <u>AADC</u>, 525 U.S. at 491. In <u>Rajah v. Mukasey</u>, 544 F.3d 427 (2d Cir. 2008), the Second Circuit addressed this possible exception. There, the petitioners asserted in a petition for review of a final order of

removal, in part, that "their deportation orders violate[d] their rights under the Equal Protection component of the Fifth Amendment's Due Process Clause because the immigration laws were selectively enforced against them based on their religion, ethnicity, gender, and race." Id. at 438. The Second Circuit noted the dictum in AADC and observed "that a selective prosecution based on an animus of th[e] kind [articulated by the petitioners] would call for some remedy." Id. The Court concluded, however, that there was "no basis for petitioners' claim" and therefore "[n]o circumstance calling for a remedy." Id. at 438–39.

This Court declines to extend this exception for outrageous discrimination to Ragbir's claim. Membership in a targeted and protected group is not usually a volitional act, and, thus, traditionally immutable characteristics are not easily subject to strategic use by the person who is subject to a removal order. Political speech is worthy of the highest protection, and so long as Ragbir remains in the United States, the First Amendment guarantees him the freedom to speak and associate on any subject of his choosing. But his decision to speak does not confer upon him an immunity from the enforcement of a pre-existing final order of removal. As "[c]ourts 'have long recognized[,] the power to expel or exclude aliens [is] a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" Rajah v. Mukasey, 544 F.3d at 438 (quoting Fiallo v. Bell, 430 U.S. 787, 792 (1977)). Having considered the nature of the claim, the clear Congressional directive contained in section 1252(g), and the purpose of that section, the Court will dismiss Ragbir's claim for want of jurisdiction to the extent it seeks to enjoin the execution of his removal order and to declare the decision to execute the order unconstitutional.

V.    The Remaining Claims

        The Organizational Plaintiffs joined Ragbir in his challenge to the execution of

his removal order.  The Court's reasoning above applies without regard to the identity of the

party asserting the claim.  However, section 1252(g) does not bar all claims pertaining to an

order of removal.  As previously noted, AADC gives the statute a "narrow reading," construing it

to apply "only to three discrete actions"—the commencement of proceedings, the adjudication of

cases, and the execution of removal orders.  AADC, 525 U.S. at 482, 487.

        The Verified Complaint asserts only two claims for relief.  Count I is styled

"Retaliation in Violation of the First Amendment," (VC ¶¶ 124–29), and Count II "Content,

Viewpoint, and Speaker Discrimination in Violation of the First Amendment," (VC ¶¶ 130–37).

Broadly read, they allege a "nationwide pattern and practice of selectively enforcing immigration

laws against immigration-rights activists on the basis of their protected speech."  (VC ¶ 127; see

VC ¶ 132).  The claims may reach actions by immigration authorities beyond commencing

proceedings, adjudicating cases and executing removal orders.

        To understand whether the Organizational Plaintiffs and Ragbir have standing to

bring the remaining portions of the claims and whether, with the excision of the challenge to the

execution of Ragbir's removal order, they state claims for relief, the Court must understand the

contours of the claims.  Defendants' time to respond to the Verified Complaint has not run.  The

Court invites the parties to submit a proposed briefing schedule on these claims within 14 days.

CONCLUSION

        Because the Court lacks subject matter jurisdiction over plaintiffs' challenges to

the execution of the final order of removal, so much of the Verified Complaint as seeks to

declare unlawful or to enjoin the execution of the final order of removal against plaintiff Ragbir

is DISMISSED.  (Doc. 1).  The motion for a preliminary injunction insofar as it seeks to stay removal of plaintiff Ragbir is DENIED.  (Doc. 11).  The stay set forth in the Stipulated Order filed February 9, 2018 is DISSOLVED.  (Doc. 4).  The parties shall submit a proposed briefing schedule on the remaining issues within 14 days.

        SO ORDERED.


                                                P. Kevin Castel
                                  United States District Judge


Dated:  New York, New York
       May 23, 2018

Appendix A

**<u>Appearances</u>**

Anthony D Boccanfuso
Ada Añon
Robert Stanton Jones
John L. Freedman
William C. Perdue
Daniel F. Jacobson
Emily Newhouse Dillingham
Sally Pei
Stephen Wirth
Andrew T. Tutt
    Arnold & Porter Kaye Scholer LLP

-and-

Alina Das
Jessica Louise Rofé
Brittany Castle (Legal Intern)
Jeremy Cutting (Legal Intern)
    Washington Square Legal Services, Inc.
***Attorneys for Plaintiffs***

Geoffrey S. Berman
    United States Attorney
Jeffrey Stuart Oestericher
Brandon Matthew Waterman
Steven John Kochevar
Joseph Nicholas Cordaro
    Assistant United States Attorneys
***Attorneys for Defendants***

Joshua B. Picker
Henry Liu
Jordan L. Moran
Tracy O. Zinsou
David Watnick
    Covington & Burling LLP
***Attorneys for New York Elected Officials, Amici Curiae***

Harry Sandick
Peter A. Nelson
Lauren M. Capaccio
Zachary Kolodin
Michael R. McDonald (Admission pending)
    Patterson, Belknap, Webb & Tyler LLP
***Attorneys for 140 Religious Leaders, Amici Curiae***


Yosef J. Riemer
Katherine Anne Rocco
    Kirkland & Ellis LLP

Trudy S. Rebert
Nicholas Espiritu
Jessica R. Hanson
    National Immigration Law Center

-and-

Amy S. Taylor
Sienna Fontaine
Kendal K. Nystedt
    Make the Road New York
***Attorneys for Adelante Alabama Worker Center and Twenty Other Groups, Amici Curiae***


Penny Marina Venetis
    International Human Rights Clinic of Rutgers University
***Attorneys for Certain Scholars, Public Interest Advocates and Organizations, Amici Curiae***

Joshua A. Geltzer
Amy L. Marshak
Robert D. Friedman
Seth Wayne
    Institute for Constitutional Advocacy and Protection
    Georgetown University Law Center

-and-

Jameel Jaffer
Alex Abdo
Carrie DeCell
Ramya Krishnan (Admission pending)
    Knight First Amendment Institute at Columbia University
***Attorney for Institute For Constitutional Advocacy and Protection at Georgetown Law Center and Knight First Amendment Institute at Columbia University, Amici Curiae***

Ryan Alexander Muennich
Andrew Wachtenheim (Admission pending)
***Attorneys for Immigrant Defense Project, Amicus Curiae***