**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAVIDATH LAWRENCE RAGBIR et al., | ) <br> ) <br> ) Civil Action No. 18-cv-1159 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Plaintiffs, | |
| v. | |
| THOMAS D. HOMAN et al., | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION FOR STAY OF REMOVAL PENDING APPEAL**

## TABLE OF CONTENTS

    Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

I.     This Court Has Jurisdiction to Enter a Stay of Removal Pending Appeal ......................... 1

II.    A Stay Is Warranted ............................................................................................................ 3

        A.     Plaintiffs Are Likely to Succeed on Appeal ............................................................ 3

        B.     Mr. Ragbir Is Likely to Suffer Irreparable Harm Absent a Stay ............................ 6

        C.     The Public Interest Favors a Stay ........................................................................... 7

CONCLUSION .............................................................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arizona v. United States*,
    567 U.S. 387 (2012) .................................................................................................................8

*Backpage.com, LLC v. Dart*,
    807 F.3d 229 (7th Cir. 2015) ....................................................................................................5

*Bantam Books, Inc. v. Sullivan*,
    372 U.S. 58 (1963) ...................................................................................................................5

*Boumediene v. Bush*,
    553 U.S. 723 (2008) .................................................................................................................4

*Calcano-Martinez v. INS*,
    232 F.3d 328 (2d Cir. 2000) ..................................................................................................4, 5

*Hammerhead Enterprises, Inc. v. Brezenoff*,
    707 F.2d 33 (2d Cir. 1983) ........................................................................................................5

*INS v. St. Cyr*,
    533 U.S. 289 (2001) .................................................................................................................4

*Marbury v. Madison*,
    5 U.S. 137 (1803) .....................................................................................................................4

*Newton v. Consolidated Gas Co. of New York*,
    258 U.S. 165 (1922) .................................................................................................................2

*Nken v. Holder*,
    556 U.S. 418 (2009) ....................................................................................................1, 2, 3, 8

*Rajah v. Mukasey*,
    544 F.3d 427 (2d Cir. 2008) ......................................................................................................6

*Reno v. American-Arab Anti-Discrimination Committee*,
    525 U.S. 471 (1999) ..............................................................................................................5, 6

*Ruiz-Martinez v. Mukasey*,
    516 F.3d 102 (2d Cir. 2008) ......................................................................................................5

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ...................................................................................................................3

*Webster v. Doe*,
   486 U.S. 592 (1988) ................................................................................................... 4

**Statutes**

8 U.S.C. § 1252(f)(2) ........................................................................................................ 2

28 U.S.C. § 1252(g) ................................................................................................. *passim*

All Writs Act, 28 U.S.C. § 1651 .................................................................................. 1, 3

Real ID Act of 2005, 119 Stat. 302 .......................................................................... 1, 4, 5

**Other Authorities**

U.S. Const., First Amendment ................................................................................ 3, 5, 6

U.S. Const. art. I, § 9, cl. 2 ............................................................................................. 4

**PRELIMINARY STATEMENT**

This Court should grant Mr. Ragbir a stay of removal pending resolution of his appeal. Contrary to the government's argument, the Court unquestionably has the power to do so. The Supreme Court's decision in *Nken v. Holder*, 556 U.S. 418 (2009), squarely forecloses the government's argument that 28 U.S.C. § 1252(g) strips district courts of their traditional and longstanding power to enter stays preserving the status quo pending appeal. Neither § 1252(g) nor the REAL ID Act restricts this Court's authority to issue a stay pending appeal.

Moreover, a stay is warranted. Mr. Ragbir has demonstrated a sufficient likelihood of success on appeal. And every equitable factor favors entry of a stay. Mr. Ragbir is a leader in his community, husband to a U.S. citizen wife, and father to a U.S. citizen daughter. The United States benefits immeasurably from his presence here and his activism. He will suffer grave irreparable harm from removal. Once he is removed, it is exceedingly unlikely that the United States will return him home should he ultimately prevail in this lawsuit.

The bottom line is this: For more than a decade, immigration authorities did not believe that removing Mr. Ragbir from the United States was even appropriate, much less a priority, and they have shown no reason why it should be a priority now. A temporary stay of removal pending resolution of his appeal will benefit the public interest and spare him from severe and lasting harm. This Court should therefore enter a stay pending resolution of his appeal.

**ARGUMENT**

**I.     This Court Has Jurisdiction to Enter a Stay of Removal Pending Appeal**

The government cites a litany of manifestly inapposite district court cases for the proposition that this Court lacks jurisdiction to enter a temporary stay of removal: not one of those cases arose in the context of a request for a temporary stay pending appeal. Indeed, This Court has both the inherent authority and authority under the All Writs Act, 28 U.S.C. § 1651, to

1

issue temporary orders to protect the integrity of its proceedings.  "[I]t has always been held that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." *Nken v. Holder*, 556 U.S. 418, 421 (2009) (internal alterations omitted).  Thus, a trial court has a long-established power to enter orders appropriate to preserve the status quo while a case is pending on appeal.  *See Newton v. Consolidated Gas Co. of New York*, 258 U.S. 165, 177 (1922) ("Undoubtedly, after appeal the trial court may, if the purposes of justice require, preserve the status quo until decision by the appellate court.").

In *Nken*, the government made, and the Supreme Court rejected, an argument closely analogous to the one the government now advances.  Section 1252(f)(2) of title 8 provides that "[n]otwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law."  8 U.S.C. § 1252(f)(2).  The government argued that a "stay" is technically a kind of injunction, and therefore, even stays of removal pending the adjudication of an appeal were subject to § 1252(f)(2).  *Nken*, 556 U.S. at 426.  The Supreme Court held that § 1252(f)(2) did *not* affect the power of federal courts to issue temporary stays of removal, because such stays "relat[e] only to the conduct or progress of litigation before the court, [and therefore a stay] ordinarily is not considered an injunction."  *Id.* at 429-30.

Here, the government's jurisdiction-stripping argument is even weaker than the one in *Nken*.  The provision at issue here, 8 U.S.C. § 1252(g), purports to divest courts of jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against

2

any alien under this chapter." 8 U.S.C. § 1252(g). Section 1252(g) says absolutely nothing about courts' jurisdiction to issue stays of removal arising out of "the conduct or progress of litigation before the court," which is precisely the issue here. *Nken*, 556 U.S. at 429–30.

In addition to granting district courts inherent authority to preserve the status quo, the All Writs Act provides a separate and independent basis for this Court's authority to enter a stay: it allows federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). It is blackletter law that "a court always has jurisdiction to determine its own jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 (1998). The government bizarrely argues that this Court lacks jurisdiction to enter a stay pending appeal because it determined that it lacked jurisdiction over the primary suit. Opp. at 7. But whether this Court has jurisdiction over the primary suit is precisely what is being appealed. And given that the government consented to a "stay" of Mr. Ragbir's removal by this Court at an earlier stage in this lawsuit, Dkt. No. 4, the government has already implicitly acknowledged the Court's power to issue a temporary stay to preserve its ability to determine its *own* jurisdiction in the first instance. In the same way, this Court also has the power to issue a stay in aid of its future jurisdiction should the court of appeals reverse its jurisdictional holding.

This Court plainly has jurisdiction to enter a stay of Mr. Ragbir's removal.

## II.     A Stay Is Warranted

The Court should exercise its discretion to grant Mr. Ragbir a stay of removal during the pendency of his appeal.

### A.     Plaintiffs Are Likely to Succeed on Appeal

The Second Circuit will likely construe § 1252(g) to permit this Court to take jurisdiction over Plaintiffs' First Amendment claims. The government's arguments fail for one central

3

reason: Our system of laws presumes that an individual harmed by unconstitutional government action must be able to bring a claim *somewhere*. *See Webster v. Doe*, 486 U.S. 592, 603 (1988); *Marbury v. Madison*, 5 U.S. 137, 147 (1803) ("It is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress…. There must then be a jurisdiction somewhere competent to issue that [redress]."). That is especially so where, as here, the government's action is subject to habeas corpus relief. *INS v. St. Cyr*, 533 U.S. 289, 298-314 (2001) (habeas corpus jurisdiction is available to challenge unlawful execution of the immigration laws); *Boumediene v. Bush*, 553 U.S. 723, 771–79 (2008) (government may not strip habeas jurisdiction except in narrow circumstances or by providing "an adequate substitute"). The government has never explained where else Mr. Ragbir could bring his constitutional claim but this Court. It is apparently agreeable to the government that no tribunal will be able to hear Mr. Ragbir's claims that Defendants are deporting Mr. Ragbir in retaliation for his outspoken advocacy on behalf of immigrant rights and his criticism of U.S. immigration law and policy. The government's argument that the "plain text of 8 U.S.C. § 1252(g)" forecloses review cannot overcome the strong presumption of judicial review of colorable constitutional claims.

The government's attempt to evade the Second Circuit's jurisdictional holding in *Calcano-Martinez v. INS*, 232 F.3d 328 (2d Cir. 2000), is therefore misplaced. The government first argues that *Calcano-Martinez* is inapplicable because this "is not a habeas corpus action." Op. at 12. This *is* a habeas corpus action. *See* Dkt. 1, ¶ 10 (citing habeas jurisdiction as basis for this Court's jurisdiction), p. 41 f. (praying for "just and proper" relief). To the degree habeas has been withdrawn, there must be an adequate substitute under the Suspension Clause. U.S. Const. art. I, § 9, cl. 2. The government next points out that the Real ID Act of 2005, 119 Stat. 302,

4

"changed the means for judicial review of an order of removal" by substituting direct review in the courts of appeals in place of habeas corpus. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 104-05 (2d Cir. 2008). That is irrelevant. The issue in *Calcano-Martinez* was whether a supposedly jurisdiction-stripping provision of the INA could foreclose habeas corpus *in the absence of an adequate substitute*; the Real ID Act made a substitute available. This Court's decision conflicts with *Calcano-Martinez* because it read the INA to eliminate any forum whatsoever in which Mr. Ragbir could raise his claims.

The Second Circuit is unlikely to agree that the First Amendment allows immigration authorities to silence their critics by banishing those critics from the United States. Cases holding that the existence of probable cause creates an absolute bar to a First Amendment claim for retaliatory arrest or prosecution are in tension with an enormous body of contrary First Amendment precedents. The Second Circuit is therefore likely to construe them narrowly. To give just one example, the Supreme Court, and other Circuits, have held that even the *threat* to institute criminal proceedings is a First Amendment violation. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963) (constitutional violation where conduct amounted to "thinly veiled threats to institute criminal proceedings"); *see also, e.g.*, *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015). The Second Circuit has "emphasized that courts must remain profoundly skeptical of government claims that state action affecting expression can survive constitutional objections." *Hammerhead Enterprises, Inc. v. Brezenoff*, 707 F.2d 33, 38 (2d Cir. 1983) (internal alterations omitted).

Finally, the government makes much of *Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), 525 U.S. 471 (1999), arguing that it should control the outcome of this case. *See* Op. 1-2, 10-13. But the Second Circuit is likely to view *AADC* as helpful, rather than

5

detrimental, to Plaintiffs' cause. *AADC* established that the scope of § 1252(g)'s jurisdiction-stripping provisions is exceptionally narrow. *Id.* at 482. It also recognized that Plaintiffs could bring claims for unconstitutional selective enforcement of the immigration laws, and that § 1252(g) would permit review of such claims, were they a product of "outrageous" discrimination. *Id.* at 491; *see Rajah v. Mukasey*, 544 F.3d 427, 438 (2d Cir. 2008). It is the very definition of outrageous for immigration authorities to retaliate against their most outspoken critics by deporting them. The Second Circuit's careful application of the Supreme Court's ruling in *AADC* is likely to result in success on the merits for the Plaintiffs.

### B. Mr. Ragbir Is Likely to Suffer Irreparable Harm Absent a Stay

There can be no doubt that Mr. Ragbir will suffer grave harm absent a stay, and that harm will be irreparable. If Mr. Ragbir is removed, ICE almost surely will not facilitate his return, and the government has pointedly refrained from representing that it would. If Mr. Ragbir is removed, he will be separated from his family, his friends, his community, his work, and the only home he has known for decades. He will suffer the psychological trauma that accompanies detonating an entire life. His exercise of his First Amendment rights will be severely curtailed. Thousands of people who look to him as an advocate, a leader, and a beacon of hope will lose a voice that cannot be replaced.

The government argues that Mr. Ragbir does not need a stay because he already has a temporary stay issued by a different court, hearing different claims, in a different judicial district, and entered for a different reason. But whether another stay is in place is irrelevant to whether Mr. Ragbir will suffer irreparable harm if he is removed. The strenuousness of the government's objections reveal the artificiality of its position. If the government anticipated that the District of New Jersey stay would completely protect Mr. Ragbir from removal during the pendency of

6

these proceedings, there would be no need to resist one (needless to say, the government declined to consent to a stay pending appeal in this case).

The government is appealing the District of New Jersey stay, and resisting a stay from this Court, not because it believes the District of New Jersey's stay will last so long that Mr. Ragbir will have no need for one from this Court, but rather because it wishes to eliminate all barriers to Mr. Ragbir's removal. The extraordinary aggression with which immigration authorities have sought to remove Mr. Ragbir, from arresting him at a routine check-in and spiriting him away without the opportunity *even to say goodbye to his family*, to the repeated attempts to remove him as expeditiously as the courts will allow, shows that only a stay that protects him from removal during the pendency of his appeal in this case can guard him against irreparable harm.

### C. The Public Interest Favors a Stay

Finally, there can be little doubt that the public interest would be served by the entry of a stay. The government's sole argument on this point is that delaying Mr. Ragbir's removal would delay "the enforcement of United States law" and "undermine[] the streamlined removal proceedings IIRIRA established." Op. 15. The argument is rather brazen, given that Mr. Ragbir has been here for more than twenty years already, eleven of them subject to a final order of removal. The eleven years the government has waited to execute Mr. Ragbir's removal order wholly undercut its supposed interest in a "streamlined" removal process.

Similarly, the fact that Mr. Ragbir's removal has been continuously stayed since the issuance of his final order of removal—first through administrative stays of removal and more recently as a result of judicial stays—means that his presence in the United States is not now, and has never been, unlawful. The fact that ICE revoked the most recent administrative stay in January 2018 to clear a path to execution of a removal order does not change that fact. Contrary

7

to the government's assertion, the government's interest in the prompt enforcement of U.S. law appeared suddenly only a few months ago.  The mere fact that a noncitizen is removable—just like millions of people in the United States are removable—does not mean that the public interest favors his removal.  *See, e.g.*, *Arizona v. United States*, 567 U.S. 387, 396 (2012) (listing reasons that removing an alien may be "inappropriate even where he has committed a removable offense or fails to meet the criteria for admission").  Staying Mr. Ragbir's removal does not violate U.S. immigration law or policy, and removing him does not serve any public interest.

Against the government's supposed interest in removing Mr. Ragbir as promptly as possible is the tangible threat that Mr. Ragbir will be wrongfully removed from this country.  "Of course there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm."  *Nken*, 556 U.S. at 436.  To let ICE deport Mr. Ragbir because someone there disagrees with his protected speech would be a constitutional injury of the utmost degree.  There is little to no public interest in Mr. Ragbir's immediate deportation, but there is an immense public interest in preventing his wrongful removal.

## CONCLUSION

For the foregoing reasons, the Court should stay Mr. Ragbir's removal from the United States pending resolution of Plaintiffs' appeal.

June 14, 2018

Alina Das, Esq. (AD8805)
Jessica Rofé, Esq. (JR5231)
Brittany Castle, Legal Intern
WASHINGTON SQUARE
  LEGAL SERVICES, INC.
Immigrant Rights Clinic
New York University School of Law
245 Sullivan Street, 5th floor
New York, New York 10012
Tel: (212) 998-6430
alina.das@nyu.edu
jessica.rofe@nyu.edu

Respectfully submitted,

/s/ R. Stanton Jones
R. Stanton Jones
John L. Freedman
William C. Perdue
Daniel F. Jacobson
Sally Pei
Stephen K. Wirth
Andrew T. Tutt
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
(202) 942-5999 (fax)
stanton.jones@arnoldporter.com

Anthony Boccanfuso
Ada Añon
ARNOLD & PORTER
  KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-8000
(303) 836-8689 (fax)
anthony.boccanfuso@arnoldporter.com

Emily Newhouse Dillingham
ARNOLD & PORTER
  KAYE SCHOLER LLP
70 West Madison Street
Suite 4200
Chicago, IL 60602
(312) 583-2300
(312) 583-2360 (fax)
emily.dillingham@arnoldporter.com

*Attorneys for Plaintiffs*

9

## AFFIRMATION OF SERVICE

I, R. Stanton Jones, the undersigned attorney at law duly admitted to practice in the State of New York, respectfully show that on the 14th day of June, 2018, I caused a copy of the attached to be electronically filed, and that service was accomplished on all counsel of record by operation of CM/ECF.

/s/ R. Stanton Jones