```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
```
RAVIDATH LAWRENCE RAGBIR, et al.,

                      Plaintiffs,                      18-cv-1159 (PKC)

            -against-

                                                  OPINION AND ORDER
                                                  ON STAY APPLICATION

THOMAS D. HOMAN, et al.,

                      Defendants.
```
-----------------------------------------------------------x
```
CASTEL, U.S.D.J.

        In a Memorandum and Order issued on May 23, 2018, this Court concluded that it lacked subject matter jurisdiction to enjoin the execution of a removal order directed to Ravidath Lawrence Ragbir. Ragbir v. Homan, 18 Civ. 1159 (PKC), 2018 WL 2338792 (S.D.N.Y. May 23, 2018). Plaintiff Ragbir is the subject of an order of removal that has become final after review by the Board of Immigration Appeals ("BIA"). That final order of removal was reviewed by the United States Court of Appeals for the Second Circuit, which denied relief, and a petition for a writ of certiorari was denied by the United States Supreme Court. See Ragbir v. Holder, 389 F. App'x 80, 85 (2d Cir. 2010) (summary order) (denying petition to review the order of removal), cert. denied, 565 U.S. 816 (2011). Thereafter, Ragbir moved before the BIA to reconsider and reopen the order, a motion which was denied and resulted in another trip to the Second Circuit, which dismissed the petition for review. See Ragbir v. Lynch, 640 F. App'x 105, 106–08 (2d Cir. 2016) (summary order) (dismissing petition for review of the denial of the motion to reopen and reconsider). All that remains is the execution of the unchallenged, final

and fully reviewed removal order. The application for a stay of removal pending appeal of the May 23 Memorandum and Order will be denied.

DISCUSSION

In determining whether to grant a stay of removal pending appeal, "a court considers four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" Nken v. Holder, 556 U.S. 418, 426 (2009) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). "The first two factors . . . are the most critical." Id. at 434.

Circuit precedent also permits a stay pending appeal to be granted if a movant shows irreparable harm and "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) (quoting Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)) (discussing the preliminary injunction standard). Plaintiffs have not established that they are entitled to a stay under either standard.

I. The Merits of the Appeal

At the core of this Court's decision on subject matter jurisdiction is a statutory restriction on this Court's jurisdiction found in 8 U.S.C. § 1252(g). It provides, in part, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to . . . execute removal orders against any alien under this chapter." Plaintiffs argue that "the Second Circuit is likely to reverse this Court's

reading of Section 1252(g) to bar review of constitutional claims," relying on Calcano-Martinez v. INS, 232 F.3d 328 (2d Cir. 2000). (Doc. 86 at 9). But Calcano-Martinez resolved a question arising before the federal immigration laws were amended by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231. The REAL ID Act made plain that section 1252(g) deprives courts of jurisdiction to enjoin the execution of orders of removal "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28 [writ of habeas corpus], or any other habeas corpus provision, and sections 1361[writ of mandamus] and 1651 [All Writs Act] of such title." § 1252(g); REAL ID Act, § 106(a)(3). Since then, the Second Circuit has held that the addition of this language "eliminat[ed] the availability of habeas corpus relief in the United States District Courts for aliens seeking to challenge orders of removal entered against them." Ruiz-Martinez v. Mukasey, 516 F.3d 102, 105 (2d Cir. 2008).

The Court's May 23 ruling concludes that in three designated, narrow circumstances, the plain terms of section 1252(g) do not permit a challenge on any basis, statutory or nonstatutory, including a constitutionally-based challenge. The Court found it unnecessary to consider whether the section 1252(g) bar is, itself, constitutional because the Court concluded that plaintiffs had no viable claim. (Doc. 83 at 14). The alleged pattern of retaliatory actions of which plaintiffs complain did not begin until January 2017. (Compl't ¶ 28). By January 2017, removal proceedings against Ragbir had been initiated and concluded with a final and fully reviewed order of removal. The Court concluded in the May 23 Memorandum and Order that Ragbir's asserted injury flows from this final and fully reviewed order of removal, not the execution of that order. (Doc. 83 at 15).

That conclusion is not altered by the Supreme Court's recent holding in Lozman v. City of Riviera Beach, 585 U.S. ___ (June 18, 2018).[1] Lozman determined that a plaintiff may maintain a civil claim for damages against a municipality for First Amendment retaliation for an arrest made pursuant to a retaliatory official municipal policy, even if there was probable cause for the arrest, if the "the alleged constitutional violation was a but-for cause" of the arrest. 585 U.S. at ___, slip op. at 7 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)). In Ragbir's case, retaliation for speech cannot serve as a but-for cause of his removal from the country because the order of removal was lawfully entered and was fully enforceable prior to the formation of the alleged retaliatory animus. Plaintiffs concede that any decision of this Court—or the Court of Appeals—could not alter the order of removal. (Compl't ¶ 11 ("Plaintiffs here do not challenge underlying orders of removal or actions committed to unreviewable agency discretion.")). Their concession on this point is fatal to their claim.

A further distinction from Lozman is found in Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471 (1999) ("AADC"), in which the Supreme Court interpreted the predecessor (and less restrictive) version of section 1252(g). The Court observed that the harm resulting from delay in a deportation case is greater than in a criminal case: "Whereas in criminal proceedings the consequence of delay is merely to postpone the criminal's receipt of his just deserts, in deportation proceedings the consequence is to permit and prolong a continuing violation of United States law." Id. at 490. The Supreme Court concluded that "in all cases, deportation is necessary in order to bring to an end *an ongoing violation* of United States law." Id. at 491 (emphasis in original).

---

[1] This Court's May 23 Memorandum and Order cited to cases in the criminal context that might not survive Lozman, but the context in which plaintiffs' action arises is materially different than that in Lozman for reasons explained.

Simply put, this action seeks to enjoin the execution of a final order of removal, and section 1252(g) deprives this Court of jurisdiction to enter an order enjoining the execution of a removal order. Plaintiffs are not likely to prevail on appeal, nor do they raise a serious question on the merits.

II. Irreparable Harm to Ragbir

Plaintiffs' claim irreparable harm flowing from Ragbir's removal and separation from his family and community. (Doc. 86 at 12, 15–17). The claim and its factual support, at first blush, sound plausible and even appealing. But plaintiffs do not claim that Ragbir is not subject to a final and fully enforceable order of removal. More modestly, plaintiffs claim that he may not be removed *now*, that removal must wait until the taint of retaliatory animus has been proven by defendants to have dissipated. (Compl't at 41 at c.) The harm flowing from removal now versus an unspecified point in the future is considerably more abstract. Also, to the extent Ragbir suffers anxiety from being under the cloud of deportation to Trinidad and Tobago, that cloud would not be lifted if he prevailed on all claims for relief in this action.[2] Absent revocation of the final order of removal, relief not sought here (e.g., Doc. 12 at 24; Doc 72 at 9), his removal is inevitable, as are the harms he has identified. In other words, it is a matter of when, not if, these harms will occur.

The same is true of plaintiffs' claim that Ragbir's removal would deprive him of First Amendment rights and deprive them of the benefits of his exercise of those rights. Any diminishment in the effectiveness of his advocacy is an incident of his final order of removal. "[T]he First Amendment does not prevent restrictions directed at . . . [nonexpressive] conduct from imposing incidental burdens on speech." Sorrell v. IMS Health Inc., 564 U.S. 552, 567

---

[2] A complete victory likely would come with a sense of hope and euphoria, but the deprivation of the foregoing is not irreparable injury.

(2011). Ragbir's removal flows from the final and fully reviewed order of removal that predates any retaliatory conduct alleged in the complaint.

Plaintiffs also note that if Ragbir is removed, there is "no guarantee that he will be able to return to the United States" in the event he succeeds on appeal and then on the merits of his claims. (Doc. 86 at 12). Were the bar for establishing harm so low, the execution of most final and fully reviewed orders of removal would likely meet the standard. But this would conflict with the Supreme Court's clear mandate that "simply showing some 'possibility of irreparable injury' fails to satisfy the [irreparable harm] factor" of the standard for a stay pending appeal. Nken, 556 U.S. at 434 (citation omitted) (quoting Abbassi v. INS, 143 F.3d 513, 514 (9th Cir. 1998)); see also Dopico v. Goldschmidt, 687 F.2d 644, 650 (2d Cir. 1982) ("[T]he District Court has inherent power to fashion relief appropriate to the situation.").

III. Harm to the Government and the Impact of the Stay on the Public Interest

Where, as here, the government is opposing a motion for a stay, there is a merger of the third and fourth factors of the inquiry—the harm to the government and the impact of the grant or denial of a stay on the public interest. Nken, 556 U.S. at 435. "There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings . . . , and 'permit[s] and prolong[s] a continuing violation of United States law.'" Id. at 436 (alterations in original) (quoting AADC, 525 U.S. at 490).

Plaintiffs downplay the relevancy of this "supposed interest," arguing that it "is directly undermined by the fact that the Government has allowed Mr. Ragbir to remain in the United States legally for the past 11 years." (Doc. 86 at 18). But plaintiffs effectively read out of their chronology the time Ragbir spent pursuing, quite appropriately, his petition for review,

his subsequent application to reconsider and reopen the proceedings, and his review of that denial. Also, enforcement delays may be the product of the enforcement priorities of immigration officials. It is a prominent feature of democracy that enforcement priorities sometimes change with the results of an election.

Plaintiffs correctly note that there is "a public interest in preventing aliens from being wrongfully removed." Nken, 556 U.S. at 436. But there is little concern of wrongful removal here. The validity of Ragbir's removal has been tested repeatedly and upheld.

Ending an ongoing violation of United States law, however prolonged, is in the public interest.

CONCLUSION

Plaintiffs' motion for a stay pending appeal is DENIED. (Doc. 85).

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
June 19, 2018