UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAVIDATH LAWRENCE RAGBIR *et al.*,

                              Plaintiffs,

            - against -

THOMAS D. HOMAN, *et al.*,

                              Defendants.

No. 18 Civ. 1159 (PKC)
ECF Case

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS PLAINTIFFS' COMPLAINT AND IN FURTHER OPPOSITION TO
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Attorney for the United States
86 Chambers Street, Third Floor
New York, New York 10007
Tel:    (212) 637-2741
*Attorney for Defendants*

Steven J. Kochevar
Jeffrey S. Oestericher
Brandon M. Waterman
*Assistant United States Attorneys*
      – Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND .......................................................................................................2

    I.    ENFORCEMENT OF THE IMMIGRATION LAWS ...........................................2

    II.   PLAINTIFF RAVIDATH LAWRENCE RAGBIR ................................................3

    III.  THE ORGANIZATIONAL PLAINTIFFS.....................................................5

    IV.  ICE'S ALLEGED PATTERN OF RETALIATORY ENFORCEMENT ACTIONS ..........................................................................................6

    V.   THE PRESENT LAWSUIT ......................................................................7

ARGUMENT .............................................................................................................8

    I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' REMAINING CLAIMS .........................................................8

        A.  Legal Standards..................................................................................8

        B.  8 U.S.C. § 1252 Deprives the Court of Jurisdiction .................................9

            1.   8 U.S.C. § 1252(g) .........................................................................9

            2.   8 U.S.C. § 1252(a)(2)(D), (a)(5), and (b)(9)............................................11

            3.   8 U.S.C. § 1252(f)(1) .....................................................................13

        C.  The Court Does Not Have Habeas Jurisdiction over Plaintiffs' Remaining Claims. .............................................................................15

        D.  Plaintiffs' Remaining Claims Fail to Present a Justiciable Case or Controversy.....................................................................................16

            1.   Plaintiffs' claims of investigation, surveillance, and possible future action fail to present a justiciable case or controversy under the First Amendment. ...........................................................................16

            2.   The organizational plaintiffs lack standing to bring claims on their own behalf......................................................................................18

3.      The organizational plaintiffs lack associational standing to bring a claim on behalf of any third-party alien....................................................21

4.      No plaintiff has standing to challenge Operation Safe City. ....................23

II.     PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM UPON WHICH RELIEF CAN BE GRANTED ...............................................................................23

A.      Legal Standards.................................................................................................23

B.      Plaintiffs Fail to State a Plausible Claim for Relief for Retaliation in Violation of the First Amendment .......................................................................24

1.      Plaintiffs have failed to state a plausible claim for relief on their own behalf.....................................................................................................24

2.      Plaintiffs have failed to state a plausible claim for relief on behalf of third-party aliens.....................................................................................25

C.      Plaintiffs Fail to State a Plausible Claim for Relief for Content, Viewpoint, and Speaker Discrimination.......................................................................................30

D.      Plaintiffs' Fail to State a Plausible Claim for Relief Against Attorney General Jefferson B. Sessions, III, or the United States Department of Justice ..............................................................................................................31

III.    THE REMAINDER OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED ...................................32

A.      Legal Standards.................................................................................................32

B.      Plaintiffs Have Failed to Show a Likelihood of Success on Their Remaining Claims..............................................................................................32

C.      Plaintiffs Have Failed to Show Irreparable Harm..................................................33

D.      The Balance of Equities and the Public Interest Are in the Government's Favor  .................................................................................................................34

CONCLUSION..............................................................................................................35

# TABLE OF AUTHORITIES

Cases

*Aguilar v. ICE*,
  510 F.3d 1 (1st Cir. 2007) ................................................................................................... 11
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................. 23
*Bano v. Union Carbide Corp.*,
  361 F.3d 696 (2d Cir. 2004) ......................................................................................... 21, 22
*Baur v. Veneman*,
  352 F.3d 625 (2d Cir. 2003) .............................................................................................. 21
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 23, 27, 28
*Burnette v. Carothers*,
  192 F.3d 52 (2d Cir. 1999) ................................................................................................. 23
*Dorsett v. County of Nassau*,
  732 F.3d 157 (2d Cir. 2013) ............................................................................................... 23
*Edwards v. I.N.S.*,
  393 F.3d 299 (2d Cir. 2004) ............................................................................................... 31
*Elrod v. Burns*,
  427 U.S. 347 (1976) ............................................................................................................. 15
*Farrell v. Burke*,
  449 F.3d 460 (2d Cir. 2006) ............................................................................................... 21
*Freedom Holdings, Inc. v. Spitzer*,
  408 F.3d 112 (2d Cir. 2005) ......................................................................................... 33, 34
*Global Network Commc'ns, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir. 2006) ....................................................................................... 5, 6, 23
*Gonzalez v. DHS*,
  508 F.3d 1227 (9th Cir. 2007) ........................................................................................... 14
*Greenwich Citizens Comm., Inc. v. Cntys. of Warren and Washington Indus. Dev. Agency*,
  77 F.3d 26 (2d Cir. 1996) ................................................................................................... 30
*Hispana de Locust Valley v. Town of Oyster Bay*,
  868 F.3d 104 (2d Cir. 2017) ......................................................................................... 18, 20
*Hunt v. Washington State Apple Advertising Comm'n*,
  432 U.S. 333 (1977) ............................................................................................................. 21
*Jennings v. Rodriguez*,
  138 S. Ct. 830 (2018) ................................................................................................... 12, 13
*Laird v. Tatum*,
  408 U.S. 1 (1972) ......................................................................................................... passim
*Lozman v. City of Riviera Beach*,
  138 S. Ct. 1945 (June 18, 2018) ................................................................................... 23, 29
*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ....................................................................................................... 19, 20
*Luna v. Holder*,
  637 F.3d 85 (2d Cir. 2011) ................................................................................................. 15

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)..................................................................................9

*Matter of Sanchez*,
   20 I. & N. Dec. 223 (BIA 1990) .........................................................................29

*McKithen v. Brown*,
   481 F.3d 89 (2d Cir. 2007)....................................................................................9

*Morrison v. Nat'l Australia Bank Ltd.*,
   547 F.3d 167 (2d Cir. 2008)..................................................................................9

*Mt. Healthy Bd. of Ed. v. Doyle*,
   429 U.S. 274 (1977).............................................................................................24

*Munaf v. Geren*,
   553 U.S. 674 (2008).............................................................................................32

*Nken v. Holder*,
   556 U.S. 418 (2009).......................................................................................13, 35

*Nnebe v. Daus*,
   644 F.3d 147 (2d Cir. 2011)................................................................................18

*Pani v. Empire Blue Cross Blue Shield*,
   152 F.3d 67 (2d Cir. 1998).............................................................................32, 33

*Paz Nativi v. Shanahan*,
   No. 16-CV-8496 (JPO), 2017 WL 281751 (S.D.N.Y. Jan. 22, 2018) .............29, 30

*Ragbir v. Homan*,
   No. 18-cv-1159 (PKC), 2018 WL 2338792 (S.D.N.Y. May 23, 2018)..................8

*Ragbir v. Homan*,
   No. 18-cv-1159 (PKC), 2018 WL 3038494 (S.D.N.Y. June 19, 2018)..................8

*Rajah v. Mukasey*,
   44 F.3d 427 (2d Cir. 2008)..................................................................................26

*Reno v. American-Arab Anti-Discrimination Committee*,
   525 U.S. 471 (1999)......................................................................................passim

*Rent Stabilization Ass'n of NYC v. Dinkins*,
   5 F.3d 591 (2d Cir. 1993)....................................................................................22

*Robinson v. Overseas Military Sales Corp.*,
   21 F.3d 502 (2d Cir. 1994)....................................................................................8

*Ruiz-Martinez v. Mukasey*,
   516 F.3d 102 (2d Cir. 2008)................................................................................15

*Simmonds v. INS*,
   326 F.3d 351 (2d Cir. 2003)................................................................................15

*Smith v. Campbell*,
   782 F.3d 93 (2d Cir. 2015)..................................................................................23

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011).............................................................................................29

*St. Cyr v. INS*,
   533 U.S. 289 (2001).............................................................................................16

*Step, Inc. v. City of Ogdensburg*,
   176 F. Supp. 3d 112 (N.D.N.Y. 2016).................................................................33

*Tefel v. Reno*,
   180 F.3d 1286 (11th Cir. 1999) ..........................................................................14

*Tefel v. Reno*,
  972 F. Supp. 608 (S.D. Fla. 1997) ................................................................ 14
*Time Warner Cable v. Bloomberg L.P.*,
  118 F.3d 917 (2d Cir. 1997)........................................................................ 32
*United States v. Ochoa-Oregel*,
  No. 16cr1116-BEN, 2016 WL 3952156 (S.D. Cal. July 22, 2016) ........................... 3
*VIP of Berlin, LLC v. Town of Berlin*,
  593 F.3d 179 (2d Cir. 2010)........................................................................ 32
*Warth v. Seldin*,
  422 U.S. 490 (1975)................................................................................... 22
*Webster v. Doe*,
  486 U.S. 592 (1988)................................................................................... 15
*Whitmore v. Arkansas*,
  495 U.S. 149 (1990)................................................................................... 16
*Woods v. Empire Health Choice, Inc.*,
  574 F.3d 92 (2d Cir. 2009)........................................................................... 22

Statutes

6 U.S.C. § 251 ........................................................................................... 31
8 U.S.C. § 1103 ......................................................................................... 31
8 U.S.C. §§ 1221–1231 .......................................................................... 13, 14
8 U.S.C. § 1226 ......................................................................................... 29
8 U.S.C. § 1252 ............................................................................... 11, 13, 15
8 U.S.C. § 1255 ......................................................................................... 14
28 U.S.C. § 2241 ........................................................................................ 15
Fed. R. Civ. P. 12(b)(1).................................................................................. 8
Fed. R. Civ. P. 12(b)(6).................................................................................. 8

Regulations

8 C.F.R. § 236.1 ........................................................................................ 30
8 C.F.R. § 1236.1 ....................................................................................... 30
8 C.F.R. § 1003.19 ..................................................................................... 30

## PRELIMINARY STATEMENT

Plaintiffs cast their complaint as challenging a nationwide pattern of retaliatory immigration enforcement, but they have alleged only isolated incidents of valid enforcement actions against third-party aliens.  The Court should dismiss plaintiffs' complaint because of jurisdictional defects and because the complaint fails to state a plausible claim for relief.  The remainder of plaintiffs' motion for a preliminary injunction accordingly should be denied.

Each of the enforcement actions alleged by plaintiffs with any specificity falls within the jurisdiction-stripping provisions of 8 U.S.C. § 1252(g) and § 1252(b)(9)—which sweeps more broadly than § 1252(g).  Plaintiffs' remaining allegations are so speculative and open-ended that they fail to establish a justiciable controversy.  *See Laird v. Tatum*, 408 U.S. 1, 11, 13 (1972).  As a result, the Court lacks subject matter jurisdiction over any of the incidents plaintiffs cast as substantiating their nationwide practice claim.

The organizational plaintiffs lack standing.  They cannot bring claims on their own behalf because they have suffered no organizational injuries traceable to defendants.  On the contrary, the organizational plaintiffs have recently chosen to expand their existing operations—which is not an injury—and this expansion appears to be a response to valid, non-retaliatory changes in enforcement priorities.  In addition, the organizational plaintiffs cannot bring claims on behalf of any third party because they lack associational or *qui tam* standing.

Even if plaintiffs were able to overcome these jurisdictional defects, their complaint fails to state a plausible claim upon which relief can be granted.  With respect to claims brought on the organizational plaintiffs' own behalf, plaintiffs fail to allege that defendants took any action motivated by the organizational plaintiffs' speech, or that any such action caused any cognizable injury to plaintiffs.  With respect to claims brought on behalf of third-party aliens, plaintiffs' sparse allegations fail to support an inference that defendants took any action motivated by an

alien's speech.  Moreover, plaintiffs have failed to allege any injury suffered by a third-party alien that was not independently caused by valid enforcement of the immigration laws.

Plaintiffs have failed to show a likelihood of success for the same reasons.  Moreover, they have failed to establish irreparable harm: the organizational plaintiffs have not suffered any First Amendment harms—their speech remains robust and growing—and could be compensated for any putative organizational harms.  Any alleged harms to third-party aliens are the product of valid application of the immigration laws, which the preliminary injunction requested by plaintiffs would, at most, delay.  Finally, the balance of the equities and the public interest weighs against a preliminary injunction because the public benefits when the laws are enforced.

The Court should dismiss plaintiffs' complaint and deny the remaining portion of their motion for a preliminary injunction.

## BACKGROUND

### I.  ENFORCEMENT OF THE IMMIGRATION LAWS

United States Immigration and Customs Enforcement ("ICE") within the U.S. Department of Homeland Security ("DHS") conducts investigative and enforcement operations to implement the United States immigration laws.  Amended Declaration of Field Office Director Thomas R. Decker ("Decker Decl.") ¶ 6, Dkt. No. 58.  In addition to its headquarters in Washington, D.C., ICE operates through regional field offices throughout the country.  *Id.* Defendant Thomas Decker serves as the Field Office Director ("FOD") for ICE's New York Field Office.  *Id.* ¶ 1.

Pursuant to guidance issued by DHS, "[DHS] personnel may initiate enforcement actions against removable aliens encountered during the performance of their official duties and . . . have full authority to arrest or apprehend an alien whom an immigration officer has probable cause to believe is in violation of the immigration laws."  Decker Decl. Ex. A at 4.  Moreover, "[t]he

exercise of prosecutorial discretion with regard to any alien who is subject to arrest, criminal prosecution, or removal in accordance with law shall be made on a case-by-case basis in consultation with the head of the field office component . . . that initiated or will initiate the enforcement action." *Id.* The same guidance prioritizes the removal of aliens convicted of a criminal offense or who are subject to a final order of removal. *See id.* at 2.

## II.  PLAINTIFF RAVIDATH LAWRENCE RAGBIR

Plaintiff Ravidath Lawrence Ragbir is a native and citizen of Trinidad and Tobago. Declaration of Deputy Field Office Director Scott Mechkowski ("Mechkowski Decl.") ¶ 3, Dkt. No. 50.  In 1994, Mr. Ragbir was admitted to the United States as a lawful permanent resident. *Id.* ¶ 4.  However, in 2001, Mr. Ragbir was convicted of wire fraud and conspiracy to commit wire fraud; his convictions constituted aggravated felonies under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(43)(M)(i), (U), and rendered him removable from the United States, 8 U.S.C. § 1227(a)(2)(A)(iii). Mechkowski Decl. ¶¶ 5–7.  In 2006, ICE placed Mr. Ragbir in removal proceedings based on his 2001 convictions, and in 2007, Mr. Ragbir became subject to a final order of removal and lost his lawful permanent resident status.  *Id.* ¶¶ 6-8; *see United States v. Ochoa-Oregel*, No. 16cr1116-BEN, 2016 WL 3952156, at *3–*5 (S.D. Cal. July 22, 2016).

In 2008, Mr. Ragbir was released from immigration detention because he had filed a petition for review of his immigration proceedings with the United States Court of Appeals for the Second Circuit (the "Second Circuit").  Mechkowski Decl. ¶¶ 8, 9.  Over the next eight years, as Mr. Ragbir filed additional petitions and motions challenging his immigration proceedings and criminal convictions, ICE granted Mr. Ragbir a series of discretionary administrative stays of removal.  *Id.* ¶¶ 10–13.  The last of these administrative stays was granted in January 2016 and was set to expire on January 19, 2018.  *Id.* ¶ 13.  On March 4, 2016, shortly after ICE

granted Mr. Ragbir his last administrative stay of removal, the Second Circuit dismissed Mr. Ragbir's second petition for review.  *Id.* ¶ 14.  Mr. Ragbir's other challenges to his immigration proceedings also have not been successful.  *Id.* ¶¶ 9, 11, 12.

On November 16, 2017, Mr. Ragbir requested a renewed administrative stay of removal, on the basis of a pending coram nobis petition in New Jersey challenging his criminal convictions and a request for a presidential pardon.  Decker Decl. ¶ 20.  In December 2017, FOD Decker concluded that these legal challenges had a low likelihood of success and, accordingly, that ICE would not exercise its discretion to grant Mr. Ragbir a further stay of removal.  *Id.* ¶ 21.

Following FOD Decker's decision, ICE's New York Field Office worked to develop an operational plan to accomplish Mr. Ragbir's removal.  *Id.* ¶¶ 23, 25–26.  Although the decision to remove each alien was made separately, ICE attempted to coordinate Mr. Ragbir's removal with the removal of Jean Murat Montrevil.  Decker Decl. ¶¶ 27, 31–32.  ICE did so because FOD Decker was concerned that each might attempt to evade removal upon learning of the other's arrest.  *Id.* ¶ 31.  Although ICE was able to detain Mr. Montrevil on January 3, 2018, it was unable to detain Mr. Ragbir at that time.  *Id.* ¶ 34.

On January 11, 2018, Mr. Ragbir reported to the ICE New York Field Office and met with Deputy Field Office Director ("DFOD") Scott Mechkowski.  *Id.* ¶ 38.  During the meeting, DFOD Mechkowski informed Mr. Ragbir that ICE had denied his request for a renewed administrative stay of removal and was detaining him for purposes of removal.  Mechkowski Decl.  ¶ 24.  That same day, Mr. Ragbir's counsel filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of New York.  *Id.* ¶ 27.  On January 29, 2018, the court granted Mr. Ragbir's petition, and ICE released him from custody.  *Id.* ¶ 31.

### III. THE ORGANIZATIONAL PLAINTIFFS

In addition to Mr. Ragbir, five immigrants-rights organizations (the "organizational plaintiffs") are plaintiffs in the present suit.[1]  Plaintiff New Sanctuary Coalition of New York City (the "Coalition") was founded in 2007 and is a network of congregations, organizations, and individuals that works with New York City's major immigrant organizations to reform local and national immigration enforcement practices.  Compl. ¶15.  Mr. Ragbir is the Executive Director of the Coalition, *id.* ¶ 14, and the Coalition's sole full-time employee, Declaration of Steve Choi for New York Immigration Coalition Plaintiffs' Motion for Preliminary Injunction ("Choi Decl.") ¶ 12, Dkt. No. 14.  Mr. Montrevil is a co-founder of the Coalition.  Compl. ¶ 58.

Plaintiff CASA de Maryland, Inc. ("CASA") was founded in 1979 and is a non-profit 501(c)(3) membership organization headquartered in Langley Park, Maryland.  *Id.* ¶ 16.  CASA has more than 90,000 members and offers social, health, job training, employment, and legal services to immigrant communities in Maryland, Virginia, Pennsylvania, and Washington, D.C. *Id.*

Plaintiff National Immigration Project of the National Lawyers Guild ("NIPNLG") was founded as a freestanding organization in 1981 and is a non-profit 501(c)(3) membership organization headquartered in Boston, Massachusetts.  *Id.* ¶ 17.  It specializes in defending immigrants' rights and works independently and collaboratively with immigration advocacy organizations across the United States.  *Id.*

---

[1]  Unless otherwise noted, the factual background here regarding the organizational plaintiffs is based upon the allegations in plaintiffs' complaint; plaintiffs' allegations must be accepted as true for purposes of the defendants' Rule 12(b)(6) motion to dismiss.  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006).

Plaintiff New York Immigration Coalition ("NYIC") is an umbrella organization for more than 200 groups in New York State. *Id.* ¶ 18. It represents the collective interests of New York's immigrant communities and organizations and devises solutions to advance them. *Id.*

Plaintiff Detention Watch Network ("DWN") was founded in 1997 and is a coalition of approximately 200 organizations and individuals headquartered in Washington, D.C. *Id.* ¶ 19. DWN focuses exclusively on immigration detention and deportation issues and advocates for an eventual end to immigration detention. *Id.*

## IV. ICE'S ALLEGED PATTERN OF RETALIATORY ENFORCEMENT ACTIONS

Plaintiffs have alleged in broad terms that ICE has engaged in a nationwide pattern of selectively enforcing the immigration laws against immigrant-rights activists, including through investigations, surveillance, harassment, arrests, detention, and removal. Compl. ¶¶ 28–29. However, apart from ICE's alleged surveillance of Mr. Ragbir shortly before attempting to execute his final order of removal, *id.* ¶ 60, and ICE raids allegedly targeting cities rather than individuals ("Operation Safe City"), *id.* ¶¶ 97–99, plaintiffs have not alleged any specific instances of investigations, surveillance, or harassment by ICE. Instead, the only specific instances of retaliatory enforcement alleged by plaintiffs are the removal or attempted removal of Mr. Ragbir, Mr. Montrevil and five third-party aliens, including Amer Othman Adi, *id.* ¶¶ 58, 95–96, 118; the service of a Notice to Appear on third-party alien Maru Mora Villalpando, *id.* ¶¶ 87–89; and the arrest or detention of nine third-party aliens, who are not members of the organizational plaintiffs, *id.* ¶¶ 79–86, 90–94. Three of these allegedly detained third-party aliens were arrested following discussion of their immigration cases—or their partner's immigration cases—in news media. *See* Compl. ¶¶ 79–80, 90–92, 93–94. The remaining six allegedly detained third-party aliens were members of Migrant Justice, "a community based non-profit organization of Vermont dairy farmworkers and their families." Compl. ¶ 81–86.

In addition to the allegations in their complaint, plaintiffs have relied on declarations (the "Declarations") submitted in support of their motion for a preliminary injunction, including declarations submitted by *amici curiae*.  Assuming *arguendo* that the Declarations can properly be considered at this stage, the Declarations identify as additional specific retaliatory actions only the arrest or detention of two third-party aliens, *see* Declaration of Angelica Salas in Support of Plaintiffs' Motion for a Preliminary Injunction ("Salas Decl.") ¶ 5, Dkt. No. 47-2; Choi Decl. ¶ 13, and the attempted removal of one third-party alien who has "since been granted some reprieve," Choi Decl. ¶ 14.  Apart from these instances, the Declarations only speculate as to retaliatory actions that ICE might take or might have taken.  *See, e.g.*, Declaration of George Escobar for CASA de Maryland, Inc. Plaintiffs' Motion for Preliminary Injunction ("Escobar Decl.") ¶ 13 ("[T]wo of CASA's most outspoken activists . . . face potential retaliation . . . for continuing to defend their families and communities."), Dkt. No. 13; Declaration of Javier Valdez in Support of Plaintiffs' Motion for a Preliminary Injunction ("Valdez Decl.") ¶ 34, Dkt. No. 47-4 (describing unspecified law enforcement presence near public demonstrations conducted by *amicus curiae* Make the Road New York).

## V.  THE PRESENT LAWSUIT

On February 9, 2018, Mr. Ragbir and the organizational plaintiffs filed the present action, asserting one claim of retaliation in violation of the First Amendment and one claim of content, viewpoint, and speaker discrimination in violation of the First Amendment.  Dkt. No. 1 (Compl.).  On February 12, 2018, plaintiffs filed a motion for a preliminary injunction seeking to enjoin defendants from enforcing Mr. Ragbir's order of removal and restraining defendants nationwide from enforcing the immigration laws on a retaliatory basis.  Dkt. No. 11 (Motion).  ICE voluntarily agreed to stay Mr. Rabgir's removal pending resolution of this preliminary injunction motion.  Dkt. No. 4 (Stipulation and Order).

On May 23, 2018, this Court concluded that it lacked jurisdiction over plaintiffs'
challenges to the execution of Mr. Ragbir's final order of removal and, accordingly, dismissed
plaintiffs' complaint to the extent it sought relief "declar[ing] unlawful or enjoin[ing] the
execution of the final order of removal against plaintiff Ragbir."  Dkt. No. 83, *see Ragbir v.
Homan*, No. 18-cv-1159 (PKC), 2018 WL 2338792, at *9 (S.D.N.Y. May 23, 2018) (the "May
23 Order").   Because the Court determined that it lacked jurisdiction over that portion of
plaintiffs' complaint, the Court also denied plaintiffs' motion for a preliminary injunction insofar
as it sought to stay the removal of Mr. Ragbir, and dissolved the voluntary stay of Mr. Ragbir's
removal. *See id.*

On May 25, 2018, plaintiffs noticed their interlocutory appeal from the May 23 Order.
Dkt. No. 84 (Notice of Appeal); *see also Ragbir v. Homan*, No. 18-1597 (2d Cir.).  On June 19,
2018, this Court denied plaintiffs' motion for a stay of Mr. Ragbir's removal pending appeal.
Dkt. No. 96 (Order Denying Stay); *see Ragbir v. Homan*, No. 18-cv-1159 (PKC), 2018 WL
3038494 (S.D.N.Y. June 19, 2018).

## ARGUMENT

The Court should dismiss the remainder of plaintiffs' complaint for lack of subject matter
jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a plausible claim upon which
relief can be granted under Fed. R. Civ. P. 12(b)(6).  The Court should deny the remainder of
plaintiffs' motion for a preliminary injunction for the same reasons.

## I.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' REMAINING CLAIMS

### A.  Legal Standards

On a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure,
the plaintiff carries the burden of establishing that the Court has subject matter jurisdiction to

adjudicate her complaint. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). A plaintiff must prove that subject matter jurisdiction exists by a preponderance of the evidence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "[I]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), [the Court] may refer to evidence outside the pleadings." *McKithen v. Brown*, 481 F.3d 89, 95-96 (2d Cir. 2007) (alterations and internal quotation marks omitted).

## B. 8 U.S.C. § 1252 Deprives the Court of Jurisdiction

Plaintiffs' complaint should be dismissed and their motion for a preliminary injunction denied because the Court lacks subject matter jurisdiction over their claims. In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). "[M]any provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts . . . ." *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 486 (1999) ("*AADC*") (emphasis omitted). Several of these provisions—as well as provisions of the REAL ID Act of 2005, which refined IIRIRA's judicial review scheme—are applicable to plaintiffs' remaining requests for relief and deprive this Court of jurisdiction over their claims.

### 1. 8 U.S.C. § 1252(g)

8 U.S.C. § 1252(g) provides that:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

*Id.* As this Court held in its May 23 Order, "section 1252(g) reaches exactly what it says it reaches—'<u>any</u> cause or claim . . . arising from the decision or action . . . to [commence

proceedings, adjudicate cases, or] execute removal orders.'"   May 23 Order at *6 (quoting 8

U.S.C. § 1252(g)).  Accordingly, § 1252(g) eliminates subject matter jurisdiction over plaintiffs'

claims challenging the execution of Mr. Montrevil's final order of removal, the execution of

Amer Othman Adi's final order of removal, the execution of any third-party alien's final order of

removal, any surveillance of Mr. Ragbir that arose from the attempted execution of his final

order of removal, the initiation of immigration proceedings against Maru Mora Villalpando, and

the arrests or detentions of other third-party aliens identified in the Complaint or Declarations to

the extent that these arrests and detentions constituted commencements of proceedings against

the  third-party  aliens[2]—essentially  all  of  the  specific  instances  of  ICE's  alleged  pattern  of

retaliatory enforcement.[3]

       Plaintiffs  have  failed  to  allege  with  the  specificity  necessary  to  survive  a  motion  to

dismiss any retaliatory action that does not fall within § 1252(g)'s scope.  In their supplemental

briefing, plaintiffs correctly point out that the Government does not argue that § 1252(g) reaches

the actions identified in *AADC* as falling outside § 1252(g): "decisions to open an investigation,

to  surveil  the  suspected  violator,  to  reschedule  the  deportation  hearing,  to  include  various

provisions in the final order that is the product of the adjudication, and to refuse reconsideration

of that order."  *AADC*, 525 U.S. at 482; *see* Supplemental Brief in Support of Plaintiffs' Motion

for a Preliminary Injunction ("Pls.' Supp. Br."), at 2, Dkt. No. 95.  However, plaintiffs cannot

---

       [2] To the extent plaintiffs' claims challenge the arrests and detentions of the third-party
aliens not because proceedings were commenced against them but instead based on their alleged
detentions or the manner of their arrests, plaintiffs' claims fail for lack of standing, failure to
exhaust, or failure to state a plausible claim upon which relief can be granted.  *See infra*.

       [3] To the extent plaintiffs' claims are based on Operation Safe City, they fail for lack of
standing and failure to state a claim.  *See infra*.

point to any specific allegations of these or similar actions in their Complaint.[4]  If the Court lacks

jurisdiction to review challenged actions on an individual basis, it also lacks jurisdiction to

review an alleged pattern of those same actions collectively.  Accordingly, 8 U.S.C. § 1252(g),

*AADC*, and the May 23 Order call for dismissal of the remainder of plaintiffs' complaint and the

denial of the remainder of their motion for a preliminary injunction.

> 2.   8 U.S.C. § 1252(a)(2)(D), (a)(5), and (b)(9)

Other provisions of 8 U.S.C. § 1252 also eliminate district court subject matter

jurisdiction over plaintiffs' claims and channel review of plaintiffs' claims to the Court of

Appeals.  Specifically, 8 U.S.C. § 1252(b)(9) provides that:

> With respect to review of a final order of removal under subsection (a)(1), . . .
> [j]udicial review of all questions of law and fact, including interpretation and
> application of constitutional and statutory provisions, arising from any action
> taken or proceeding brought to remove an alien from the United States under this
> subchapter shall be available only in judicial review of a final order under this
> section. Except as otherwise provided in this section, no court shall have
> jurisdiction . . . to review such an order or such questions of law or fact.

Subsection 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of *all*

[claims arising from deportation proceedings]" to a court of appeals in the first instance.  *AADC*,

525 U.S. at 482–83.  Critically, "[§] 1252(b)(9) is a judicial channeling provision, not a claim-

barring one."  *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007).  8 U.S.C. § 1252(a)(5) provides in

turn that "[n]otwithstanding any other provision of law (statutory or nonstatutory), . . . a petition

for review filed with an appropriate court of appeals in accordance with this section shall be the

sole and exclusive means for judicial review of an order of removal entered or issued under any

---

[4] Plaintiffs' only specific allegations of surveillance concern surveillance of Mr. Ragbir shortly before ICE attempted to execute his final order of removal and therefore "aris[e] from the decision [and] action[s] . . . [to] execute [his] removal order."  8 U.S.C. § 1252(g); *see* Compl. ¶¶ 60, 112, 112 n.33.

provision of this chapter."    Furthermore, 8 U.S.C. § 1252(a)(2)(D) states that "[n]othing . . . in any other provision of this chapter . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."

These judicial channeling provisions sweep more broadly than § 1252(g).  *See AADC*, 525 U.S. at 483.  Indeed, *AADC* suggests that the very set of actions identified in *AADC* as beyond the reach of § 1252(g)—and which plaintiffs erroneously claim they have alleged retaliatory instances of here, Pls.' Supp. Br. at 2—falls within the scope of § 1252(b)(9).  *AADC*, 525 U.S. at 482–83 (listing "decisions or actions that may be part of the deportation process" that are beyond the reach of § 1252(g) but stating that "§ 1252(b)(9) channels judicial review of *all* [such decisions and actions] anyway"); *see Jennings v. Rodriguez*, 138 S. Ct. 830, 855 (2018) (Thomas, J., concurring in part and dissenting in part) ("The [*AADC*] Court even listed examples of the type of claims that would be covered [by § 1252(b)(9)], including challenges to the decision 'to open an investigation' and the decision 'to surveil the suspected [immigration-law] violator.'" (quoting *AADC*, 525 U.S. at 482) (third alteration in original)).  Although the Supreme Court did not speak with a clear voice about the reach of § 1252(b)(9) in its recent *Jennings* decision, the plurality opinion and concurrence indicate that five Justices would apply § 1252(b)(9) to plaintiffs' remaining claims here.  *See id.* at 839–41 (plurality opinion) (Alito, J.); *id.* at 854–59 (Thomas, J., concurring in part and dissenting in part).  In *Jennings*, the plurality concluded that § 1252(b)(9) did not bar petitioners' claims challenging their immigration detention without bond hearings.  *See id.* at 839.  By contrast, plaintiffs' remaining claims in the present case challenge "enforcement actions" taken by defendants, Pls.' Supp. Br. at 4, which, by definition, are "action[s] taken . . . to remove an alien from the United States."  8

U.S.C. § 1252(b)(9).  While prolonged detention does not necessarily move an alien along the path to removal, the enforcement actions challenged here do.  Indeed, in explaining why § 1252(b)(9) did not bar petitioners' claims in *Jennings*, the plurality expressly contrasted petitioners' prolonged detention claims with a challenge to the "decision to detain them in the first place or seek removal."  *Jennings*, 138 S. Ct. at 841.  These are the sorts of decisions plaintiffs argue underlie their remaining claims.  *See* Pls.' Supp. Br. at 2; Compl. ¶¶ 79–99.

Accordingly, plaintiffs' challenges arising from actions taken or proceedings brought to obtain or enforce final orders of removal may not be heard in district court.  Rather, once a final order of removal is entered, such claims (including any constitutional claims) may be pursued via a petition for review in the appropriate Court of Appeals.  *See* 8 U.S.C. §§ 1252(a)(5), (b)(9), (d)(1).

### 3.  8 U.S.C. § 1252(f)(1)

8 U.S.C. § 1252(f)(1) deprives this Court of jurisdiction to grant injunctive relief to any plaintiff other than Mr. Ragbir.  Subsection 1252(f)(1) provides that:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, [8 U.S.C. §§ 1221–1231,] . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

This provision "prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1231, but . . . this ban does not extend to individual cases."  *AADC*, 525 U.S. at 481–82; *see Nken v. Holder*, 556 U.S. 418, 431 (2009).  Accordingly, § 1252(f)(1) bars this Court from granting preliminary or final injunctive relief with respect to any plaintiff other than Mr. Ragbir, the only "individual alien" party to the present case.

Plaintiffs mischaracterize the relief they seek by arguing that § 1252(f)(1) is inapplicable

on the ground that they purportedly are not seeking to enjoin or restrain the operation of any provision of 8 U.S.C. §§ 1221-1231. *See* Pls.' Supp. Br. at 2–3. That is precisely what plaintiffs seek to do. Part IV of the relevant subchapter (8 U.S.C. §§ 1221-1231) is entitled "Inspection, Apprehension, Examination, Exclusion, and Removal" and generally provides the Executive with the authority to enforce the immigration laws. By seeking to "restrain[] Defendants from taking any adverse immigration enforcement against [certain aliens]," plaintiffs are asking this Court to enjoin the operation of §§ 1221-1231.[5] Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction ("Pls.' PI MOL"), at 25, Dkt. No. 12; *see* Compl. at Prayer for Relief ¶ d.

Plaintiffs' objection that application of the plain text of § 1252(f)(1) raises constitutional concerns falls short. *See* Pls.' PI MOL at 19. Section 1252(f)(1) expressly provides that a federal court—the United States Supreme Court—may grant injunctive relief beyond an individual basis. While plaintiffs cast the Supreme Court as unconstitutionally slow, they point to no authority requiring an immediate forum for their claims.[6] Moreover, any alien affected by defendants' alleged discriminatory practices has an adequate forum other than the Supreme

---

[5] The cases plaintiffs cite are not to the contrary. In *Gonzalez v. DHS*, 508 F.3d 1227, 1232–33 (9th Cir. 2007), the Ninth Circuit held that § 1252(f)(1)'s bar on injunctive relief did not apply because the injunction at issue specifically enjoined application of 8 U.S.C. § 1255(i), a provision governing the adjustment of certain aliens' status which falls under part V, not part IV, of subchapter II of the INA. *Id.* at 1232–33. Here, plaintiffs challenge defendants' actions enforcing the immigration laws, which are governed by part IV of subchapter II of the INA. *Tefel v. Reno*, 972 F. Supp. 608 (S.D. Fla. 1997), concerned immigration proceedings that began before IIRIRA took full effect, and, in any case, was vacated by the Eleventh Circuit, *see Tefel v. Reno*, 180 F.3d 1286 (11th Cir. 1999).

Court: as discussed *supra*, under 8 U.S.C. §§ 1252(a)(5), (a)(2)(D) and (b)(9), such an alien may raise their constitutional claims in a petition for review before the appropriate Court of Appeals after exhausting such claims through the administrative review process.

### C. The Court Does Not Have Habeas Jurisdiction over Plaintiffs' Remaining Claims.

28 U.S.C. § 2241 does not provide jurisdiction over plaintiffs' remaining claims. Plaintiffs' complaint and their briefing on their motion for a preliminary injunction assert that this Court has habeas jurisdiction because Mr. Ragbir is subject to a final order of removal. Compl. ¶ 10 (citing *Simmonds v. INS*, 326 F.3d 351 (2d Cir. 2003)); Pls.' PI MOL at 20 (same). Assuming *arguendo* that 28 U.S.C. § 2241 could have provided habeas jurisdiction over Mr. Ragbir's challenge to enforcement of his removal order under *Simmonds* in the absence of 8 U.S.C. § 1252, this Court has dismissed Mr. Ragbir's challenge to enforcement of his removal order, and so he is no longer challenging the basis of his putative "in-custody" status.[7]  None of the other plaintiffs are detained or subject to final orders of removal, so the habeas statute cannot

---

[6] Plaintiffs rely on the statement in *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion) (Brennan, J.) that minimal loss of First Amendment freedoms constitutes irreparable injury for purposes of issuance of a preliminary injunction. However, as discussed *infra*, plaintiffs have not alleged any legally cognizable loss of First Amendment freedoms. Plaintiffs also cite to *Webster v. Doe*, 486 U.S. 592, 603 (1988), but *Webster* does not support the argument that plaintiffs' claims demand immediate review.

[7] The Government continues to object to plaintiffs' reliance on *Simmonds v. INS*, 326 F.3d 351, (2d Cir. 2003), to suggest that Mr. Ragbir is "in custody" for habeas purposes. *Simmonds* concerned a challenge to a removal order brought by an alien in criminal custody whom INS was required by law to detain if his criminal custody ended. *Id.* at 356. As such, the question of whether an alien like Mr. Ragbir, who is not detained and who has already obtained judicial review of his removal order, is in custody for habeas purposes was not before the *Simmonds* Court. Moreover, *Simmonds* was decided before the passage in 2005 of the REAL ID Act, which "eliminat[ed] the availability of habeas corpus relief in the United States District Courts for aliens seeking to challenge orders of removal entered against them," *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 105 (2d Cir. 2008), but also "restored judicial review in the courts of appeals over 'constitutional claims or questions of law' for all noncitizens," *Luna v. Holder*, 637 F.3d 85, 94 (2d Cir. 2011).

provide jurisdiction for their claims.  Nor can they assert habeas jurisdiction on behalf of third-party aliens in this context.  *See Whitmore v. Arkansas*, 495 U.S. 149, 163–64 (1990) (discussing limitations on next friend standing in the habeas context).  Accordingly, the Court lacks habeas jurisdiction over any of plaintiffs' remaining claims, and the Suspension Clause is not implicated because it protects core applications of the writ of habeas corpus.  *See St. Cyr v. INS*, 533 U.S. 289, 301 (2001).

### D.  Plaintiffs' Remaining Claims Fail to Present a Justiciable Case or Controversy

#### 1.  Plaintiffs' claims of investigation, surveillance, and possible future action fail to present a justiciable case or controversy under the First Amendment.

The Court lacks Article III jurisdiction over plaintiffs' open-ended allegations of investigation, surveillance, and possible future actions by ICE because such allegations fail to present a justiciable case or controversy.  The Supreme Court dealt with similar claims in *Laird v. Tatum*, 408 U.S. 1 (1972), where plaintiffs challenged the United States Army's alleged surveillance of domestic civilian political activity in the late 1960s.  *Tatum*, 408 U.S. at 2–5.  Separate from standing, the Supreme Court concluded that federal courts lack jurisdiction over claims seeking open-ended judicial review of Executive programs of surveillance and investigation on the basis of future possible harms.  *Id.* at 10, 13, 15.  In drawing a line between justiciable cases involving a First Amendment chilling effect and those cases that do not present a justiciable controversy, the Court observed that

> [i]n none of [the justiciable] cases . . . did the chilling effect arise merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual.  Rather, in each of [the justiciable] cases, the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging.

*Id.* at 11.  The Court grounded its analysis in separation-of-powers principles, observing that a contrary result "would have the federal courts as virtually continuing monitors of the wisdom and soundness of Executive action; such a role is appropriate for the Congress."  *Id.* at 15.

*Tatum* bars plaintiffs' remaining claims to the extent they seek judicial review of broad patterns of surveillance and investigation that plaintiffs have not connected with any concrete, reviewable enforcement action.   For example, two of the only four members of the organizational plaintiffs in the United States identified in plaintiffs' submissions are Missael Garcia and Monica Camacho, two leaders of plaintiff CASA.[8]  *See* Compl. ¶ 117.  But plaintiffs have not alleged any concrete enforcement action taken or threatened against Mr. Garcia and Ms. Camacho: plaintiffs state only that "[l]eaders like Missael Garcia and Monica Camacho . . . face potential retaliation for continuing to defend their families and their communities."  Compl. ¶ 117.  These are precisely the sorts of claims the *Tatum* Court foreclosed by holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; the federal courts established pursuant to Article III of the Constitution do not render advisory opinions."  *Tatum*, 408 U.S. at 13–14.

*Tatum* eliminates jurisdiction over the entirety of Mr. Ragbir's remaining claims, as well as any claims brought on behalf of third-party aliens on the basis of enforcement actions over which § 1252 bars judicial review.  Mr. Ragbir claims that he faces unspecified "cruel actions" in the future, Pls.' Supp. Br. at 9 (internal quotation marks omitted), but these vague fears are not legally cognizable under *Tatum*.  *See Tatum*, 408 U.S. at 13.  Moreover, this Court has held that "[Mr. Ragbir's] asserted injury flows from [his] final order of removal, which he does not allege

---

[8] The other two members are Mr. Ragbir and Maru Mora Villalpando.

is defective or legally infirm." May 23 Order at *7. Because this Court has dismissed Mr. Ragbir's claim to the extent it challenges enforcement of his final order of removal, Mr. Ragbir cannot identify any "specific present objective harm or . . . threat of specific future harm" as a basis for his claims. *Tatum*, 408 U.S. at 13. For aliens like Mr. Ragbir subject to a valid final order of removal, any such harms are beyond the jurisdiction of this Court to address.

2.   The organizational plaintiffs lack standing to bring claims on their own behalf.

The organizational plaintiffs do not have standing to bring any claims on their own behalf. Because the organizational plaintiffs are not challenging the enforcement of the immigration laws against themselves, they must establish organizational standing to bring their own claims. Accordingly, plaintiffs bear the burden of showing, for at least one of the organizational plaintiffs: "(i) an imminent injury in fact to itself as an organization (rather than to its members) that is distinct and palpable; (ii) that its injury is fairly traceable to [retaliatory enforcement actions]; and (iii) that a favorable decision would redress its injuries." *Centro de la comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) ("*Centro*") (internal quotation marks omitted).

Plaintiffs have failed to establish the elements of organizational standing. First, plaintiffs have failed to allege any injury to the organizational plaintiffs distinct from their putative members. The Second Circuit has "recognized that only a perceptible impairment of an organization's activities is necessary for there to be an injury in fact." *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011) (internal quotation marks omitted). Thus, an organization suffers an injury-in-fact when "a policy has impeded . . . the organization's ability to carry out its responsibilities" or when the organization "diverts its resources away from its current activities," *Centro*, 868 F.3d at 110, 111 (internal quotation marks and brackets omitted). Plaintiffs have not

alleged that any policy impedes their operations, that they have diverted resources away from their long-standing activities, or that their activities have been otherwise impaired.  On the contrary, the organizational plaintiffs have alleged and adduced that they have—of their own volition—increased their existing activities as a result of immigration enforcement actions.  *See* Compl. ¶ 120; Escobar Decl. ¶¶ 8, 16; Choi Decl. ¶¶ 18–22; Declaration of National Immigration Project of the National Lawyers Guild in Support of Plaintiffs' Motion for Preliminary Injunction ("NIPNLG Decl.") ¶ 6, Dkt. No. 16; Declaration of Mary Small for Detention Watch Network Plaintiffs' Motion for Preliminary Injunction ("Small Decl.") ¶¶ 15–18, Dkt. No. 15.[9] To the extent that the organizational plaintiffs have cast a greater need for their services as an impairment of their activities, any such injury would be insufficiently distinct from alleged injuries to their members to support organizational standing.

Assuming *arguendo* that the organizational plaintiffs' expanded operations amount to an injury, plaintiffs have failed to allege the latter two elements of organizational standing, causation and redressability.  Plaintiffs face a heightened burden to establish these two elements because they are challenging the enforcement of the immigration laws not against themselves but against alien individuals.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992).  Apart from conclusory statements in their briefing and the Declarations, plaintiffs have failed to allege how their increased operations are fairly traceable to retaliatory enforcement actions or how a favorable judicial decision, limited as it would be by the jurisdictional constraints of

---

[9] Although plaintiffs argue that they have diverted resources in response to defendants' alleged retaliatory actions, Pls.' Supp. Br. at 5, the activities to which they claim to have allocated increased resources do not appear meaningfully different from their regular operations. *Compare* Compl. ¶¶ 15–19; Escobar Decl. ¶¶ 3–7; Choi Decl. ¶¶ 3–6; NIPNLG Decl. ¶ 3; Small Decl. ¶¶ 2–11 (describing regular activities) *with* Compl. ¶ 120; Escobar Decl. ¶¶ 8, 16; Choi Decl. ¶¶ 18–22; NIPNLG Decl. ¶ 6; Small Decl. ¶¶ 15–18 (describing expansion of substantially the same activities).

§ 1252, would redress such injuries.  Instead, plaintiffs' choice to expand their work appears to be the result of valid, non-retaliatory changes in ICE's enforcement priorities following the 2016 presidential election,[10] or to the extent plaintiffs cast these new enforcement priorities as retaliatory, they offer no basis for such speculation.  For example, plaintiff NIPNLG allocated resources to prepare an online manual that states, "[w]e believe this preparation and information is important now particularly under a Department of Justice headed by Jeff Sessions, a politician who is well known for his right-wing, anti-immigrant politics, as well as use of retaliation and prosecution against people who pose a political threat."  NIPNLG Decl. ¶ 6; *see also, e.g.*, Choi Decl. ¶ 21b ("Since the Trump Inauguration [i]n 2017, demand for [NYIC's Immigration Navigator program] has skyrocketed."); Escobar Decl. ¶¶ 6, 9 ("Following the election of Donald Trump in November 2017 [sic], CASA's members and its allies have been racked with justifiable fear.").  It is NIPNLG's right to criticize Attorney General Sessions, but in order to establish that the resources expended on its increased activities are traceable to retaliatory enforcement actions and redressable by the Court, plaintiffs must make a more substantial showing.  *See Lujan*, 504 U.S. at 560–61 ("[T]here must be a causal connection between the injury and the conduct complained of[, and] . . . it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." (internal quotation marks and citations omitted)).[11]   Plaintiffs have failed to establish the necessary elements of

---

[10] Such valid, non-retaliatory changes enforcement priorities include the issuance of the February 20, 2017 Memorandum by then-Secretary of Homeland Security John Kelly regarding the "Enforcement of the Immigration Laws to Serve the National Interest," which rescinded, with certain exceptions, "existing conflicting directives, memoranda, or field guidance regarding the enforcement of our immigration laws and priorities for removal."  Decker Decl. Ex. A at 2.

[11] Some *amici curiae* have claimed that their members have become less willing to publicize their stories because they are subject to enforcement actions, thereby impairing *amici*'s operations.  *See, e.g.*, Salas Decl. ¶¶ 5–13.  This alternative theory of organizational injury, set

organizational standing.

3. <u>The organizational plaintiffs lack associational standing to bring a claim on behalf of any third-party alien.</u>

The organizational plaintiffs lack associational standing to bring claims on behalf of any alien. "Federal courts as a general rule allow litigants to assert only their own legal rights and interests, and not the legal rights and interests of third parties." *Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006). Associational standing is a "narrow exception" to the general rule against third-party standing. *Bano v. Union Carbide Corp.*, 361 F.3d 696, 715 (2d Cir. 2004). An association attempting to bring suit on behalf of its members must establish standing by proving that:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *accord Bano*, 361 F.3d at 713. The organizational plaintiffs fail the first and third prongs of the *Hunt* test.

Applying *Hunt*'s first prong, the organizational plaintiffs have failed to establish that any of their members other than Mr. Ragbir and Maru Mora Villalpando would have standing to sue

---

forth only on behalf of amici, also fails to establish plaintiffs' organizational standing. First, none of the organizational plaintiffs have alleged or adduced similar difficulties with their operations. Indeed, only four members of the organizational plaintiffs in the United States have been identified, and plaintiffs have not alleged that any of them have become more reticent to share their stories. Second, operational difficulties caused by the reticence of an organization's members are insufficiently distinct from the members' own injuries to support organizational standing. *See Centro*, 868 F.3d at 109. Third, *amici* and plaintiffs have failed to establish that any reticence on the part of individuals subject to enforcement proceedings is traceable specifically to retaliatory actions, as opposed to valid changes in enforcement priorities (or simple enforcement of the immigration laws). Fourth, *amici* and plaintiffs have not shown how relief from this Court would cure any reticence on the part of individuals subject to enforcement proceedings to publicly describe their status.

in his or her own right.  To establish standing, a party must "allege, and ultimately prove, that he has suffered an injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief."  *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003).  Plaintiffs have identified only two members in the United States other than Mr. Ragbir and Maru Mora Villalpando: Missael Garcia and Monica Camacho.[12]  However, with respect to Mr. Garcia and Ms. Camacho, plaintiffs allege only that they "face potential retaliation for continuing to defend their families and communities," which is too vague and speculative an allegation to establish any of the elements of standing.  Compl. ¶ 117.

Even were the organizational plaintiffs to establish that their members other than Mr. Ragbir and Ms. Villalpando had standing, the organizational plaintiffs also fail the third prong of *Hunt*'s associational standing test, because "'the fact and extent' of the injury that gives rise to [their] claims for injunctive relief 'would require individualized proof.'"  *Bano*, 361 F.3d at 714 (quoting *Warth v. Seldin*, 422 U.S. 490, 515–16 (1975)); *accord Rent Stabilization Ass'n of NYC v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993).  Here, any inquiry into whether the government has selectively enforced the immigration laws against an alien on the basis of his or her activism will necessarily require an investigation into the alien's activities and the alleged enforcement actions taken against him or her.  The activism alleged in the complaint takes many forms, and the third-party aliens identified in the complaint appear to be in different stages of their immigration proceedings.  In light of these diverse circumstances, it will not be possible to adjudicate any claim of selective enforcement without individualized proof.  Moreover, *Hunt*'s third prong bars the organizational plaintiffs from raising claims on behalf of Mr. Ragbir or Ms. Villalpando.

---

[12] With respect to the organizational plaintiffs' members who have already been removed from the United States, plaintiffs have failed to request relief that would redress their alleged injuries.

Like the other aliens identified in the complaint, the varying details of Mr. Rabgir's and Ms. Villalpando's immigration proceedings and activism require their individual participation in any suit challenging enforcement actions taken against them.

4.   <u>No plaintiff has standing to challenge Operation Safe City.</u>

Plaintiffs lack standing to challenge Operation Safe City.  Operation Safe City allegedly targeted communities where political action had been taken to limit local or state government's cooperation with federal immigration enforcement.  Compl. ¶¶ 97–99.  No plaintiff nor any member of an organizational plaintiff was allegedly harmed or affected by Operation Safe City. In addition, plaintiffs cannot assert the rights of any governmental body.  Such an arrangement would require *qui tam* standing, but "[t]here is . . . no common law right to bring a qui tam action; rather, a particular statute must authorize a private party to do so."  *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 98 (2d Cir. 2009).  No statute authorizes plaintiffs to bring claims on behalf of the communities allegedly targeted in Operation Safe City.

In light of the foregoing, the Court should dismiss plaintiffs' complaint in its entirety for lack of jurisdiction and deny the remainder of plaintiffs' motion for a preliminary injunction.

## II.   PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.  Legal Standards

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court assumes the truth of all facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff.  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).  To survive, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  For a claim to be plausible, a complainant's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### B.   Plaintiffs Fail to State a Plausible Claim for Relief for Retaliation in Violation of the First Amendment

Plaintiffs' claim of First Amendment retaliation should be dismissed even if plaintiffs could overcome jurisdictional impediments.  "To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) the defendant's actions caused him some injury." *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (internal quotation marks omitted) (alteration in original) (quoting *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013)).  The Supreme Court recently reiterated that the required link between a defendant's retaliation and a plaintiffs' injury is but-for causation. *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1952, 1954-55 (June 18, 2018) (citing and discussing *Mt. Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 281–87 (1977)) ("[T]he Court held that even if retaliation might have been a substantial motive for [a defendant's] action, still there was no liability unless the alleged constitutional violation was a but-for cause of [plaintiff's injury.]").  Plaintiffs have failed to adequately plead the second and third elements of any First Amendment retaliation claim.

### 1.   Plaintiffs have failed to state a plausible claim for relief on their own behalf.

Mr. Ragbir has failed to state a plausible claim for First Amendment retaliation.  Mr. Ragbir has not alleged that he has suffered any legally cognizable injury caused by any action of defendants.  This Court held that "Mr. Ragbir's asserted injury flows from [his] final order of removal," not from any action by defendants to enforce it.  May 23 Order at *7.  Mr. Ragbir cites

unspecified "cruel" actions by defendants and the possibility of future such actions, Pls.' Br. at 9, but these vague characterizations are insufficient to support a plausible claim for relief.

The organizational plaintiffs have also failed to state a plausible claim for First Amendment retaliation on their own behalf.  With respect to the second element of a retaliation claim, none of the organizational plaintiffs have alleged that their speech motivated defendants to take any particular action.  Indeed, plaintiffs have not alleged that defendants were aware of or responsive to the organizational plaintiffs' speech—as opposed to an individual alien's speech— in any way.

With respect to the third element of a retaliation claim, the organizational plaintiffs have failed to allege that they have suffered any injuries caused by action taken in response to their speech.  In fact, the organizational plaintiffs have not alleged any legally cognizable injuries at all.  Their speech remains robust, and they have chosen to expand their operations in response to recent enforcement actions.  *See* Pls.' Supp. Br. at 5; Compl. ¶ 120; *see supra* (discussing the lack of any impairment to the organizational plaintiffs' operations).  The Coalition's allegations of surveillance and subjective chill do not amount to a legally cognizable injury.  *See Tatum*, 408 U.S. at 11, 13.[13]  Even if the organizational plaintiffs had alleged some legally cognizable injuries to themselves, the complaint contains no basis to infer that defendants' actions in response to the organizational plaintiffs' speech were a but-for cause of such injuries.

2.  <u>Plaintiffs have failed to state a plausible claim for relief on behalf of third-party aliens.</u>

With respect to claims raised on behalf of third-party aliens, plaintiffs face a threshold

---

[13] To the extent the Coalition has alleged that it suffered an injury from the loss of Mr. Ragbir's and Mr. Montrevil's work, such injury was not caused by any challenged action taken by defendants.  Any loss of work "flows from [Mr. Ragbir's and Mr. Montrevil's] final order[s] of removal and not [the orders'] execution."  May 23 Order at *7.

barrier before the adequacy of their pleadings under the First Amendment retaliation standard need even be considered: in *AADC*, the Supreme Court held that "[a]s a general matter . . . an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *AADC*, 525 U.S. at 488. The Court observed that selective prosecution claims "invade a special province of the Executive—its prosecutorial discretion." *Id.* at 489. Executive discretion is "ill-suited to judicial review[,]" and "[j]udicial supervision in this area . . . entails systemic costs of particular concern . . . [which] are greatly magnified in the deportation context." *Id.* at 490 (internal quotation marks and citation omitted). Moreover, "in all cases, deportation is necessary in order to bring to an end *an ongoing violation* of United States law. The contention that a violation must be allowed to continue because it has been improperly selected is not powerfully appealing." *Id.* at 491 (emphasis in original).

In the present case, plaintiffs have not alleged that any of the enforcement actions allegedly taken against third-party aliens were not sound applications of the immigration laws, apart from retaliatory taint. In other words, the presence in the United States of each of the third-party aliens identified in the complaint was or is an ongoing violation of United States law. Indeed, for some third-party aliens, the complaint specifically alleges why the alien does not have a right to be in the United States. *See, e.g.*, Compl. ¶ 79 (explaining that Daniela Vargas's Deferred Action for Childhood Arrivals ("DACA") status had expired); *id.* ¶ 88 (explaining that Maru Mora Villalpando's tourist visa had expired). Accordingly, plaintiffs do not have the right to bring selective enforcement claims on behalf of the third-party aliens because they do not have a constitutional right to assert selective enforcement as a defense to removal. *AADC*, 525 U.S. at 488.

Nor have plaintiffs adequately alleged that their claims fall within any possible exception

to the Supreme Court's holding in *AADC*.  In concluding its opinion, the *AADC* Court noted that to resolve the present controversy, it "need not rule out the possibility of a rare case in which the alleged basis of discrimination is so outrageous that the foregoing considerations can be overcome."  *AADC*, 525 U.S. at 491; *see Rajah v. Mukasey*, 544 F.3d 427, 438 (2d Cir. 2008) (acknowledging that "a selective prosecution based on an animus [against an alien's religion, ethnicity, gender, or race] would call for some remedy").  Plaintiffs' complaint has failed to establish that this is the "rare case."  The complaint contains no allegations of animus against immutable characteristics as contemplated in *Rajah*, and this Court's May 23 Order distinguished, for purposes of *AADC*'s outrageous discrimination exception, between the volitional act of an alien engaging in activism and an alien's non-volitional membership in a targeted and protected group.  May 23 Order at *8.  Moreover, plaintiffs have not plausibly alleged a nationwide "pattern and practice of selectively enforcing the immigration laws against immigrant-rights activists on the basis of their protected speech."  Compl. ¶ 127.  Rather, plaintiffs have alleged that during the past year, ICE—which conducts many thousands of enforcement actions each year—took some form of enforcement action against a discrete number of individuals scattered throughout the United States.  *See id.* ¶¶ 78-99.  These sparse and limited allegations are not "so outrageous" as to overcome the policy considerations enunciated by the Supreme Court.  *AADC*, 525 U.S. at 491.

Assuming *arguendo* that plaintiffs could assert selective enforcement claims on behalf of third-party aliens, which they cannot, plaintiffs have failed to plausibly allege the second and third elements of a First Amendment retaliation claim.  To survive a motion to dismiss, plaintiffs must "nudge their claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  Overall, plaintiffs' allegations regarding defendants' motivations and causation of injury

with respect to third-party aliens are too vague and speculative to satisfy the *Twombly* standard.

Plaintiffs have failed to allege any basis for a plausible inference of retaliatory motives behind defendants' alleged enforcement actions against third-party aliens.  With respect to some third-party aliens, plaintiffs rely on the alleged or implied use of an alien's public statements as a basis for an inference of retaliatory motive.  *See* Compl. ¶¶ 79–80 (alleging Daniela Vargas detained following her appearance at a press conference), ¶ 89 (Maru Mora Villalpando stating that ICE "knew about [her] because of her activism"), ¶ 92 (alleging an ICE agent stated that he found Baltazar Aburto Gutierrez because of a newspaper article), ¶¶ 93–94 (alleging that ICE stated that Eliseo Jurado came to the agency's attention through an investigation into his wife, whose case has been widely publicized).  However, without more, any such use is not a basis for a plausible inference of retaliation.  If an alien states in a public forum that he or she is subject to removal or otherwise publicizes his or her case, ICE may use the alien's public statements or related media coverage to take a valid enforcement action against the alien—ICE is allowed to use public information to discharge its constitutional duties.

With respect to the remaining third-party aliens identified in the complaint, plaintiffs rely on the temporal proximity between an alien's public statements—related or unrelated to ICE— and enforcement actions to support an inference of retaliation.  *See* Compl. ¶¶ 79–80 (alleging Daniela Vargas detained immediately following her appearance at a press conference); Compl. ¶ 82 (alleging detention of Jose Victor Garcia Diaz the day after a meeting dedicated "to build[ing] a unified movement for respect for human rights in food supply chains"), ¶¶ 83–84 (alleging arrest of Jose Enrique Balcazar and Zully Victoria Palacios Rodriguez the day after the "announce[ment] of an escalation of [the] Milk with Dignity campaign with respect to Ben & Jerry's"), ¶ 85 (alleging arrest of Esau Peche and Yesenia Hernandez after they participated in a

march for better work conditions apparently directed primarily at Ben & Jerry's), ¶ 96 (alleging removal of Amer Othman Adi after he began a hunger strike).   However, mere temporal proximity between an alien's speech—particularly when that speech concerns matters unrelated to ICE, such as working conditions in the dairy industry—does not, by itself, support a plausible inference of retaliatory motivation.   Otherwise, ICE could be sued every time it took an enforcement action against an alien participating in any public speech.   Plaintiffs have not pleaded allegations that nudge their claim that ICE's alleged enforcement actions were motivated by any third-party alien's speech "across the line from conceivable to plausible."   *Twombly*, 550 U.S. at 570.[14]

Plaintiffs have also failed to allege any basis for a plausible inference that defendants' actions caused legally cognizable injuries to third-party aliens.   First, plaintiffs have not alleged any First Amendment harms on the part of third-party aliens:  plaintiffs have not alleged that any third-party alien reduced their speech as a result of action by defendants.   To the extent that enforcement actions had the practical effect of limiting a third-party alien's speech, "the First Amendment does not prevent restrictions directed at . . . [nonexpressive] conduct from imposing incidental burdens on speech."   *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).   Second, to the extent plaintiffs allege that defendants' enforcement action themselves amount to injuries against third-party aliens, they have failed to show necessary but-for causation.   *See Lozman*, 138 S. Ct. at 1952, 1954-55.   As noted above, plaintiffs have not alleged that any of the third-party

---

[14]   No plausible inference of retaliation against specific third-party aliens or the organizational plaintiffs can be drawn from plaintiffs' allegations concerning Operation Safe City.   *See* Compl. ¶¶ 97–99.   At most, an inference could be drawn that Operation Safe City was motivated by state and local governments' actions to prevent cooperation with federal immigration authorities.   But plaintiffs lack standing to bring any claims on behalf of any government.   *See supra*.

aliens identified in the complaint have a legal right to remain in the United States.  Because "a presumption of regularity attaches to the actions of Government agencies," plaintiffs must allege some additional basis beyond a valid enforcement action itself to support an inference that the enforcement action would not have occurred simply as a result of defendants performing their constitutional role of enforcing the immigration laws.  *USPS v. Gregory*, 534 U.S. 1, 10 (2001).  Plaintiffs' complaint provides no basis to infer that the actions taken to end the third-party aliens' ongoing violations of United States law would not have been taken regardless of any possible retaliatory motive.  Accordingly, plaintiffs have failed to allege the third element of a First Amendment retaliation claim with respect to any third-party alien.[15]

### C.   Plaintiffs Fail to State a Plausible Claim for Relief for Content, Viewpoint, and Speaker Discrimination

Plaintiffs fail to state a plausible claim upon which relief can be granted on their second count, for viewpoint discrimination, because the immigration laws at issue do not restrain speech.  Although plaintiffs style their claims as two separate counts of retaliation and viewpoint discrimination, both counts challenge defendants' alleged retaliatory enforcement of the immigration laws against Mr. Ragbir and certain third-party aliens on the basis of their activism.  As such, plaintiffs' second count is duplicative of their first count and fails because the

---

[15] With respect to one third-party alien, Zully Victoria Palacios Rodriguez, plaintiffs allege that ICE deviated from its usual practices by detaining her without bond.  To the extent that any alien's detention without bond forms the basis of plaintiffs' remaining claims, the Court should require exhaustion before the BIA before hearing such claims in federal court.  An alien who is denied bond may request a custody redetermination hearing conducted by an immigration judge at any time before a final order of removal is issued.  8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1), 1003.19(e).  "There is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus; however, such exhaustion is generally required as a prudential matter."  *Paz Nativi v. Shanahan*, No. 16-CV-8496 (JPO), 2017 WL 281751, at *1, *2 (S.D.N.Y. Jan. 22, 2018) (collecting cases).

immigration laws at issue, by their plain terms, do not regulate expressive conduct.

Every case cited by plaintiffs in support of their second count concerns a challenge to statutes or rules that regulated the primary conduct of speech.  *See* Compl. ¶¶ 130–37; Pls.' PI MOL at 12–13.  By contrast, the immigration laws do not regulate the primary conduct of non-fraudulent speech and instead determine whether an alien has the right to remain in the United States.  To the extent the immigration laws can be applied in a discriminatory manner on First Amendment grounds, such selective enforcement could only amount to a retaliation claim.  *See Greenwich Citizens Comm., Inc. v. Cntys. of Warren and Washington Indus. Dev. Agency*, 77 F.3d 26, 31–32 (2d Cir. 1996) (discussing "crucial distinction between retaliatory First Amendment claims and affirmative First Amendment claims").  And, as discussed *supra*, plaintiffs' retaliation claims are deficient.

### D.  Plaintiffs' Fail to State a Plausible Claim for Relief Against Attorney General Jefferson B. Sessions, III, or the United States Department of Justice

The Court should dismiss plaintiffs' claims against Attorney General Jefferson B. Sessions, III, and the United States Department of Justice ("DOJ") because plaintiffs' allegations do not pertain to the Attorney General's role in the immigration system or the functions of the Department of Justice.  As plaintiffs allege, the Attorney General oversees the Executive Office for Immigration Review ("EOIR").  Compl. ¶ 26; *see* 8 U.S.C. § 1103(g); *see generally* 6 U.S.C. § 251 (transferring immigration enforcement functions of the Commissioner of Immigration and Naturalization to the Secretary of Homeland Security).  However, "[EOIR] . . . is responsible for the administrative adjudication of immigration cases," not the enforcement of the immigration laws. *Edwards v. I.N.S.*, 393 F.3d 299, 302 n.1 (2d Cir. 2004).   Plaintiffs are challenging enforcement actions taken by ICE—which is part of DHS, not DOJ—and plaintiffs' complaint contains no allegations that actions taken by EOIR, the Attorney General, or the Department of

Justice were unconstitutional.  Accordingly, plaintiffs' claims against the Attorney General and DOJ should be dismissed for failure to state a plausible claim upon which relief can be granted.

### III. THE REMAINDER OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED

Plaintiffs' motion for preliminary relief sought an injunction staying Mr. Ragbir's removal and "restraining Defendants from taking any adverse immigration enforcement action against any noncitizen on the basis of protected speech or expressive conduct."  Pls.' PI MOL at 25.  The Court denied the portion of plaintiffs' motion for a preliminary injunction to the extent it sought to stay Mr. Ragbir's removal.  May 23 Order at *9.  Plaintiffs' request for a nationwide injunction restraining the defendants from enforcing the immigration laws on a retaliatory basis remains pending.  Even if the Court denies defendants' motion to dismiss, plaintiffs' remaining request for preliminary relief should be denied.

#### A.  Legal Standards

Preliminary injunctions are "extraordinary and drastic" remedies that should never be "awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (quotation omitted).  A party seeking to preliminarily enjoin "government action taken in the public interest pursuant to a statutory or regulatory scheme" in a way that would "alter, rather than maintain, the status quo . . . must demonstrate irreparable harm and a clear or substantial likelihood of success on the merits."  *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 185–86 (2d Cir. 2010) (internal quotation marks omitted).  Further, "[w]henever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests."  *Time Warner Cable v. Bloomberg L.P.*, 118 F.3d 917, 929 (2d Cir. 1997).

#### B.  Plaintiffs Have Failed to Show a Likelihood of Success on Their Remaining Claims

Plaintiffs have failed to establish a likelihood of success for the reasons set forth above: the Court lacks jurisdiction over plaintiffs' remaining claims, and plaintiffs' sparse allegations of a nationwide pattern of retaliatory enforcement fail to state a plausible claim on which relief can be granted.  But even if the Court concludes that it has jurisdiction over plaintiffs' remaining claims and that plaintiffs' complaint states a plausible claim upon which relief can be granted, plaintiffs have failed to establish a likelihood of success on their remaining claims.  Although the Court is "confined to the four corners of the complaint" for purposes of defendants' motion to dismiss under Rule 12(b)(6), *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 76 (2d Cir. 1998), the Court can rely on the additional submissions by the parties to resolve plaintiffs' motion for a preliminary injunction.  In particular, the Court can consider the valid changes in immigration enforcement priorities following the 2016 presidential election.  *See* Decker Decl. ¶ 1, Ex. A.  Based on both plaintiffs' and defendants' submissions to the Court, it is likely that the enforcement actions underlying plaintiffs' claims, as well as any possible effect on the organizational plaintiffs' operations, were the result of such changes in enforcement priorities, not retaliation.  *See id.*; NIPNLG Decl. ¶ 6; Choi Decl. ¶ 21b; Escobar Decl. ¶ 6; *see also* Order Denying Stay at 7, Dkt. No. 96 ("It is a prominent feature of democracy that enforcement priorities sometimes change with the results of an election.").

### C.  Plaintiffs Have Failed to Show Irreparable Harm

Plaintiffs have failed to show that they will suffer irreparable harm in the absence of a preliminary injunction.   "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (internal quotation marks omitted).  The organizational plaintiffs have not claimed

any First Amendment injuries: their speech remains robust and growing. *See, e.g.*, Pls.' Supp. Br. at 5; Compl. ¶ 120. Monetary relief could compensate them for the resources they have allegedly allocated to their expanded operations, or for any operational difficulties.[16] Plaintiffs have also failed to establish irreparable harm on the part of any third-party alien. Any harms to third-party aliens have been or will be the result of valid application of the immigration laws. The preliminary injunction requested by plaintiffs would, at most, delay the consequences of enforcement. *Cf.* Order Denying Stay at 5, Dkt. No. 96 ("The harm flowing from removal now versus an unspecified point in the future is . . . abstract."). Finally, Mr. Ragbir's claim that he will be subject to unspecified "cruel actions," Pls.' Supp. Br. at 9 (internal quotation marks omitted), is too "remote [and] speculative" a claim of injury to support a preliminary injunction, *Freedom Holdings*, 408 F.3d at 114. Accordingly, Plaintiffs have not established any irreparable harms.

### D. The Balance of Equities and the Public Interest Are in the Government's Favor

The balance of equities and the public interest weigh decisively against plaintiffs' request for preliminary injunctive relief. Unlike many other requests for preliminary injunctive relief in the First Amendment context where the constitutionality of a statute or regulation may be in question, plaintiffs are asking this Court to enjoin the enforcement of unquestionably legal

---

[16] The sole case cited by plaintiffs on this point, *Step by Step, Inc. v. City of Ogdensburg*, 176 F. Supp. 3d 112 (N.D.N.Y. 2016), cuts against plaintiffs. In *Step by Step*, the court entered a preliminary injunction ordering municipal approval of a non-profit organization's project to build housing for people with disabilities. The court was clear that the non-profit's "monetary loss concerning operational expenses . . . dictates a remedy of monetary damages." *Step by Step*, 176 F. Supp. at 134. But relying on precedent that deprivation of addiction, relapse, and housing services can constitute irreparable injury, the court concluded that municipal opposition to the non-profit's new housing project warranted a preliminary injunction. *Id.* Plaintiffs have not established the immediate harms implicated by loss of addiction, relapse, or housing services or any similar immediate harms in the present case.

immigration laws. Such an injunction would result in extensions of "*ongoing violation*[s] of United States law" through delay and fragmentation of the enforcement of the immigration laws. *AADC*, 525 U.S. at 491. Congress amended the INA, including through 8 U.S.C. § 1252(g), with precisely such delay and fragmentation in mind. *AADC*, 525 U.S. at 487 ("[8 U.S.C. § 1252(g)] is specifically directed at the deconstruction, fragmentation, and hence prolongation of removal proceedings."). The public has a strong interest in enforcement of the laws, and "[t]he contention that a violation must be allowed to continue because it has been improperly selected is not powerfully appealing." *Id.*; *accord Nken*, 556 U.S. at 435–36.

Further, any harms to plaintiffs absent an injunction will be modest. The organizational plaintiffs' speech would remain robust. Mr. Ragbir has not identified any particular action that might be taken against him. And plaintiffs have not identified any concrete injuries to third-party aliens that would be prevented by plaintiffs' requested injunctive relief: the third-party aliens would still be subject to enforcement of the immigration laws.

Contrary to plaintiffs' argument, the amicus briefs filed on their behalf are not a measure of the public interest. *See* Pls.' Supp. Br. at 10. Plaintiffs can point to no legal authority that the public interest should be evaluated in terms of amicus submissions on a party's behalf. In addition, the Supreme Court has spoken directly to how to evaluate the public interest in the immigration context, *see, e.g.*, *Nken*, 556 U.S. at 436, and it does not weigh in plaintiffs' favor. Plaintiffs therefore have failed to make the necessary showing to warrant a preliminary injunction.

## CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiffs' complaint in its entirety and deny plaintiffs' motion for a preliminary injunction in its entirety.

Dated:   New York, New York
         July 3, 2018

                                        Respectfully submitted,

                                        GEOFFREY S. BERMAN
                                        United States Attorney for the
                                        Southern District of New York,
                                        Attorney for the United States

By:       /s/ _____
                                        Steven J. Kochevar
                                        Jeffrey S. Oestericher
                                        Brandon M. Waterman
                                        Assistant United States Attorneys
                                        86 Chambers Street, Third Floor
                                        New York, New York 10007
                                        Tel.    (212) 637-2741
                                        Fax    (212) 637-2786