UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAVIDATH LAWRENCE RAGBIR, *et al.*,<br><br>                Plaintiffs,<br><br>     - against -<br><br>RONALD D. VITIELLO, in his official capacity as Deputy Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement, *et al.*,<br><br>                Defendants. | **No. 18 Civ. 1159 (PKC)** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Attorney for the United States
86 Chambers Street, Third Floor
New York, New York 10007
Tel:   (212) 637-2715
*Attorney for Defendants*

Steven J. Kochevar
Brandon M. Waterman
*Assistant United States Attorneys*
    – Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ..........................................................................................................2

    I.     ENFORCEMENT OF THE IMMIGRATION LAWS ...........................................2

    II.    PLAINTIFFS ......................................................................................2

    III.   ICE'S ALLEGED PATTERN OF RETALIATORY ENFORCEMENT
         ACTIONS .........................................................................................4

    IV.   THE PRESENT LAWSUIT .....................................................................5

ARGUMENT ..............................................................................................................6

    I.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
        PLAINTIFFS' CLAIMS .........................................................................6

    A.    Legal Standards.................................................................................6

    B.    8 U.S.C. § 1252 Deprives the Court of Jurisdiction ...................................6

        1.     8 U.S.C. § 1252(g) ............................................................7

        2.     8 U.S.C. § 1252(b)(9) .........................................................8

        3.     8 U.S.C. § 1252(f)(1) ........................................................10

    C.    The Court Does Not Have Habeas Jurisdiction over Plaintiffs' Claims...............10

    D.    Plaintiffs' Claims Fail to Present a Justiciable Case or Controversy...................12

        1.     Plaintiffs' claims based on investigation, surveillance, and possible
             future action fail to present a justiciable case or controversy under
             the First Amendment..........................................................12

        2.     The organizational plaintiffs lack standing to bring claims on their
             own behalf..........................................................................14

        3.     The organizational plaintiffs lack associational standing to bring a
             claim on behalf of any non-party alien. ....................................16

        4.     No plaintiff has standing to challenge Operation Safe City. ....................18

II.     PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM UPON WHICH
        RELIEF CAN BE GRANTED ....................................................................................19

A.      Legal Standards..........................................................................................................19

B.      Plaintiffs Fail to State a Plausible Claim for Relief for Retaliation in
        Violation of the First Amendment .............................................................................19

        1.      *AADC* forecloses plaintiffs' claims...........................................................19

        2.      Plaintiffs have failed to state a plausible claim for relief on their
                own behalf........................................................................................................20

        3.      Plaintiffs have failed to state a plausible claim for relief on behalf
                of non-party aliens. .........................................................................................21

C.      Plaintiffs Fail to State a Plausible Claim for Relief for Content, Viewpoint,
        and Speaker Discrimination .......................................................................................24

CONCLUSION..............................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Aguilar v. ICE*,
510 F.3d 1 (1st Cir. 2007) ............................................................................................. 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................... 19

*Bano v. Union Carbide Corp.*,
361 F.3d 696 (2d Cir. 2004) .................................................................................. 17, 18

*Baur v. Veneman*,
352 F.3d 625 (2d Cir. 2003) ....................................................................................... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................... 19, 21

*Burnette v. Carothers*,
192 F.3d 52 (2d Cir. 1999) ......................................................................................... 19

*Carafas v. LaVallee*,
391 U.S. 234 (1968) ..................................................................................................... 11

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
868 F.3d 104 (2d Cir. 2017) ....................................................................................... 14

*Dorsett v. County of Nassau*,
732 F.3d 157 (2d Cir. 2013) ....................................................................................... 19

*Duamutef v. INS*,
386 F.3d 172 (2d Cir. 2004) ....................................................................................... 11

*Duran Ortega v. U.S. Dept' of Homeland Security*,
No. 1:18-cv-00508, 2018 WL 4211864 (W.D. La. Sept. 4, 2018) ..................... 5, 23

*Edwards v. I.N.S.*,
393 F.3d 299 (2d Cir. 2004) ....................................................................................... 25

*Farrell v. Burke*,
449 F.3d 470 (2d Cir. 2006) ....................................................................................... 16

*Global Network Commc'ns, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006) ............................................................................... 3, 4, 19

*Greenwich Citizens Comm., Inc. v. Cntys. of Warren and Washington Indus. Dev. Agency*,
77 F.3d 26 (2d Cir. 1996) ........................................................................................... 25

*USPS v. Gregory*,
534 U.S. 1 (2001) ........................................................................................................ 21

*Hunt v. Washington State Apple Advertising Comm'n*,
432 U.S. 333 (1977) ..................................................................................................... 17

*INS v. St. Cyr*,
533 U.S. 289 (2001) ..................................................................................................... 11

*Jennings v. Rodriguez*,
138 S. Ct. 830 (2018) .................................................................................................... 9

*John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*,
No. 11-cv-5453-CM, 2011 WL 5245192 (S.D.N.Y. Nov. 2, 2011) ....................... 24

*Laird v. Tatum*,
408 U.S. 1 (1972) ................................................................................................. passim

*Larson v. Domestic & Foreign Commerce Corp.*,
    337 U.S. 682 (1949) ............................................................................................ 24
*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................... 14, 16
*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) .................................................................................. 6
*McKithen v. Brown*,
    481 F.3d 89 (2d Cir. 2007) .................................................................................... 6
*Morrison v. Nat'l Australia Bank Ltd.*,
    547 F.3d 167 (2d Cir. 2008) .................................................................................. 6
*Munaf v. Geren*,
    553 U.S. 674 (2008) ..................................................................................... 11, 12
*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................................................... 10
*Ogunwomoju v. United States*,
    512 F.3d 69 (2d Cir. 2008) .................................................................................. 11
*Paz Nativi v. Shanahan*,
    No. 16-CV-8496 (JPO), 2017 WL 281751 (S.D.N.Y. Jan. 22, 2017) .................. 24
*Ragbir v. Homan*,
    No. 18-cv-1159 (PKC), 2018 WL 2338792 (S.D.N.Y. May 23, 2018) .................. 5
*Ragbir v. Sessions*,
    No. 18-cv-236 (KBF) (S.D.N.Y. Jan. 31, 2018) ................................................. 11
*Reno v. American-Arab Anti-Discrimination Committee*,
    525 U.S. 471 (1999) .................................................................................... passim
*Rent Stabilization Ass'n of NYC v. Dinkins*,
    5 F.3d 591 (2d Cir. 1993) .................................................................................... 18
*Robinson v. Overseas Military Sales Corp.*,
    21 F.3d 502 (2d Cir. 1994) .................................................................................... 6
*Ruiz-Martinez v. Mukasey*,
    516 F.3d 102 (2d Cir. 2008) ................................................................................ 11
*Simmonds v. INS*,
    326 F.3d 351 (2d Cir. 2003) ................................................................................ 11
*Smith v. Campbell*,
    782 F.3d 93 (2d Cir. 2015) .................................................................................. 19
*Sotos v. Sessions*,
    No. EP-18-CV-00071-DCG (W.D. Tex. July 27, 2018) ..................................... 24
*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................................... 18
*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ..................................................................................... 11, 12
*Woods v. Empire Health Choice, Inc.*,
    574 F.3d 92 (2d Cir. 2009) .................................................................................. 18

**Statutes**

6 U.S.C. § 251 ............................................................................................................ 25
8 U.S.C. § 1103 .......................................................................................................... 25

8 U.S.C. §§ 1221–1231 ....................................................................................... 10, 24
8 U.S.C. § 1252 ....................................................................................................... passim
28 U.S.C. § 2241 .............................................................................................. 10, 24

**Regulations**

8 C.F.R. § 236.1 ...................................................................................................... 24
8 C.F.R. § 1236.1 .................................................................................................... 24
8 C.F.R. § 1003.19 .................................................................................................. 24

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 6
Fed. R. Civ. P. 12(b)(6) ............................................................................................ 6

## PRELIMINARY STATEMENT

Plaintiffs cast their amended complaint as challenging a nationwide pattern of retaliatory immigration enforcement, but they have alleged only isolated incidents of valid enforcement actions against non-party aliens. The Court should dismiss plaintiffs' amended complaint because of jurisdictional defects and because the complaint fails to state a plausible claim for relief.

Each of the enforcement actions alleged by plaintiffs with any specificity falls within the jurisdiction-stripping provisions of 8 U.S.C. § 1252(g) and § 1252(b)(9)—which sweeps more broadly than § 1252(g). Plaintiffs' remaining allegations are so speculative and open-ended that they fail to establish a justiciable controversy. *See Laird v. Tatum*, 408 U.S. 1, 11, 13 (1972). As a result, the Court lacks subject matter jurisdiction over plaintiffs' amended complaint.

The organizational plaintiffs lack standing. They cannot bring claims on their own behalf because they have suffered no organizational injuries traceable to defendants. Instead, the increased expenditures alleged by the organizational plaintiffs appear to be a response to valid, non-retaliatory changes in enforcement priorities. The organizational plaintiffs cannot bring claims on behalf of any non-party because they lack associational or *qui tam* standing.

Even if plaintiffs were able to overcome these jurisdictional defects, their complaint fails to state a plausible claim upon which relief can be granted. With respect to claims brought on the organizational plaintiffs' own behalf, plaintiffs fail to plausibly allege that defendants took any action motivated by the organizational plaintiffs' speech, or that any such action caused plaintiffs cognizable injury. With respect to claims brought on behalf of non-party aliens, plaintiffs' sparse allegations fail to support an inference that defendants took any action motivated by an alien's speech, rather than defendants' duty to enforce the immigration laws.

The Court should dismiss plaintiffs' amended complaint.

## BACKGROUND

### I.  ENFORCEMENT OF THE IMMIGRATION LAWS

United States Immigration and Customs Enforcement ("ICE"), an agency within the U.S. Department of Homeland Security ("DHS"), conducts investigative and enforcement operations to implement the United States immigration laws.  Amended Declaration of Field Office Director Thomas R. Decker ("Decker Decl.") ¶ 6, Dkt. No. 58.  In addition to its headquarters in Washington, D.C., ICE operates through regional field offices throughout the country.  *Id.* Defendant Thomas Decker serves as the Field Office Director ("FOD") for ICE's New York Field Office.  *Id.* ¶ 1.

Pursuant to guidance issued by DHS, "[DHS] personnel may initiate enforcement actions against removable aliens encountered during the performance of their official duties and . . . have full authority to arrest or apprehend an alien whom an immigration officer has probable cause to believe is in violation of the immigration laws."  Decker Decl. Ex. A at 4.  "The exercise of prosecutorial discretion with regard to any alien who is subject to arrest, criminal prosecution, or removal in accordance with law shall be made on a case-by-case basis in consultation with the head of the field office component . . . that initiated or will initiate the enforcement action . . . ." *Id.*

### II.  PLAINTIFFS

Plaintiff Ravidath Lawrence Ragbir, a citizen of Trinidad and Tobago, became subject to a final order of removal in 2007, following convictions of wire fraud and conspiracy to commit wire fraud.  Declaration of Deputy Field Office Director Scott Mechkowski ("Mechkowski Decl.") ¶ 3, 5–8.  Dkt. No. 50.  On January 11, 2018, ICE detained Ragbir and attempted to enforce his final order of removal.  *Id.* ¶ 24.  On January 29, 2018, the Court granted Ragbir's petition for a writ of habeas corpus, and ICE released him from custody.  *Id.* ¶ 31.  Ragbir

remains subject to a final order of removal, which he does not challenge here.

In addition to Ragbir, five immigrants-rights organizations (the "organizational plaintiffs") are plaintiffs in the present suit.[1]  Plaintiff New Sanctuary Coalition of New York City (the "Coalition") was founded in 2007 and is a network of congregations, organizations, and individuals that works with New York City's major immigrant organizations to reform local and national immigration enforcement practices.  Amended Complaint ("Am. Compl.") ¶ 15, Dkt. No. 100.  Ragbir is the Executive Director of the Coalition, and the Coalition's sole full-time employee.  *Id.* ¶¶ 14, 154.  Jean Montrevil, who is not a party to this action and who was removed to Haiti on January 16, 2018, co-founded the Coalition.  *Id.* ¶ 63; Decker Decl. ¶ 35.

Plaintiff CASA de Maryland, Inc. ("CASA") was founded in 1979 and is a non-profit membership organization headquartered in Langley Park, Maryland.  *Id.* ¶ 16.  CASA has more than 90,000 members and offers social, health, job training, employment, and legal services to immigrant communities in Maryland, Virginia, Pennsylvania, and Washington, D.C.  *Id.*

Plaintiff National Immigration Project of the National Lawyers Guild ("NIPNLG") was founded as a freestanding organization in 1981 and is a non-profit membership organization headquartered in Boston, Massachusetts.  *Id.* ¶ 17.  It specializes in defending immigrants' rights and works independently and collaboratively with immigration advocacy organizations across the United States.  *Id.*

---

[1] Unless otherwise noted, the factual background here regarding the organizational plaintiffs is based upon the allegations in plaintiffs' complaint; plaintiffs' allegations must be accepted as true for purposes of the defendants' Rule 12(b)(6) motion to dismiss.  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006).

Plaintiff New York Immigration Coalition ("NYIC") is an umbrella organization for more than 200 groups in New York State. *Id.* ¶ 18. It represents the collective interests of New York's immigrant communities and organizations and devises solutions to advance them. *Id.*

Plaintiff Detention Watch Network ("DWN") was founded in 1997 and is a coalition of approximately 200 organizations and individuals headquartered in Washington, D.C. *Id.* ¶ 19. DWN focuses exclusively on immigration detention and deportation issues and advocates for an eventual end to immigration detention. *Id.*

## III. ICE'S ALLEGED PATTERN OF RETALIATORY ENFORCEMENT ACTIONS

Plaintiffs broadly allege that ICE has engaged in a nationwide pattern of selectively enforcing the immigration laws against immigrant-rights activists, including through investigations, surveillance, harassment, arrests, detention, and removal. Am. Compl. ¶¶ 28–29. However, apart from ICE's alleged surveillance of Ragbir and Montrevil shortly before executing or attempting to execute their final orders of removal, *id.* ¶¶ 65–66, a single alleged instance of an ICE vehicle appearing at a procession in support of Ragbir and a report that clergy spoke with ICE agents at a church service, *id.* ¶¶ 62, 162 n.42, and ICE enforcement operations allegedly targeting cities rather than individuals ("Operation Safe City"), *id.* ¶¶ 144–47, plaintiffs have not alleged any specific instances of investigations, surveillance, or harassment by ICE. Instead, the only specific instances of alleged retaliatory enforcement are the attempted removal of Ragbir, *id.* ¶¶ 32–86; the removal of Montrevil and five others who are not parties to this action, *id.* ¶¶ 63, 117–18, 133, the anticipated removal of three members of plaintiff CASA currently under orders of supervision, *id.* ¶¶ 133–43, the service of a Notice to Appear on Maru Mora Villalpando (a non-party), *id.* ¶¶ 106–11, and the detention of fifteen aliens (also non-parties), *id.* ¶¶ 88–105, 112–16, 119–27, 130. With respect to this latter group, six aliens are members of Migrant Justice, "a community based non-profit organization of Vermont dairy

farmworkers and their families," *id.* ¶ 90–95; four were arrested following discussion in the news media of their (or their partner's) immigration cases, *id.* ¶¶ 88–89, 112–14, 115–16, 130; two were detained following prior arrests, *id.* ¶¶ 121–27, *see Ortega v. U.S. Dept' of Homeland Security, et al.*, No. 1:18-cv-00508, 2018 WL 4211864, at *2 (W.D. La. Sept. 4, 2018) (dismissing Manuel Duran Ortega's habeas petition and explaining that he has been subject to an order of removal since 2006); two were detained after their asylum applications were denied, *id.* ¶¶ 96–105; and one was allegedly placed in solitary confinement—from which he has since been released—following a hunger strike, *id.* ¶ 119–20.  Apart from allegations of improper motive, plaintiffs have not alleged that any of defendants' actions were legally invalid.

## IV. THE PRESENT LAWSUIT

On February 9, 2018, Ragbir and the organizational plaintiffs filed the present action, asserting one claim of retaliation in violation of the First Amendment and one claim of content, viewpoint, and speaker discrimination in violation of the First Amendment.  Complaint, Dkt. No. 1.  On May 23, 2018, this Court concluded that it lacked jurisdiction over plaintiffs' challenges to the execution of Ragbir's final order of removal and, accordingly, dismissed plaintiffs' complaint to the extent it sought relief "declar[ing] unlawful or enjoin[ing] the execution of the final order of removal against plaintiff Ragbir."  Dkt. No. 83, *see Ragbir v. Homan*, No. 18-cv-1159 (PKC), 2018 WL 2338792, at *9 (S.D.N.Y. May 23, 2018) (the "May 23 Order").  On July 3, 2018, defendants moved to dismiss the remainder of plaintiffs' complaint.  Dkt. No. 97.  On July 19, 2018, plaintiffs filed an amended complaint, which included substantially the same allegations concerning Ragbir.  Dkt. No. 100.[2]

---

[2] On June 17, 2018, plaintiffs attempted to file their first amended complaint, *see* Dkt. No. 99 (displaying an ECF filing error), thereby departing from the scheduling order entered on defendants' motion to dismiss, *see* Dkt. No. 92.  On July 19, 2018, plaintiffs filed a second

## ARGUMENT

The Court should dismiss plaintiffs' amended complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a plausible claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

## I. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS

### A. Legal Standards

On a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff carries the burden of establishing that the Court has subject matter jurisdiction to adjudicate her complaint. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). A plaintiff must prove that subject matter jurisdiction exists by a preponderance of the evidence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "[I]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), [the Court] may refer to evidence outside the pleadings." *McKithen v. Brown*, 481 F.3d 89, 95–96 (2d Cir. 2007) (alterations and internal quotation marks omitted).

### B. 8 U.S.C. § 1252 Deprives the Court of Jurisdiction

Plaintiffs' amended complaint should be dismissed because the Court lacks subject matter jurisdiction over their claims. In 1996, Congress passed the Illegal Immigration Reform

---

amended complaint, *see* Dkt. No. 100, that omitted allegations from the first amended complaint concerning Ragbir's January 2018 arrest, namely, that he had been "handcuffed and taken into physical custody." *Compare* Dkt. No. 99, ¶ 73 *with* Dkt. No. 100, ¶ 73. Plaintiffs have not explained why they deviated from the Court's scheduling order or the discrepancy between their two amended complaints.

and Immigrant Responsibility Act ("IIRIRA").   "[M]any provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts . . . ."   *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 486 (1999) ("*AADC*") (emphasis omitted).   Several of these provisions—as well as provisions of the REAL ID Act of 2005, which refined IIRIRA's judicial review scheme—deprive this Court of jurisdiction over plaintiffs' claims.   Specifically, §1252(g) deprives the Court of jurisdiction to review claims arising from the three discrete actions identified in §1252(g); §1252(b)(9) deprives the Court of jurisdiction to review actions taken or proceedings brought to remove aliens from the United States; and § 1252(f)(1) deprives the Court of jurisdiction to grant injunctive relief, except with respect "to an individual alien."

1.   8 U.S.C. § 1252(g)

8 U.S.C. § 1252(g) provides that:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

As this Court held in its May 23 Order, "section 1252(g) reaches exactly what it says it reaches—'any cause or claim . . . arising from the decision or action . . . to [commence proceedings, adjudicate cases, or] execute removal orders.'"   May 23 Order at *6 (quoting 8 U.S.C. § 1252(g)).   Accordingly, § 1252(g) eliminates subject matter jurisdiction over plaintiffs' claims challenging the attempted execution of Ragbir's final order of removal; the execution of any non-party alien's final order of removal; any surveillance of Ragbir or Montrevil that arose from the execution or attempted execution of their final orders of removal; any actions taken to execute the final orders of removal of any non-party alien, including Duran Ortega and the three members of CASA identified in plaintiffs' complaint as currently subject to orders of supervision; the initiation of immigration proceedings against Maru Mora Villalpando; and the

arrests or detentions of other non-party aliens to the extent that these arrests and detentions constituted commencements of proceedings against the non-party aliens—most of the specific instances of ICE's alleged pattern of retaliatory enforcement.[3] If the Court lacks jurisdiction to review challenged actions on an individual basis, it also lacks jurisdiction to review an alleged pattern of those same actions collectively.   Accordingly, 8 U.S.C. § 1252(g), *AADC*, and the May 23 Order call for dismissal of the majority of plaintiffs' amended complaint.

2.   8 U.S.C. § 1252(b)(9)

Other provisions of 8 U.S.C. § 1252 also eliminate district court subject matter jurisdiction over plaintiffs' claims and channel review of plaintiffs' claims to the Court of Appeals.   Specifically, 8 U.S.C. § 1252(b)(9) provides that:

> With respect to review of a final order of removal under subsection (a)(1), . . . [j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction . . . to review such an order or such questions of law or fact.

Subsection 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from deportation proceedings]" to a court of appeals in the first instance.   *AADC*, 525 U.S. at 482–83.   Critically, "[§] 1252(b)(9) is a judicial channeling provision, not a claim-

---

[3] To the extent plaintiffs have alleged retaliatory enforcement actions that do not fall within the scope of § 1252(g), these residual allegations fail to state a plausible claim for relief or the Court lacks jurisdiction over claims based upon them.   Specifically, to the extent plaintiffs' claims are based on Operation Safe City, they fail for lack of standing, failure to state a claim, and under other subsections of § 1252.   *See infra*.   To the extent plaintiffs' claims are based on surveillance of Ragbir or the Coalition separate from Ragbir's attempted removal, they fail to state a claim, and the Court lacks jurisdiction under other subsections of § 1252 and under *Laird v. Tatum*, 408 U.S. 1, 11, 13 (1972).   *See infra*. To the extent plaintiffs' claims challenge the arrests, detentions, or conditions of detention of non-party aliens, separate from the commencement of proceedings against them or execution of final orders of removal, plaintiffs' claims fail for lack of standing, failure to exhaust, failure to state a claim, or under other subsections of § 1252.   *See infra*.

barring one." *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007).  8 U.S.C. § 1252(a)(2)(D) states

that "[n]othing . . . in any other provision of this chapter . . . shall be construed as precluding

review of constitutional claims or questions of law raised upon a petition for review filed with an

appropriate court of appeals in accordance with this section."

These provisions eliminate this Court's jurisdiction and channel plaintiffs' claims to the

Court of Appeals.  Plaintiffs' claims challenge "enforcement actions" taken by defendants, *e.g.*,

Am Compl. ¶¶ 87, 133, Prayer for Relief ¶ d, which, by definition, are "action[s] taken . . . to

remove an alien from the United States."  8 U.S.C. § 1252(b)(9); *see AADC*, 525 U.S. at 482–83

(listing "decisions or actions that may be part of the deportation process" that are beyond the

reach of § 1252(g) but stating that "§ 1252(b)(9) channels judicial review of *all* [such decisions

and actions] anyway"); *see Jennings v. Rodriguez*, 138 S. Ct. 830, 855 (2018) (Thomas, J.,

concurring in part and dissenting in part) ("The [*AADC*] Court even listed examples of the type

of claims that would be covered [by § 1252(b)(9)], including challenges to the decision 'to open

an investigation' and the decision 'to surveil the suspected [immigration-law] violator.'"

(quoting *AADC*, 525 U.S. at 482) (third alteration in original)).  Although the *Jennings* decision

does not resolve all questions regarding the reach of § 1252(b)(9), the plurality opinion and

concurrence indicate that five Justices would apply § 1252(b)(9) to plaintiffs' claims here.  *See*

*id.* at 839–41 (plurality opinion) (Alito, J.); *id.* at 854–59 (Thomas, J., concurring in part and

dissenting in part).  Specifically, in concluding that § 1252(b)(9) did not bar petitioners' claims

challenging their immigration detention without bond hearings, the *Jennings* plurality expressly

distinguished petitioners' detention-related claims from a challenge to the "decision to detain

them in the first place or seek removal."  *Id.* at 841.  This reasoning supports application of

§ 1252(b)(9)'s bar to plaintiffs' challenges to enforcement actions that by their nature move an alien along the path to removal, unlike the detention-related claims in *Jennings*.[4]  *See* Am. Compl. ¶¶ 88–143.

### 3.  8 U.S.C. § 1252(f)(1)

8 U.S.C. § 1252(f)(1) deprives this Court of jurisdiction to grant injunctive relief, except with respect to an individual alien.  Subsection 1252(f)(1) provides that:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, [8 U.S.C. §§ 1221–1231,] . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

Part IV of the relevant subchapter (8 U.S.C. §§ 1221-1231) is entitled "Inspection, Apprehension, Examination, Exclusion, and Removal" and generally provides the Executive with the authority to enforce the immigration laws.  "[Subsection 1252(f)(1)] prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1231, but . . . this ban does not extend to individual cases."  *AADC*, 525 U.S. at 481–82; *see Nken v. Holder*, 556 U.S. 418, 431 (2009).  By seeking to "restrain[] Defendants on a nationwide basis from targeting and/or selectively enforcing the immigration laws . . . through . . . any . . . adverse enforcement action," plaintiffs are asking this Court to enjoin the operation of §§ 1221-1231.  Am. Compl. at Prayer for Relief ¶ d.  But § 1252(f)(1) bars this Court from granting injunctive relief on a non-individual basis.

### C.  The Court Does Not Have Habeas Jurisdiction over Plaintiffs' Claims

---

[4] To the extent plaintiffs' claims challenge conditions of detention of non-party aliens, rather than the decision to detain them, plaintiffs' claims fail for lack of standing, failure to exhaust, or failure to state a claim.  *See infra*.

28 U.S.C. § 2241 does not provide jurisdiction—nor does the Suspension Clause guarantee jurisdiction—over plaintiffs' claims because no plaintiff is in custody.  *See* 28 U.S.C. § 2241(c)(1)-(4) (setting out in custody requirements); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).  As the Court has previously held, Ragbir is not presently detained nor is he suffering any "curtailment of liberty as to render [him] in custody."  *Simmonds v. INS*, 326 F.3d 351, 354 (2d Cir. 2003); *see* Order dated January 31, 2018, *Ragbir v. Sessions*, No. 18-cv-236 (KBF), ECF No. 50 (S.D.N.Y. Jan. 31, 2018) (explaining that the district court's habeas jurisdiction in Ragbir's prior case terminated upon his release from detention).[5]  Likewise, the organizational plaintiffs are not detained or suffering a curtailment of liberty, nor can they assert habeas jurisdiction on behalf of non-party aliens in this context.  *See Whitmore v. Arkansas*, 495 U.S. 149, 163–64 (1990) (discussing limitations on next friend standing in the habeas context).[6]

Separate from the custody requirement, the Suspension Clause does not guarantee jurisdiction over plaintiffs' claims because it protects core applications of the writ of habeas corpus.  *See INS v. St. Cyr*, 533 U.S. 289, 301 (2001).  "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that

---

[5] In *Simmonds*, the Second Circuit held that a final order of removal rendered an alien "in custody," but only for the purposes of challenging his or her final order of removal—not as a general matter.  *Duamutef v. INS*, 386 F.3d 172, 178 (2d Cir. 2004) ("*Simmonds* does not, in light of its facts, answer the specific custody question presented [by a case challenging the execution of a final order of removal, rather than the order itself] . . . ."); *see Ogunwomoju v. United States*, 512 F.3d 69, 70 (2d Cir. 2008) (holding that an alien subject to a final order of removal was not "in custody" for purposes of challenging the alien's state court conviction that resulted in the final order of removal).  Moreover, the REAL ID Act of 2005 rendered *Simmonds* and the cases on which it relied obsolete "by eliminating the availability of habeas corpus relief in the United States District Courts for aliens seeking to challenge orders of removal entered against them." *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 105 (2d Cir. 2008).  Accordingly, Ragbir is not in custody for purposes of the present case by virtue of his final order of removal.

[6] In addition, the organizational plaintiffs are not "person[s]" on whose behalf the writ of habeas corpus may be invoked.  *Carafas*, 391 U.S. at 238.

context that its protections have been strongest." *Id.*; *see Munaf v. Geren*, 553 U.S. 674, 693 (2008).   Here, plaintiffs' claims do not involve the legality of detention, nor do they seek release.[7]  Instead, they seek judicial oversight of the enforcement of the immigration laws.  The Suspension Clause does not protect this use of the writ of habeas corpus.  *See Munaf*, 553 U.S. at 693–94 ("the nature of the relief sought by the habeas petitioners suggests that habeas is not appropriate in these cases," where "what petitioners are really after is a court order requiring the United States to shelter them" from prosecution by foreign government).

### D.  Plaintiffs' Claims Fail to Present a Justiciable Case or Controversy

1. Plaintiffs' claims based on investigation, surveillance, and possible future action fail to present a justiciable case or controversy under the First Amendment.

The Court lacks Article III jurisdiction over plaintiffs' open-ended allegations of investigation, surveillance, and possible future actions by ICE because such allegations fail to present a justiciable case or controversy.  The Supreme Court dealt with similar claims in *Laird v. Tatum*, 408 U.S. 1 (1972), where plaintiffs challenged the United States Army's alleged surveillance of domestic civilian political activity in the late 1960s.  *Tatum*, 408 U.S. at 2–5. Separate from standing, the Supreme Court concluded that federal courts lack jurisdiction over claims seeking open-ended judicial review of Executive programs of surveillance and investigation on the basis of future possible harms.  *Id.* at 10, 13, 15.  In drawing a line between justiciable cases involving a First Amendment chilling effect and those cases that do not present a justiciable controversy, the Court observed that

> [i]n none of [the justiciable] cases . . . did the chilling effect arise merely from the

---

[7] To the extent plaintiffs' claims involve the legality of the detention of non-party aliens, they cannot assert habeas jurisdiction on behalf of non-party aliens in this context. *See Whitmore*, 495 U.S. at 163–64.

individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual.  Rather, in each of [the justiciable] cases, the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging.

*Id.* at 11.  The Court grounded its analysis in separation-of-powers principles, observing that a contrary result "would have the federal courts as virtually continuing monitors of the wisdom and soundness of Executive action; such a role is appropriate for the Congress."  *Id.* at 15.

*Tatum* bars plaintiffs' claims to the extent they are grounded in broad allegations of patterns of surveillance and investigation that plaintiffs have not connected with any concrete, reviewable enforcement action.  For example, the Amended Complaint speculates that certain non-party aliens against whom no enforcement has been taken nonetheless allegedly "face potential retaliation" for their activism, Am. Compl. ¶ 177, or have "decided that they can no longer share their experiences publicly as immigration activists," *id.* ¶ 131.  *Tatum* forecloses claims based on such allegations because "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Tatum*, 408 U.S. at 13–14.  *Tatum* also bars Ragbir's and the Coalition's claims of surveillance— which, apart from alleged surveillance related to ICE's attempt to enforce Ragbir's and Montreuil's final orders of removal, amount to a single alleged instance of an ICE vehicle appearing at a procession in support of Ragbir, Am. Compl. ¶ 62, and a clergyman's report that he spoke with ICE officers at a church service, *id.* ¶ 162 n.42.  Because this Court has dismissed Ragbir's claim to the extent it challenges enforcement of his final order of removal, Ragbir and the Coalition cannot identify any "specific present objective harm or . . . threat of specific future harm" as a basis for their surveillance claims.  *Tatum*, 408 U.S. at 14.

13

2. <u>The organizational plaintiffs lack standing to bring claims on their own behalf.</u>

The organizational plaintiffs do not have standing to bring any claims on their own behalf. Because the organizational plaintiffs are not challenging the enforcement of the immigration laws against themselves, they must establish organizational standing to bring their own claims. Accordingly, plaintiffs bear the burden of showing, for at least one of the organizational plaintiffs: "(i) an imminent injury in fact to itself as an organization (rather than to its members) that is distinct and palpable; (ii) that its injury is fairly traceable to [retaliatory enforcement actions]; and (iii) that a favorable decision would redress its injuries." *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (internal quotation marks omitted). Plaintiffs face a heightened burden to establish the latter two elements because they are challenging the enforcement of the immigration laws against third parties. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992).

Plaintiffs have failed to establish that their alleged injuries are fairly traceable to retaliatory enforcement actions. Plaintiffs broadly allege that they have expended resources opposing ICE's retaliatory enforcement of the immigration laws.[8] *See* Am. Compl. ¶¶ 154–98, But except for NIPNLG's defense of Ms. Villalpando, *id.* ¶¶ 170–71, the Coalition's efforts in support of Ragbir, *id.* ¶156, and CASA's defense of seven of its members—four of whom have already been removed—*id.* ¶¶ 178–81, plaintiffs have not traced their alleged increased expenditures to the enforcement actions that are the basis of their complaint, or any other specific

---

[8] The organizational plaintiffs have also broadly alleged "negative impact[s]" on their members and an increased demand for the organizational plaintiffs' existing services. *E.g.*, Am. Compl. ¶ 175. Such allegations fail to establish injury to the organizational plaintiffs "distinct" from their members, or a "perceptible impairment" of their operations. *Centro de la Comunidad Hispana de Locust Valley*, 868 F.3d at 109–10. Moreover, allegations of subjective chill do not amount to a legally cognizable injury. *See Tatum*, 408 U.S. at 11, 13.

enforcement action.[9]   *See, e.g.*, Am. Compl. ¶ 184 (describing CASA's expanded efforts "to challenge the Administration's unconstitutional actions against its members and the broader immigrant community").   Moreover, plaintiffs' submissions to the Court indicate that their alleged expenditures are the result of valid, non-retaliatory changes in ICE's enforcement priorities following the 2016 presidential election,[10] or to the extent plaintiffs cast these new enforcement priorities as retaliatory, they offer no basis for such speculation.   For example, plaintiff NIPNLG allocated resources to prepare an online manual that states, "[w]e believe this preparation and information is important now particularly under a Department of Justice headed by Jeff Sessions, a politician who is well known for his right-wing, anti-immigrant politics, as well as use of retaliation and prosecution against people who pose a political threat." Declaration of the National Immigration Project of the National Lawyers Guild in Support of Plaintiffs' Motion for Preliminary Injunction ¶ 6b, Dkt. No. 16; *see also, e.g.*, Declaration of Steve Choi for New York Immigration Coalition Plaintiffs' Motion for Preliminary Injunction, Decl. ¶ 21b ("Since the Trump Inauguration [i]n 2017, demand for [NYIC's Immigration Navigator] program has skyrocketed."), Dkt. No. 14; Declaration of George Escobar for CASA de Maryland, Inc. Plaintiffs' Motion for Preliminary Injunction ¶¶ 6, 9 ("Following the election of Donald Trump in November 2017 [sic], CASA's members and its allies have been racked

---

[9] The Coalition also alleges its operations were impaired by ICE's restriction of public access to ICE's check-in room at 26 Federal Plaza.  Am. Compl. ¶ 160.  To the extent such a restriction can be considered an impairment of the Coalition's activities, plaintiffs have not alleged it was the result of or constitutes a challenged enforcement action, nor have they sought relief addressing the restrictions.  *See* Am. Compl. Prayer for Relief.

[10] Such valid, non-retaliatory changes in enforcement priorities include the issuance of the February 20, 2017 Memorandum by then-Secretary of Homeland Security John Kelly regarding the "Enforcement of the Immigration Laws to Serve the National Interest," which rescinded, with certain exceptions, "existing conflicting directives, memoranda, or field guidance regarding the enforcement of our immigration laws and priorities for removal."  Decker Decl. Ex. A at 2.

with justifiable fear."), Dkt. No. 13.  It is NIPNLG's right to criticize Attorney General Sessions, but in order to establish that the resources expended on its increased activities are traceable to retaliatory enforcement actions, plaintiffs must make a more substantial showing.  *See Lujan*, 504 U.S. at 560–61 ("[T]here must be a causal connection between the injury and the conduct complained of[, and] . . . it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." (internal quotation marks and citations omitted)).

Plaintiffs have also failed to establish this Court could enter relief redressing their alleged injuries.  In particular, with respect to the enforcement actions plaintiffs alleged are traceable to their alleged injuries, they either have not sought relief redressing their injuries or have sought relief that falls within § 1252(g)'s bar.  In the former regard, four of the seven members CASA allegedly defended have already been removed and plaintiffs have not sought their return; in the latter regard, the actions taken against the other three CASA members, as well as Ragbir, apparently arise from execution of final orders of removal, and plaintiffs challenge the commencement of proceedings against Ms. Villalpando.  *See* 8 U.S.C. § 1252(g); *supra*.  More broadly, because plaintiffs have not traced their expenditures to specific enforcement actions, they also have not established how relief from this Court could redress their injuries, particularly in light of their statements indicating that their expenditures are the result of valid, non-retaliatory changes in enforcement priorities.  *See supra*.

3.  The organizational plaintiffs lack associational standing to bring a claim on behalf of any non-party alien.

The organizational plaintiffs lack associational standing to bring claims on behalf of any alien.  "Federal courts as a general rule allow litigants to assert only their own legal rights and interests, and not the legal rights and interests of third parties."  *Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006).  Associational standing is a "narrow exception" to the general rule against

third-party standing.  *Bano v. Union Carbide Corp.*, 361 F.3d 696, 715 (2d Cir. 2004).   To

establish standing, an association attempting to sue on behalf of its members must show that:

> (a) its members would otherwise have standing to sue in their own right; (b) the
> interests it seeks to protect are germane to the organization's purpose; and
> (c) neither the claim asserted nor the relief requested requires the participation of
> individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *accord Bano*,

361 F.3d at 713.  The organizational plaintiffs fail the first and third prongs of the *Hunt* test.

Applying *Hunt*'s first prong, the organizational plaintiffs have failed to establish that any

of their members whose claims are not barred by § 1252(g) would have standing to sue in his or

her own right.   To establish standing, a party must "allege, and ultimately prove, that he has

suffered an injury-in-fact that is fairly traceable to the challenged action of the defendant, and

which is likely to be redressed by the requested relief."  *Baur v. Veneman*, 352 F.3d 625, 632 (2d

Cir. 2003).  Plaintiffs have identified only four members in the United States whose claims might

not be barred by § 1252(g): Alejandra Pablos, Am. Compl. ¶ 121, Amy Gottlieb, *id.* ¶ 173,

Missael Garcia, *id.* ¶ 177, and Monica Camacho, *id.*[11]   With respect to Ms. Pablos, plaintiffs

have alleged only that she was detained—but then released.  *See id.* ¶¶ 121–22.  Any injury

arising from her Ms. Pablos's prior detention will not be redressed by plaintiffs' requested

declaratory or injunctive relief.  Ms. Gottlieb is a United States citizen, and plaintiffs have not

alleged she has suffered any concrete injury.  *Id.* ¶¶ 46, 173.  And with respect to Garcia and

Camacho, plaintiffs allege only that they "face potential retaliation for continuing to defend their

families and communities," which is too vague and speculative an allegation to establish any of

the elements of standing.  *Id.* ¶ 177.  The claims of the remaining members of plaintiffs are

---

[11] With respect to the organizational plaintiffs' members who have already been removed from
the United States, plaintiffs have failed to request relief that would redress their alleged injuries.

unambiguously barred by the plain text of § 1252(g): Ragbir, Karen Julissa Fiallos Ramos, Florinda Faviola Lorenzo, and Roxana Elizabeth Orellana Santos all apparently challenge decisions or actions to execute removal orders, *see* Am. Compl. ¶¶ 14, 134–43, while Mora-Villalpando challenges the commencement of immigration proceedings against her, *see id.* ¶ 108.

Even were the organizational plaintiffs to establish that some members had standing, the organizational plaintiffs also fail the third prong of *Hunt*'s associational standing test, because "'the fact and extent' of the injury that gives rise to [their] claims for injunctive relief 'would require individualized proof.'" *Bano*, 361 F.3d at 714 (quoting *Warth v. Seldin*, 422 U.S. 490, 515–16 (1975)); *accord Rent Stabilization Ass'n of NYC v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993). Here, any inquiry into whether the government has selectively enforced the immigration laws against an alien on the basis of his or her activism will necessarily require an investigation into the alien's activities and the alleged enforcement actions taken against him or her. In light of the diverse circumstances alleged in the amended complaint, it will not be possible to adjudicate any claim of selective enforcement without individualized proof.

### 4.   No plaintiff has standing to challenge Operation Safe City.

Plaintiffs lack standing to challenge Operation Safe City. Operation Safe City allegedly targeted communities where political action had been taken to limit local or state government's cooperation with federal immigration enforcement. Am. Compl. ¶¶ 144–47. No plaintiff nor any member of an organizational plaintiff was allegedly harmed or affected by Operation Safe City. In addition, plaintiffs cannot assert the rights of any governmental body. Such an arrangement would require *qui tam* standing, but "[t]here is . . . no common law right to bring a *qui tam* action; rather, a particular statute must authorize a private party to do so." *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 98 (2d Cir. 2009). No statute authorizes plaintiffs to bring claims on behalf of the communities allegedly targeted in Operation Safe City.

In light of the foregoing, the Court should dismiss plaintiffs' complaint in its entirety for lack of jurisdiction.

## II.  PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.  Legal Standards

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court assumes the truth of all facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff.  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).  To survive, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  For a claim to be plausible, a complainant's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

### B.  Plaintiffs Fail to State a Plausible Claim for Relief for Retaliation in Violation of the First Amendment

Plaintiffs' claim of First Amendment retaliation should be dismissed even if plaintiffs could overcome jurisdictional impediments.  "To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) the defendant's actions caused him some injury."  *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (internal quotation marks omitted) (alteration in original) (quoting *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013)).  Plaintiffs have failed to adequately plead the second or third elements of any First Amendment retaliation claim.

#### 1.  *AADC* forecloses plaintiffs' claims.

Plaintiffs face a threshold barrier before the adequacy of their pleadings under the First Amendment retaliation standard need even be considered: in *AADC*, the Supreme Court held that "[a]s a general matter . . . an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *AADC*, 525 U.S. at 488.  The Court grounded this holding in separation-of-powers principles, observing that selective prosecution claims "invade a special province of the Executive—its prosecutorial discretion." *Id.* at 489. "Judicial supervision in this area . . . entails systemic costs of particular concern . . . [which] are greatly magnified in the deportation context." *Id.* at 490 (internal quotation marks and citation omitted).  In the present case, plaintiffs have not alleged that any of the enforcement actions they challenge were not sound applications of the immigration laws, apart from retaliatory taint.  As such, the Constitution does not provide a basis for plaintiffs' claims.  *AADC*, 525 U.S. at 488.

2.  Plaintiffs have failed to state a plausible claim for relief on their own behalf.

Ragbir has failed to state a plausible claim for First Amendment retaliation.  Ragbir has not alleged that he has suffered any legally cognizable injury caused by any action of defendants. This Court held that "Mr. Ragbir's asserted injury flows from [his] final order of removal," not from any action by defendants to enforce it.  May 23 Order at *7.  Ragbir's residual claims of surveillance are insufficient to support a First Amendment claim.  *Tatum*, 408 U.S. at 11, 13.

The organizational plaintiffs have also failed to state a plausible claim for relief on their own behalf.  With respect to the second element of a retaliation claim, plaintiffs NYIC, DWN, and NIPNLG have failed to allege that their speech motivated defendants to take any particular action—or indeed that defendants were aware of their speech at all.  *See generally* Am. Compl. Although ICE was allegedly aware of the Coalition's speech, *id.* ¶¶ 34–35, plaintiffs have not alleged that the Coalition's speech—as opposed to Ragbir's or his supporters'—motivated

defendants to take any enforcement action.   Although plaintiffs have alleged that ICE took

actions motivated by CASA's speech, their allegations fail to "nudge[] their claims across the

line from conceivable to plausible."   *Twombly*, 550 U.S. at 570.   Specifically, the sole basis on

which to conclude that CASA's speech motivated defendants is an ICE officer's alleged mention

of CASA's activism at Fiallos Ramos's last check-in.   Am. Compl. ¶ 136.   This is an insufficient

basis on which to infer motivation or substantial causation.

      With respect to the third element of a retaliation claim, the organizational plaintiffs have

failed to allege that they have suffered any injuries caused by action taken in response to their

speech.   As explained *supra*, the organizational plaintiffs have not traced their alleged injuries to

any specific actions that this Court has jurisdiction to review—let alone actions that they have

also alleged were caused by their own speech.   *See supra* at pp. 14–16.

          3.   <u>Plaintiffs have failed to state a plausible claim for relief on behalf of</u>
              <u>non-party aliens.</u>

      Assuming *arguendo* that plaintiffs could assert selective enforcement claims on behalf of

non-party aliens, which they cannot, plaintiffs have failed to allege a basis for a plausible

inference that each challenged enforcement action was motivated or substantially caused by an

alien's speech.   As noted above, plaintiffs have not alleged that any of the challenged

enforcement actions were not legally valid, apart from retaliatory taint.   Because "a presumption

of regularity attaches to the actions of Government agencies," plaintiffs must allege some

additional basis beyond a valid enforcement action itself to support an inference that the

enforcement action would not have been taken simply as a result of defendants performing their

constitutional role of enforcing the immigration laws.   *USPS v. Gregory*, 534 U.S. 1, 10 (2001).

Plaintiffs have failed to allege any such basis here.

      With respect to some non-party aliens, plaintiffs rely on the alleged or implied use of an

alien's public statements as a basis for an inference of retaliatory motive. *See* Am. Compl. ¶¶ 88–89, 130 (alleging Daniela Vargas and "Jose" detained following their appearances at press conferences), ¶ 108, 110 (quoting I-213 form stating that Villalpando "has become a public figure" and Villalpando stating that "[t]here's no way for them to know about me except for the work that I do"), ¶ 112–14 (alleging an ICE agent stated that he found Baltazar Aburto Gutierrez because of a newspaper article), ¶¶ 115–16 (alleging that ICE stated that Eliseo Jurado came to the agency's attention through an investigation into his wife, whose case has been widely publicized). However, without more, any such use is not a basis for a plausible inference of retaliation. If an alien states in a public forum that he or she is subject to removal or otherwise publicizes his or her case, ICE may use the alien's public statements or related media coverage to take a valid enforcement action against the alien.

With respect to a second category of non-party aliens identified in the complaint, plaintiffs rely on the temporal proximity between an alien's public statements—related or unrelated to ICE—and enforcement actions to support an inference of retaliation. *See* Am. Compl. ¶¶ 88–89, 130 (alleging Daniela Vargas and "Jose" detained immediately following her appearance at press conferences); *id.* ¶ 91 (alleging detention of Jose Victor Garcia Diaz the day after a meeting dedicated "to build[ing] a unified movement for respect for human rights in food supply chains"), *id.* ¶¶ 92–93 (alleging arrest of Jose Enrique Balcazar and Zully Victoria Palacios Rodriguez the day after the "announce[ment of] an escalation of [the] Milk with Dignity campaign with respect to Ben & Jerry's"), *id.* ¶ 94 (alleging arrest of Esau Peche and Yesenia Hernandez after they participated in a march for better work conditions apparently directed at Ben & Jerry's), *id.* ¶¶ 96–105 (alleging Emilio Gutiérrez Soto criticized U.S. asylum policy— after his asylum application was denied—in the months before he and his son were detained); *id.*

¶ 117–18 (alleging removal of Amer Othman Adi after he began a hunger strike).  However, mere temporal proximity between an alien's speech—particularly when that speech concerns matters unrelated to ICE, such as working conditions in the dairy industry—does not, by itself, support a plausible inference of retaliatory motivation.  Otherwise, ICE could be sued every time it took an enforcement action against an alien participating in any public speech.[12]

With respect to the remaining non-party aliens in the Amended Complaint (except for two),[13] plaintiffs have failed to allege any basis on which to infer retaliatory motive beyond a bare allegation of an alien's activism or journalism work.  *See* Am. Compl. ¶¶ 121–22 (alleging activist Alejandra Pablos's detention—now concluded—"appears to [have been] related" to a prior arrest); *id.* ¶¶ 123–27 (alleging Duran Ortega was detained and a member of the press); *id.* ¶¶ 134–39 (alleging that plaintiffs "believe" that ICE seeks to enforce Fiallos Ramos's and Lorenzo's final orders of removal because of their activism); *see also Duran Ortega*, No. 1:18-CV-00508, 2018 WL 4211864, at *2 (rejecting essentially identical First Amendment claim)

---

[12] No plausible inference of retaliation against specific non-party aliens or the organizational plaintiffs can be drawn from plaintiffs' allegations concerning Operation Safe City.  *See* Am. Compl. ¶¶ 144–47.  At most, an inference could be drawn that Operation Safe City was motivated by state and local governments' actions to prevent cooperation with federal immigration authorities.  But plaintiffs lack standing to bring any claims on behalf of any government. *See supra.*

[13] With respect to one of these two remaining aliens, Orellana Santos, plaintiffs' basis for an inference of retaliation amounts to a reference by an ICE officer to a civil rights lawsuit Orellana Santos filed in November 2009.  *See Santos v. Frederick Cnty. Bd. of Cmm'rs*, 725 F.3d 451, 458 (4th Cir. 2013); Am. Compl. ¶¶ 140–43.  In light of the approximately nine-year gap between the filing of the lawsuit and the August 13, 2018 date by which ICE allegedly requested Ms. Orellana Santos obtain a U-visa, this is an insufficient basis on which to infer retaliatory motive. *Id.*  The final remaining alien, Chaves Flores, was allegedly placed in solitary confinement after he led approximately 120 detainees in a hunger strike. *Id.* ¶¶ 119–20.  Plaintiffs offer no basis on which to conclude that his placement in solitary confinement, or his subsequent transfer to a different facility, was retaliatory as opposed to necessary for the safety and security of Chavez Flores and other individuals detained in the facilities in which he was confined. *See id.*

("ICE had probable cause to arrest and detain [Duran Ortega] at any appropriate time."). An alien's mere status as an activist or journalist is an insufficient basis on which to infer retaliation.

For some non-party aliens, plaintiffs have also failed to adequately allege injury because the alleged enforcement action has already been completed and cannot be remedied by plaintiffs' requests for declaratory, injunctive, or habeas relief. Specifically, to the extent that plaintiffs' claims are based on the alleged detention of an alien or the conditions of that detention, they have not sought relief that would provide a remedy for any such injury now that the detention or the conditions thereof have terminated. *See* 28 U.S.C. § 2241(c); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 n.11 (1949) (explaining that exception to sovereign immunity does not extend beyond "ordering cessation of the conduct complained of"); *John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 11-cv-5453-CM, 2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011) ("[D]eclaratory relief is intended to operate prospectively."). Accordingly, plaintiffs have failed to adequately allege injury with respect to Vargas, the Sotos, and Flores, who are allegedly, or in fact, no longer detained or subject to the conduct complained of. *See* Order Dismissing Case, *Soto et al. v. Sessions et al.*, No. EP-18-CV-00071-DCG, ECF No. 59 (W.D. Tex. July 27, 2018) (dismissing the Sotos' habeas petition as moot because of their release); Am. Compl. ¶ 89 n.20, 119–20.[14]

### C.  Plaintiffs Fail to State a Plausible Claim for Relief for Content, Viewpoint, and Speaker Discrimination

---

[14] With respect to one non-party alien, Zully Victoria Palacios Rodriguez, plaintiffs allege that ICE deviated from its usual practices by detaining her without bond. Am. Compl. ¶ 93. To the extent that any alien's detention without bond forms the basis of plaintiffs' remaining claims, the Court should require exhaustion before the BIA before hearing such claims in federal court. *See Paz Nativi v. Shanahan*, No. 16-CV-8496 (JPO), 2017 WL 281751, at *1, *2 (S.D.N.Y. Jan. 22, 2017) (collecting cases). An alien who is denied bond may request a custody redetermination hearing conducted by an immigration judge at any time before a final order of removal is issued. 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1), 1003.19(e).

Although plaintiffs style their claims as two separate counts of retaliation and viewpoint discrimination, both counts challenge defendants' alleged retaliatory enforcement of the immigration laws against Ragbir and non-party aliens on the basis of their activism. Plaintiffs' second count thus is duplicative of their first count and fails because the immigration laws at issue, by their plain terms, do not regulate expressive conduct. Every case cited by plaintiffs in support of their second count concerns a challenge to statutes or rules that regulate the primary conduct of speech. *See* Am. Compl. ¶¶ 206–10. By contrast, the immigration laws do not regulate the primary conduct of non-fraudulent speech and instead determine whether an alien has the right to remain in the United States. To the extent the immigration laws can be applied in a discriminatory manner on First Amendment grounds, such selective enforcement could only amount to a retaliation claim. *See Greenwich Citizens Comm., Inc. v. Cntys. of Warren and Washington Indus. Dev. Agency*, 77 F.3d 26, 31–32 (2d Cir. 1996) (discussing "crucial distinction between retaliatory First Amendment claims and affirmative First Amendment claims"). And, as discussed *supra*, plaintiffs' retaliation claims are deficient.[15]

## CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiffs' entire amended complaint.

---

[15] The Court should dismiss plaintiffs' claims against Attorney General Sessions and the United States Department of Justice ("DOJ") because plaintiffs' allegations do not pertain to the Attorney General's role in the immigration system or the functions of the Department of Justice. As plaintiffs allege, the Attorney General oversees the Executive Office for Immigration Review ("EOIR"). Am. Compl. ¶ 26; *see* 8 U.S.C. § 1103(g); *see generally* 6 U.S.C. § 251 (transferring immigration enforcement functions of the Commissioner of Immigration and Naturalization to the Secretary of Homeland Security). However, "[EOIR] . . . is responsible for the administrative adjudication of immigration cases," not the enforcement of the immigration laws. *Edwards v. I.N.S.*, 393 F.3d 299, 302 n.1 (2d Cir. 2004). Plaintiffs are challenging enforcement actions taken by ICE—which is part of DHS, not DOJ—and plaintiffs' complaint contains no allegations that actions taken by EOIR, the Attorney General, or the Department of Justice were unconstitutional. Accordingly, plaintiffs' claims against the Attorney General and DOJ should be dismissed for failure to state a plausible claim upon which relief can be granted.

Dated:   New York, New York
         September 14, 2018

                                     Respectfully submitted,

                                     GEOFFREY S. BERMAN
                                     United States Attorney for the
                                     Southern District of New York,
                                     Attorney for the United States

By:      /s/ _____
                                       Steven J. Kochevar
                                       Brandon M. Waterman
                                       Assistant United States Attorneys
                                       86 Chambers Street, Third Floor
                                     New York, New York 10007
                                     Tel.    (212) 637-2715
                                     Fax    (212) 637-2717