J7UVRAGC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

RAVIDATH LAWRENCE RAGBIR,
et al,

                Plaintiffs,

        v.                              18 CV 1159 (PKC)

THOMAS D. HOMAN, et al,

                Defendants.             CONFERENCE
------------------------------x
                                        New York, N.Y.
                                        July 30, 2019
                                        3:07 p.m.
Before:

                    HON. P. KEVIN CASTEL,

                                        District Judge

                        APPEARANCES

ARNOLD & PORTER
     Attorneys for Plaintiffs
BY:  ROBERT S. JONES
     ADA V. ANON
     -AND-
WASHINGTON SQUARE LEGAL SERVICES, INC.
BY:  ALINA DAS

UNITED STATES ATTORNEY'S OFFICE, SDNY
     Attorneys for Defendants
BY:  STEVEN J. KOCHEVAR
     BRANDON M. WATERMAN
```

|    |    |
|---|---|
| 1  | (Case called) |
| 2  | THE COURT:  For the plaintiff, please. |
| 3  | MR. JONES:  Yes.  Stanton Jones from Arnold & Porter, |
| 4  | for the plaintiffs. |
| 5  | And I'm joined today by my -- |
| 6  | THE COURT:  I'm sure they can introduce themselves. |
| 7  | MR. JONES:  Sure. |
| 8  | MS. ANON:  Ada Anon of Arnold & Porter, for the |
| 9  | plaintiffs. |
| 10 | THE COURT:  All right. |
| 11 | MS. DAS:  Alina Das, Washington Square Legal Services, |
| 12 | NYU Immigrant Rights. |
| 13 | THE COURT:  All right.  Good afternoon. |
| 14 | And for the defendants? |
| 15 | MR. KOCHEVAR:  Good afternoon, your Honor. |
| 16 | Steven Kochevar, for defendants. |
| 17 | MR. WATERMAN:  And Assistant United States Attorney |
| 18 | Brandon Waterman, for the defendants. |
| 19 | THE COURT:  All right.  Afternoon to you both. |
| 20 | So the mandate has not issued from the Court of |
| 21 | Appeals; and, therefore, I do not have jurisdiction to proceed |
| 22 | with any action on the preliminary injunction issue brought by |
| 23 | Mr. Ragbir. |
| 24 | Now, that's the position asserted by the plaintiffs. |
| 25 | Do the defendants concur in that? |

1            MR. KOCHEVAR:  Yes, your Honor.

2            THE COURT:  All right.

3            And let's talk about hypothetically if a petition for

4    rehearing is not filed or it's filed and it's denied, what does

5    the plaintiff believe are the next steps in this case?

6            MR. JONES:  Sure, your Honor.

7            So, I guess, in part the immediate next step would

8    remain, for at least a short period of time, in the hands of

9    the defendant.  If rehearing was denied, there's a chance that

10   the defendants could seek a stay of the mandate pending a

11   possible petition for a *writ of certiorari*, and we don't know

12   whether they will do that.

13           But if we can just skip ahead to what I think is the

14   thrust of your question, which is when the mandate eventually

15   does issue --

16           THE COURT:  Thank you.

17           MR. JONES:  -- and the case comes back to this Court.

18           There are, in our view, two immediate next steps.  The

19   first is that in the Second Circuit's decision from April, the

20   Second Circuit stated that its own stay of Mr. Ragbir's removal

21   which is in place today will remain in place until the mandate

22   issues.

23           The Second Circuit further directed that as soon as

24   the mandate issues, this Court must enter its own stay of

25   removal at least pending a decision on whether to grant a

1   preliminary injunction and potentially through the final
2   resolution of this case.  And so that would be, in our view,
3   the very immediate next step when the mandate issues.
4           THE COURT:  Right.
5           Now talk to me about the preliminary injunction
6   hearing.  Whose burden would it be to show what?
7           MR. JONES:  So on the preliminary injunction, the
8   plaintiffs bear the burden to establish the existence of the
9   various factors:  Likelihood of success on the merits,
10  irreparable harm, and the balance and public interest.
11          I believe that the Second Circuit's decision itself
12  resolves much of that.  The Second Circuit ruled that we had
13  stated First Amendment claims on behalf of Ragbir that were not
14  only viable and plausible, but, in fact, strong.  And that was
15  a word that the Second Circuit used on a couple of occasions in
16  its decision.  And we believe that, read as a whole, the Second
17  Circuit's decision effectively says that we've established a
18  sufficient likelihood of success on the merits to establish a
19  preliminary injunction.
20          I don't know what the defendants' position on that
21  will be.  It strikes me that it is at least possible that we
22  could have agreement on that at least for purposes of a
23  preliminary injunction.
24          We've briefed the other factors.  Irreparable harm, we
25  believe, is very clear, both from the fact that the deprivation

1   of a constitutional right, even for a moment's time, is per se
2   irreparable harm; and also, of course, just as a practical
3   matter, the irreparable harm that a person suffers from being
4   deported from the country that they've lived in for over a
5   quarter of a century and where their home and family are based
6   is also irreparable.
7       In a case against the government, the balance of
8   equities and the public interest merge into a single factor.
9   And again, we believe that there's no public interest either in
10  violating a person's constitutional rights or in deporting a
11  person in retaliation for a protected political speech.
12      So we would ask that -- we will be asking for a full
13  preliminary injunction; whether that's, sort of, immediately
14  when the mandate issues or after further briefing, I don't know
15  what the defendants' position will be on that.
16      Other than a preliminary injunction, the other issue
17  that we believe would come next would be the commencement of
18  discovery with respect to the claims involving Mr. Ragbir
19  specifically.  And if it's okay, if we could toggle back and
20  forth, Ms. Anon was going to address some of the issues that
21  were raised by the defendants with respect to the question of
22  discovery.
23          THE COURT:  Before we get to that --
24          MR. JONES:  Sure.
25          THE COURT:  -- isn't there an enormous issue left open

1  by the circuit on the question of whether any harm or taint has
2  been dissipated by the passage of time?
3           MR. JONES:  So the dissent in the Second Circuit --
4           THE COURT:  Said that should be done as a matter of
5  law and the majority disagreed.
6           MR. JONES:  Correct.
7           THE COURT:  I got that.
8           But it's a question of fact, no?
9           MR. JONES:  No, I don't believe so.
10          I don't think that the majority's opinion in the
11 Second Circuit says anything to suggest that the taint from the
12 unlawful retaliation would simply dissipate by virtue of the
13 passage of time.  My recollection is that that's precisely what
14 the dissent said.
15          THE COURT:  Let's take a look at the majority.
16          MR. JONES:  Sure.
17          THE COURT:  So your view is that the taint cannot ever
18 be dissipated and Mr. Ragbir can never be deported in his life?
19 That's your position?
20          MR. JONES:  No, that's not our position.
21          Our position is that -- in a couple of steps, our
22 position is that the government cannot deport Mr. Ragbir in
23 retaliation for protected speech; that that is what has
24 happened with respect to the current attempt to deport him.
25          THE COURT:  How do you define the current attempt?

1  MR. JONES: So in January 2018, the government revoked
2  Mr. Ragbir's administrative stay, as well as his order of
3  supervision and, suddenly and without warning, detained him at
4  a regularly scheduled check-in, flew him to Florida in an
5  attempt to remove him immediately.
6  Their pursuit of his deportation is the one that began
7  that day. The only reason that it was not effectuated then and
8  hasn't been effectuated until now is because of this litigation
9  and the stay that's entered.
10  THE COURT: What would be a noncurrent deportation?
11  Are you suggesting that a deportation based upon the original
12  felony conviction and removal proceedings that were brought
13  thereafter that resulted in a petition to review in the
14  circuit, and then a proceeding back before immigration
15  authorities, and then back to the circuit cannot form the basis
16  of removal for Mr. Ragbir?
17  MR. JONES: It could, unless they are doing it based
18  on a motive and intent to retaliate against Mr. Ragbir on the
19  basis of his core protected political speech. We have never
20  challenged in this lawsuit --
21  THE COURT: So who gets to say whether it is or it
22  isn't, the plaintiff?
23  MR. JONES: So we think that -- first of all, I think
24  some of these questions go not so much to liability, but to a
25  question of what would be the appropriate remedy, right.

1    And so what we've sought currently, just as a basic
2 matter of liability, is that the government has attempted/is
3 attempting to remove Mr. Ragbir today in retaliation for his
4 protected speech.  That's what the Second Circuit said we had
5 presented strong evidence of.
6    If they make a new decision, if they go through a new
7 process, if there's a new decision-maker, if they present
8 evidence to this Court that there was some alternative
9 decision-making process and decision that was had that was
10 removed and separated from the taint of the unlawful
11 retaliation that they've already undertaken, I think that would
12 potentially be different.  But, of course, none of that has
13 happened.
14    THE COURT:  Well, Mr. Jones, the problem I have with
15 your presentation is it overlooks part 4 of the Court's
16 opinion, the summary and considerations on remand, in which the
17 Court said, in part:  We know that while Ragbir states a claim
18 in his complaint and attachments, it does not necessarily
19 follow that even if he proves that officials sought to remove
20 him as a result of his First Amendment speech, he may never be
21 removed.  But at least for the near future, the taint of the
22 unconstitutional conduct could preclude removal.  That "near
23 future" could be the end of a typical two-year stay extension
24 that Ragbir would plausibly have otherwise received through
25 January 2020 or some other period.  We leave that determination

to the district court on remand.  However, accepting as true the record currently before us, it is plausible that, absent the government's alleged retaliation in January 2018, Ragbir would not yet have been deported and likely not until at least January 2020.

I find nothing in the circuit's opinion that speaks of your theory that he cannot be deported based on what you characterize as the current effort; that there must be some new intervening decision or act or maybe another felony conviction or some other hearing before immigration authorities before he would be able to be deported or removed.  I don't get that from the language I just read from the circuit's opinion, the majority opinion.

MR. JONES:  So none of those questions were before the Second Circuit at all.  This Court dismissed all of these claims on the basis of a lack of subject matter jurisdiction, and that was the question that was put before the Court.

There's some language in here at the end --

THE COURT:  So are you suggesting the language I wrote is *dictum* from the circuit?

MR. JONES:  It does not form the holding that this Court has subject matter jurisdiction.  I don't know if I would characterize it as *dictum*.  It's described here.  I would just use the Second Circuit's exact language:  It is a summary and considerations on remand, and it includes this language that,

1    based on the retaliation -- or, rather, absent the retaliation,
2    if the retaliation had not happened, one possible thing that
3    could have happened instead is that Mr. Ragbir would have been
4    given a further two-year administrative stay of removal until
5    January 2020.
6         The Second Circuit's decision, as you just read it, it
7    doesn't say that that's definitely what would have happened; in
8    fact, it says it could be through January 2020 or some other
9    period.  And then it goes on to say that absent the alleged
10   retaliation, Ragbir would not yet have been deported and likely
11   not until at least January 2020.  So I don't think --
12        THE COURT:  Couldn't agree more with you, Mr. Jones.
13   But that doesn't address the issue I raised with you.
14        I'm interested in your theory, which appears to be at
15   odds with what the Second Circuit has laid out in terms of the
16   considerations on remand, your theory that no taint can ever be
17   dissipated from the current effort to remove Mr. Ragbir such
18   that unless there is an intervening event such as change of
19   personnel or some other proceeding, then he cannot be removed.
20   I don't read the circuit's opinion the way you do.
21        MR. JONES:  Okay.  So maybe here's another way to
22   address it:  I think that what -- and again, I'll repeat, none
23   of these questions were before the Second Circuit.  There was
24   no briefing in the Second Circuit, nor was there any argument
25   about what would be the appropriate remedy if we come back to

1  this Court on remand and establish that the government, in
2  fact, did violate the First Amendment by attempting to remove
3  him.
4          THE COURT:  That may be true, but the circuit elected
5  to lay out the considerations for this Court on remand.  That
6  they did.
7          MR. JONES:  Sure.  And they said that if the
8  government had not retaliated, it is possible that Mr. Ragbir
9  would have gotten another two-year administrative stay or for
10 some other period, therefore, at least through January 2020,
11 without foreclosing that, in fact, Mr. Ragbir would have been
12 allowed to stay in this country for even longer than January
13 2020, absent the retaliation.
14         THE COURT:  Or shorter.
15         MR. JONES:  Those were the remarks that were made
16 here.
17         THE COURT:  Or shorter.
18         MR. JONES:  And so --
19         THE COURT:  Or shorter; correct?  That's a question
20 for you.
21         MR. JONES:  Oh, or shorter?
22         THE COURT:  Yes, sir.
23         MR. JONES:  I suppose, theoretically, although the
24 reason I'm hesitating is just thinking about the calendar with
25 all of the extensions the government has gotten, I'm just not

even sure that we would be in a position to have a judgment on liability by January 2020.

THE COURT: Probably right. I'm just talking about what the Second Circuit has instructed this Court to consider on remand.

MR. JONES: Yes. I think that the Second Circuit did not stake out any definitive position on this at all. I think that's clear from the words that they wrote, that they were not intending to provide definitive guidance to this Court about what would have happened absent the retaliation.

THE COURT: No definitive guidance on when the "taint" of the unconstitutional conduct has reached a point where it no longer is a factor in the removal. That's the way I read it.

Let me hear from the government.

MR. KOCHEVAR: Your Honor, the Second Circuit's holding with respect to the relief in this case, which, with respect to Mr. Ragbir, at least, is now a *habeas* petition. The circuit made clear that *habeas* relief in this context is in the discretion of the district court, that was sort of a theme. And so the government's position is that if the mandate does come back to this Court on remand, this Court would be in a position to craft a wide range of possible appropriate relief if there was a finding of liability here.

To address a few other points that came up, I think we would probably seek further briefing on any sort of preliminary

1  injunction motion that was renewed upon remand.  As the circuit

2  directed, a stay would be put in until there was any sort of

3  decision on that.  But I think many of the issues we're

4  discussing here today would probably benefit from briefing.

5  I would also note that --

6  THE COURT:  Well, you better start writing now.

7  MR. KOCHEVAR:  Absolutely, your Honor.

8  THE COURT:  Because it would seem to me that I would

9  want to have a pretty expedited hearing in this matter.

10  MR. KOCHEVAR:  Absolutely.

11  And I would note that the Second Circuit assumed the

12  allegations to be true in its opinion; and it's not clear that

13  that would hold through the adjudication of a preliminary

14  injunction motion.  That was more of a 12(b)(6) posture.

15  THE COURT:  And should the hearing address both the

16  preliminary injunction and the remedy in the event the elements

17  of a preliminary injunction are proven?

18  MR. KOCHEVAR:  I would think so, your Honor.  And I

19  refer the Court to our recent letter that we're in a, sort of,

20  novel space here where we're in constitutional *habeas*

21  jurisdiction.  And the lesson from the rare past cases when

22  that has come up is that the district court has a large range

23  of discretion for how it structures a hearing or any associated

24  discovery with that.

25  THE COURT:  All right.

1        I think it's premature for me to set a date for the

2   hearing because there are too many contingencies.  My original

3   plan when I issued the order is I was going to set a date, a

4   contingent date.  If the mandate hadn't issued by that date,

5   there wouldn't be a hearing; but if it issued, we'd have it.

6        What I'll do is I'll wait till the mandate issues and

7   then I'll put the hearing date out.  It will probably be on

8   short notice.

9        What else?

10       MR. JONES:  Would your Honor be requesting

11  supplemental briefing of any kind in advance of the hearing;

12  and, if so, would there be any specific issues that you'd like

13  the parties to address?

14       THE COURT:  I would do that in the order if I need it.

15  I thought the briefing from both sides was quite good on the

16  first go-round.  Certainly a supplemental letter to advise me

17  of any case law developments would be appropriate.  And, of

18  course, it would be appropriate -- the government's letter is

19  dated the 26th.  And you haven't had an opportunity to respond

20  to their position on discovery.  And I would want to give you

21  an opportunity to put in a letter brief in response to the

22  position they've taken on discovery.  And, in fact, if it's

23  convenient for you to do so in the next ten days, I'd be

24  pleased to get that letter.  Would that be convenient?

25       MR. JONES:  Yes, with the caveat I'm not quite sure

that I know exactly what the government's position is on discovery.  They did point out in their letter that in *habeas* actions discovery does not automatically proceed under the Federal Rules of Civil Procedure.  I don't think they actually said whether they would oppose discovery proceeding under the Federal Rules of Civil Procedure, which I understand is actually fairly the norm in civil *habeas* litigation or what their position was.

         THE COURT:  What's the norm?

         MR. JONES:  That there would be discovery in a civil *habeas* case where there are disputed facts.  And there's, in fact, a whole section of the Second Circuit's decision describing that the fact-finding of civil *habeas* courts dates back to 1789.

         THE COURT:  All right.

         This is how I read the letter, and I understand the law.  But I want to hear from you and give you an opportunity to put a letter brief in, but it works like this:

         That because your petition has been converted to a *habeas* petition, you do not get discovery under the Federal Rules of Civil Procedure.  The Court, in its discretion, could determine that there is some area or some category of document or otherwise that you could obtain in the Court's discretion in advance of the hearing.

         But if you think it's binary that discovery is not

authorized under the Federal Rules of Civil Procedure unless the on switch is flipped, in which event you can take such discovery as you think you'd like to take, that's not how I read the law.

MR. JONES:  Understood.

THE COURT:  And in 2254s and 2255s, I don't recall a single instance on my docket where discovery has been permitted and I have had evidentiary hearings.  But not with discovery.  That's not the nature of how proceedings under the Great Writ proceed.

But, again, be interested in getting your letter.  And it would be appropriate for you to detail if there's something you feel you need, spell it out in the letter.  But to describe, I would like to take depositions up and down the ladder, I would like sweeping document requests, I'll read your letter, but I think that's a tough sell.

MR. JONES:  Okay.  And you'd like us to file this letter before the mandate issues?

THE COURT:  Well, you submitted a letter pursuant to my order on July 22nd.  The government responded on July 26.  This is fresh in everybody's mind.  Just on that narrow issue, please submit a letter.  If it's convenient -- today is the 30th.  Would it be convenient the 9th of August?  That's a Friday.

MR. JONES:  Certainly.

1    THE COURT:  All right.  That would be a week from this
2  coming Friday.  Would that give you enough time?
3    MR. JONES:  Yes.
4    THE COURT:  Okay.  Good.
5    All right.  So I look forward to getting that letter.
6  And I look forward to getting word that the mandate has issued,
7  whenever that may be, and we'll take it from there.
8    And I'm well aware that there is the pending motion by
9  the organizational entities.  I saw the suggestion from the
10  government that everything stop dead in its tracks until that's
11  ruled upon.  And I'm not inclined to do that.  Although I
12  suspect I will probably have a ruling on that sooner than
13  later.  So it may be out before the mandate issues.
14    All right?  What else?
15    MR. JONES:  Nothing else for the plaintiffs today,
16  your Honor.
17    THE COURT:  All right.
18    For the defendants?
19    MR. KOCHEVAR:  Nothing, your Honor.  Thank you.
20    THE COURT:  All right.  Well, thank you all very much.
21  I hope you have a good summer, and I look forward to hearing
22  back.
23    MR. JONES:  Thank you, your Honor.
24                              *   *   *
25